BOOKER T. EVANS (Nevada Bar No. 1209)
L. BRADLEY HANCOCK (*Admitted Pro Hac Vice*)
CHRISTOPHER B. PAYNE (*Admitted Pro Hac Vice*)
ALMA G. CHAO (Nevada Bar No. 10538)
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 500 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

*Attorneys for Defendant*
THOMAS GAETANO DEVITO

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DONNA CORBELLO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS GAETANO DEVITO, an individual; FRANKIE VALLI, an individual; ROBERT J. GAUDIO, an individual; MARSHALL BRICKMAN, an individual; ERIC S. ELICE a/k/a/ Rick ELICE, an individual; DES McANUFF, an individual; DSHT, INC. (formerly, "DODGER STAGE HOLDING THEATRICALS, INC.), a Delaware corporation; and, DODGER THEATRICALS, LTD., a New York corporation, and JB VIVA VEGAS, LP, a New York limited partnership.<br><br>Defendants. | Case No.   2:08-cv-00867-RCJ-PAL<br><br>**DEFENDANT TOMMY DEVITO'S MOTION TO DISMISS UNDER 12(B)(6) OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT** |

Defendant Thomas Gaetano DeVito ("Defendant" or "DeVito"), by and through his attorneys Greenberg Traurig, LLP, hereby submits this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, motion for summary judgment against all of Plaintiff Donna Corbello's ("Plaintiff" or "Corbello") claims against him. This motion is made and based on the papers and pleadings on file herein, the memorandum of points and authorities attached hereto, and oral argument, as may be considered by the Court.

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

1    / / /

2    / / /

3    DATED: March 13, 2009.

              Respectfully submitted,

4
              GREENBERG TRAURIG, LLP
5

6             By:  /s/ L. Bradley Hancock
              BOOKER T. EVANS (Nevada Bar No. 1209)
7             L. BRADLEY HANCOCK (*Admitted Pro Hac Vice*)
              CHRISTOPHER B. PAYNE (*Admitted Pro Hac Vice*)
8             ALMA G. CHAO (Nevada Bar No. 10538)
              3773 Howard Hughes Parkway
9             Suite 500 North
              Las Vegas, Nevada 89169
10            *Attorneys for Defendant*
              THOMAS GAETANO DEVITO
11

12

13                    I.    **INTRODUCTION**

14         Plaintiff filed this action against Mr. DeVito, and other named Defendants, seeking

15    declaratory relief with respect to an unpublished autobiography (the "Work") relating to Mr.

16    DeVito's life story under the Federal Declaratory Judgment Act, 28 U.S.C. 2201 and Sections 101

17    and 201 of the Copyright Act of 1976, as amended, 17 U.S.C. § 101 and 201. *See* Plaintiff's Second

18    Amended Complaint (the "Amended Complaint"), at ¶ 12.[1] Plaintiff contends she has an ownership

19    interest in the Work through her deceased husband, Rex Conrad Woodard ("Woodard"), who she

20    contends co-authored and had a copyright interest in the Work sufficient to give rise to all claims

21    stated in the Complaint. Plaintiff also seeks an equitable accounting from Mr. DeVito regarding

22    profits obtained from the use and benefit of the Work. *See* Amended Complaint, at ¶ 13. Plaintiff

23    also asserts causes of action against Mr. DeVito for, among other things, breach of contract, unjust

24    enrichment, breach of implied covenant of good faith and fair dealing in the performance of

25    ───────────────
      [1]  Plaintiff filed her Original Complaint on December 28, 2007 in the United States District Court for the Eastern District
26    of Texas, Beaumont Division (Cause 1:07-cv-985). The case was subsequently transferred to this Court.   After the case
      was transferred to this Court, Plaintiff filed her First Amended Complaint on August 12, 2008.  Plaintiff filed her Second
27    Amended Complaint on February 27, 2009.

                                           Page 2 of 22
28

*Greenberg Traurig, LLP*
*Suite 500 North, 3773 Howard Hughes Parkway*
*Las Vegas, Nevada 89169*
*(702) 792-3773*
*(702) 792-9002 (fax)*

1    contractual obligations, relating to an agreement between Mr. DeVito and Mr. Woodard regarding the

2    Work.

3          This Court should dismiss Plaintiff's claims against Mr. DeVito for copyright co-ownership,

4    breach of contract, unjust enrichment, and breach of implied covenant of good faith and fair dealing

5    in the performance of contractual obligations claims against Mr. DeVito because Plaintiff failed to

6    allege facts that show a right to relief is plausible and above mere speculation with respect to each of

7    these claims.  Plaintiff also failed to allege facts sufficient to state a claim for which relief can be

8    granted relating to the relationship between Mr. DeVito and Mr. Woodard.  Specifically, Plaintiff has

9    alleged facts in the Amended Complaint to support her contention that Rex Woodard obtained a

10   copyright interest in the Work based on the attorney-client relationship between Mr. DeVito and Mr.

11   Woodard and an agreement dated December 1, 1988 (the "1988 Agreement").  *See* Exhibit 10 to the

12   Amended Complaint.

13         Based upon the allegations in the pleadings, and given Plaintiff's failure to plead facts

14   identified below, the Court should dismiss or, in the alternative, dispose of, by summary judgment,

15   all claims asserted against Mr. DeVito.  Specifically, based on the allegations in the pleading, Mr.

16   Woodard, a licensed attorney, breached his professional and fiduciary duties to Mr. DeVito, his

17   client, by entering into the 1988 Agreement relating to the Work without providing Mr. DeVito with

18   full disclosure of all material facts and legal consequences of the 1988 Agreement.  Due to the fact

19   that Mr. Woodard failed to allege or provide full disclosure to Defendant, Mr. Woodard failed to

20   obtain Defendant's informed consent with respect to the 1988 Agreement.  The very manner in

21   which Mr. Woodard was granted any alleged co-ownership of the copyright in the Work, which

22   resulted from the attorney-client relationship, violated the ethical and fiduciary duties owed to Mr.

23   DeVito under both Texas and Nevada law.

24         Plaintiff has failed to state factual allegations in the Amended Complaint that show a right to

25   relief is plausible and above mere speculation.  As a result, Plaintiff has failed to state a claim in the

26

27

28

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

Amended Complaint upon which relief can be granted and, therefore, the claims contained therein should be dismissed.

## II.   STATEMENT OF PERTINENT FACTS

Plaintiff contends that Mr. Woodard was an avid fan of the Four Seasons and had written certain articles about the group and its members. *See* Amended Complaint at ¶ 23.  In addition to being an author and fan, Mr. Woodard was also a licensed attorney who began practicing law in Texas in 1977.  *See* Amended Complaint at ¶ 21.  Mr. Woodard established a solo trial practice in Beaumont, Texas, and was certified in civil trial law by the Texas Board of Legal Specialization in 1987. *Id.*

Mr. Woodard provided legal services to Mr. DeVito, his client, in connection with Work, including, but not limited to, legal advice Mr. DeVito about certain events and people in Mr. DeVito's life and drafting the 1988 Agreement, which he placed on his legal letterhead for Mr. DeVito to execute.  *See* Amended Complaint at ¶¶ 26, 28, and 29 and Exhibit 10;  *see also* **Exhibit A**, Plaintiff's Response to Defendant's Motion to Dismiss For Lack of Personal Jurisdiction, and, Alternatively, Motion to Transfer Venue, and Consolidated Brief in Support[2] ("Response to Motion to Dismiss") at ¶ 31 at p. 12 and Exhibit 9; **Exhibit B**, Plaintiff's Complaint for Declaratory Judgment, Equitable Accounting, and Breach of Contract[3] ("Plaintiff's Complaint") at ¶¶ 12, 14-15 and (Plaintiff's Complaint) Exhibit 8 at pp. 6-12.

After the 1988 Agreement was executed, Mr. Woodard continued to provide legal services to Mr. DeVito with respect *Freedom of Information Act* proceedings, including appeals, and other advice in order to obtain material for Mr. DeVito to used in the creation of the Work.  Response to Motion to Dismiss at ¶ 31 at p. 12; Plaintiff's Complaint at ¶¶ 12, 14-15 and (Plaintiff's Complaint)

---

[2]  This pleading was submitted in *Corbello v. DeVito*, Cause No. 1:07-cv-985-RHC, United States District Court for the Eastern District of Texas, Beaumont Division.  The Texas Eastern District Court is the transferor court for the above-styled case.

[3] This pleading was submitted in *Corbello v. DeVito*, Cause No. 1:07-cv-985-RHC, United States District Court for the Eastern District of Texas, Beaumont Division.  The Texas Eastern District Court is the transferor court for the above-styled case.

1   Exhibit 8 at pp. 6-12.  Mr. DeVito admitted that Mr. Woodard provided legal services in relation to

2   the Work.  *See* Defendant First Amended Answer ("Defendant's Answer"), ¶¶ 23, 26.  Mr. Woodard

3   expected to be compensated for the legal services he provided to Mr. DeVito in relation to the Work,

4   at least in part, from revenues generated by the Work.  *See* Response to Motion to Dismiss at p. 22.

5       In December 1990, the Work was completed.  *See* Amended Complaint at ¶¶ 31, 32.  Mr.

6   DeVito and Mr. Woodard began to search for agents and publishers with respect to the Work.  *Id.*

7   On behalf of Mr. DeVito and himself, Mr. Woodard sent correspondence to Ms. Sandy Cholon

8   requesting her services as an agent to assist in locating a publisher for the Work.  *Id.* Despite their

9   efforts, neither Mr. DeVito nor Mr. Woodard were able to find a publisher.  *See* Amended Complaint

10  at ¶ 34.  Mr. Woodard died on May 25, 1991.  As of this date, the Work remains unpublished.

11           **III.   MEMORANDUM OF POINTS AND AUTHORITIES**

12  **A.    Legal Standard**

13      Any defendant may move to dismiss under Rule 12(b)(6) for "failure to state a claim upon

14  which relief can be granted."  FED. R. CIV. P. 12(b)(6).  The court has authority to dismiss a suit for

15  failure to state a claim upon which relief can be granted if the complaint does not state factual

16  allegations showing that the right to relief is plausible and above mere speculation.  *Bell Atlantic*

17  *Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).  In considering a motion to dismiss, "all well-

18  pleaded allegations of material fact are taken as true and construed in a light most favorable to the

19  non-moving party."  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir.

20  1998) (internal citations omitted).  In the event the Court considers extrinsic materials outside the

21  pleadings, Rule 12(d) allows a motion to dismiss to be converted to a motion for summary judgment.

22  FED. R. CIV. P. 12(d); *see San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir.

23  1998) (when a district court "looks beyond the pleadings in evaluating a Rule 12(b)(6) motion to

24  dismiss, the motion must be treated as one for summary judgment under Rule 56").

25

26

27

28

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

**B.     An Attorney-Client Relationship Existed Between Mr. DeVito and Mr. Woodard**

Under both Texas and Nevada law, an attorney-client relationship is formed when the attorney agrees to render professional services for the client either expressly or through implied actions. *Yaklin v. Glusing*, 875 S.W.2d 380, 384 (Tex. App. - Corpus Christi 1994, no pet.); *see also* Nevada Rule of Professional Conduct ("NRPC") 1.04(b) (the duties an attorney owes a client attach "after the client has requested the lawyer to render legal services and the lawyer has agreed to do so.") Here, taking the allegations in Plaintiff's Amended Complaint as true, as described below, an attorney-client relationship was established between Mr. DeVito and Mr. Woodard prior to and during the creation of the Work. *Wyler,* 135 F.3d at 661; *Yaklin,* 875 S.W.2d at 384.

Plaintiff has alleged that, in November 1988, Mr. DeVito selected Mr. Woodard to assist in writing the Work because of his legal knowledge and aspects of the Defendant's story, including criminal activities and relationships with organized crime figures, were so sensitive that he wished to consult with an attorney before making them public. *See* Amended Complaint. ¶ 26; *see also* Response to Motion to Dismiss, ¶ 31 at p. 12, and p. 22. In fact, Plaintiff contends that Defendant initially contacted Mr. Woodard to "solicit [Mr. Woodard's] agreement to 'collaborate' on Defendant's autobiography, and provide legal services in connection with the project." *See* Response to Motion to Dismiss at p. 19. Plaintiff clearly admits that Mr. DeVito relied upon Mr. Woodard's legal representation on a number of issues as well as in negotiating the terms of their arrangement regarding the creation of the Work.

Plaintiff also clearly admits that Mr. Woodard and Mr. DeVito formed an attorney-client relationship in relation to the Work. *See* Amended Complaint, ¶ 29; *see also* Response to Motion to Dismiss, ¶ 31, at p. 12, and p. 22. Plaintiff also admits that Mr. Woodard drafted the 1988 Agreement, a legal document, that allegedly confirmed the parties' understanding that they were co-authors of the Work. *See* Amended Complaint, ¶ 28; *see also* Response to Motion to Dismiss, pp. 19 and 22. Plaintiff also admits that Mr. Woodard expected to be compensated for the legal services he provided to Mr. DeVito in relation to the Work, at least in part, from revenues generated by the

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

1   Work. *See* Response to Motion to Dismiss at p. 22.  Plaintiff admits that Mr. Woodard represented

2   Mr. DeVito in *Freedom of Information Act* proceedings, including appeals, to obtain material for the

3   Work. *See* Amended Complaint, ¶ 29; Response to Motion to Dismiss, ¶ 31 and Exhibit 9.

4      Additionally, Mr. Woodard held himself out as Mr. DeVito's attorney to Mr. DeVito,

5   himself, and other third-parties in relation to the Work.  For instance, Mr. Woodard used his legal

6   letterhead for the 1988 Agreement, which Plaintiff relies upon as evidence of joint authorship, and

7   correspondence with Mr. DeVito regarding the numerous drafts of the Work.  *See* Amended

8   Complaint, Exhibits 10 and 11.  Mr. Woodard also used his legal letterhead in correspondence to the

9   Federal Bureau of Investigation regarding his representation of Mr. DeVito in *Freedom of*

10  *Information Act* inquiries relating to Defendant's criminal background history.  *See* Amended

11  Complaint, Exhibit 11.  Mr. Woodard also used his legal letterhead in correspondence with Ms.

12  Sandy Choron and potential publishers, including Popular Culture Ink Publishers, representing

13  himself as the literary agent on his and Mr. DeVito's behalf in an attempt to obtain publishers for the

14  Work and in representing himself as Mr. DeVito's literary agent.  *See* Amended Complaint, Exhibits

15  12 at pp. 1-5 and 13.

16     Based on a review of the pleadings and admissions cited above, it is clear that an attorney-

17  client relationship existed between Mr. DeVito and Mr. Woodard in relation to the Work.  As a

18  result, Mr. Woodard owed Mr. DeVito certain ethical and fiduciary duties under both the Texas and

19  Nevada Rules of Professional Conduct.

20

21  **C.   Woodard Violated his Fiduciary Duty to Mr. DeVito by Entering Into A Business Transaction With Mr. DeVito, His Client.**

22     As stated above, Plaintiff contends that the 1988 Agreement, which Mr. Woodard used his

23  legal skills to draft, gave Mr. Woodard a copyright interest in the Work and authorized Mr. Woodard

24  to receive any profits arising from the Work "whether they be in the form of royalties, advances,

25  adaptation fees, or whatever."  Mr. Woodard and Mr. DeVito had established an attorney-client

26  relationship prior to entering into the 1988 Agreement, which existed during the creation of the

27

28

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

1   Work.  *See* Amended Complaint. ¶ 26; *see also* Response to Motion to Dismiss, ¶ 31.

2          It is a well-settled rule that a fiduciary relationship exists between an attorney and client.

3   *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988).  As a fiduciary, an attorney is obligated to

4   render a full and fair disclosure of facts material to the client's representation. *Id*; *see also Ames v.*

5   *Putz*, 495. S.W.2d 581, 583 (Tex.Civ.App. 1973, writ ref'd) ("failure to of an attorney dealing with

6   his client to disclose to him the material facts and legal consequences flowing from the facts

7   constitutes actionable fraud").  More importantly, contracts between attorneys and clients negotiated

8   during the existence of the attorney client-relationship are closely scrutinized by the courts.  *Keck,*

9   *Mahin, & Cate v. National Union Fire Insurance Company of Pittsburgh, PA*, 20 S.W.3d 692, 699

10  (Tex. 2000); *see also Cook v. Cook*, 912 P.2d 264 (Nev. 1996) (held that all transactions growing out

11  of the attorney-client relationship are subjected to the closest scrutiny by the courts).  Because the

12  relationship is fiduciary in nature, there is a presumption of unfairness or invalidity attaching to such

13  contracts.  *Keck*, 20 S.W.3d at 699.  More importantly, when a client attacks the validity of a

14  transaction with an attorney, the attorney has the burden of justifying the transaction.  *State Bar of*

15  *Texas v. Dolenz*, 3 S.W.3d 260, 267 (Tex.App.-Dallas 1999, no pet. h.); *see also Ames,* 495. S.W.2d

16  at 583 (attorney has the burden of showing transaction's "fairness and reasonableness").

17         The reason business transactions between an attorney and a client are so closely scrutinized is

18  because "[a] lawyer's legal skill and training, together with the relationship of trust and confidence

19  between lawyer and client, create the possibility of overreaching when the lawyer participates in a

20  business, property or financial transaction with a client." ABA Model Rule of Professional Conduct

21  ("MRPC") 1.8 cmt. 1; *see also Dolenz*, 3 S.W.3d at 266 (held "[c]lients are vulnerable to lawyer

22  overreaching because of their trust in their  lawyers and because of their lawyers' presumed superior

23  professional knowledge and skill").  The requirements of the rule "must be met even when the

24  transaction is not closely related to the subject matter of the representation."  MPRC 1.8, cmt 1.

25  "[T]he lawyer should discuss both the material risks of the proposed transaction, including any risk

26  presented by the lawyer's involvement, and the existence of reasonably available alternatives and

27

28

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada  89169
(702) 792-3773
(702) 792-9002 (fax)

1  should explain why the advice of independent legal counsel is desirable." *Id.* cmt. 2.

2        Accordingly, due to the possibility of overreaching and/or potential conflicts of interest,

3  attorneys are prohibited from entering into business transactions with clients unless certain

4  requirements are met. In 1988, under Texas law,[4] lawyers were prohibited from "enter[ing] into a

5  business transaction with a client if they have differing interests therein and if the client expects the

6  lawyer to exercise his professional judgment therein for the protection of the client unless the client

7  has consented after full disclosure." TEX. STATE BAR R., art. XII, § 8, DR 5-104(A) (Tex. Code of

8  Prof'l Resp.) ["DR 5-104(A)"], 34 TEX. B.J. 758 (1971, superseded 1990).[5] The term "differing

9  interest" was defined as "every interest that will adversely affect either the judgment or the loyalty of

10  a lawyer to a client, whether it be a conflicting, inconsistent, diverse, or other interest." *Id.* at

11  Definitions § 1, 34 TEX. B.J. at 774. With respect to the term "full disclosure," an attorney is

12  required to disclose to client the material facts and the legal consequences flowing from those facts.

13  *See Willis*, 760 S.W.2d at 645; *Ames*, 495. S.W.2d at 583; Tex. Comm. on Prof'l Ethics, Op. 308, 30

14  TEX. B. J. 225 (1967) (the term "full disclosure" requires an attorney to explain in detail to client(s)

15  "not only the fact of his employment, but the possible conflict and consequences thereof"); *see also*

16  *Iowa Supreme Court Bd. of Professional Ethics and Conduct v. Fay*, 619 N.W.2d 321, 326 (Iowa

17  2000) (held "full disclosure" means "disclosure of the nature of the transaction" and "explaining to

18  the client why he or she would benefit from independent counsel and insisting independent counsel

19  be secured").

20

---

21  [4] Similarly, under Nevada law, a lawyer was prohibited from entering into a business transaction with a client or acquire
22  an ownership or other pecuniary interest adverse to the client unless: (1) The transaction and terms on which the lawyer
      acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner
23  that can be reasonably understood by the client; (2) The client is advised in writing of the desirability of seeking and is
      given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and (3) The client
24  gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in
      the transaction, including whether the lawyer is representing the client in the transaction. NRPC 1.8(a).

25  [5] On January 1, 1990, Texas Disciplinary Rule of Professional Conduct 1.08(a) replaced Texas Code of Professional
      Responsibility DR 5-104(A). Rule 1.08(a) provides that "[a] lawyer shall not enter into a business transaction with a
26  client unless: (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client
      and are fully disclosed in a manner which can be reasonably understood by the client; (2) the client is given a reasonable
27  opportunity to seek the advice of independent counsel in the transaction; and (3) the client consents in writing thereto.

28

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

*1. Failure to Fully Disclose Material Facts and Legal Consequences of 1988 Agreement*

There is no dispute that Mr. Woodard entered into a business transaction with his stated client, Mr. DeVito, with respect to the Work.  The 1988 Agreement provides, among other things, that Mr. Woodard and Mr. DeVito would (a) "be shown as co-authors [of the Work] with [Defendant] receiving top billing;" and (2) "share equally in any profits arising from the [the Work], whether they be in the form of royalties advances, adaptation fees, or whatever."  The 1988 Agreement was drafted by Mr. Woodard, who was an experienced, highly-specialized attorney and published journalist.  *See* Amended Complaint, ¶ 21.  Mr. DeVito has an eighth-grade education.  *See* Amended Complaint, ¶ 27.  Mr. Woodard chose to use terms in the 1988 Agreement that Plaintiff contends have significant legal impact without fully disclosing the effect or legal consequences such terms could have on Mr. DeVito rights in the Work and his life story.

For example, Plaintiff contends that the Work is a "joint work" subject to the Copyright Act of 1976.  The basis for this contention is the use of the term "co-author" in the 1988 Agreement.  Mr. Woodard fails to disclose that by the use of the term "co-author" in the 1988 Agreement, Mr. Woodard was attempting to obtain co-ownership in the copyright, which Plaintiff now contends.  There is no mention in the 1988 Agreement, or any other correspondence from Mr. Woodard to Defendant, that Mr. Woodard would receive co-ownership in the copyright of the Work, or in Defendant's life story, under the Copyright Act of 1976.  As an attorney and published journalist, Mr. Woodard was in a superior bargaining position regarding the 1988 Agreement due to the fact that he understood the meaning and legal effect of the term "joint work" as it related to the Work.  *See* Amended Complaint at ¶ 69.  Mr. DeVito denies having any knowledge or understanding that the Work was a "joint work" subject to the Copyright Act of 1976.  *See* Defendant's Answer at ¶¶ 67-83.  Similarly, the term "whatever" is a vague and ambiguous term that Plaintiff contends has the legal effect of expanding Mr. Woodard's rights outside the scope of the published Work.  It is exactly this vague term that Plaintiff relies upon in this suit to in order to try to obtain profits and royalties Mr. DeVito receives from the play *Jersey Boys*.  *See* Amended Complaint, ¶¶ 28, 68 and

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

69.

Mr. Woodard's use of the terms "co-author" and "whatever" in the 1988 Agreement, as well as Defendant's inferior bargaining position created differing interests between Mr. DeVito and Mr. Woodard with respect to the ownership of the copyright interest of the Work and Defendant's life story. As Defendant's attorney, Mr. Woodard had a fiduciary duty to fully disclose all material facts regarding the 1988 Agreement, most importantly, the legal effect the terms "co-author" and "whatever" had on Defendant's copyright ownership interest in the Work and his life story. Additionally, in providing full disclosure, Mr. Woodard was required to insist that Mr. DeVito obtain independent counsel with respect to the 1988 Agreement. Moreover, the copyright interest allegedly obtained by Mr. Woodard as a result of the 1988 Agreement created a differing interest with respect to Defendant's copyright interest in the Work and in his life story.

Plaintiff contends Mr. DeVito knew and understood that the Work was to be treated as a "joint work" subject to the Copyright Act of 1976 by merely signing the 1988 Agreement. However, obtaining a client's signature on a document does not prove that an attorney provided full disclosure with respect to the terms of that document. *See, e.g., Goldman v. Kane*, 329 N.E.2d 770 (Mass.App.Ct 1975) (despite obtaining signature from client on agreement, attorney was under a duty not to proceed with the transaction until attorney was satisfied that client had obtained independent advice from counsel).

Under Texas law, an attorney has the burden of proving the existence and extent of disclosure to client. *Dolenz*, 3 S.W. 3d at 267. Thus, Plaintiff bears the burden to show whether Mr. Woodard provided full disclosure to Mr. DeVito regarding the material facts of the 1988 Agreement and the legal consequences that flowed from those facts. Here, Plaintiff failed to allege any facts that Mr. Woodard provided full disclosure to Mr. DeVito with respect to the material facts and legal consequences of the 1988 Agreement. As a result, Plaintiff has failed to state any factual allegations that shows Plaintiff's right to relief is plausible and above mere speculation and, therefore, Plaintiff's claims should be dismissed.

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

### 2.  *Failure to Advise Client To Seek Independent Counsel*

As stated above, under DR 5-104(A), an attorney is prohibited from entering into a transaction with a client unless the client has consented after full disclosure. In addition to fully disclosing material facts and legal consequences of the transaction, an attorney is also required to advise the client to seek independent counsel. *See Fay*, 619 N.W.2d at 326.

Specifically, in *Fay*, the Iowa Supreme Court held that the term "full disclosure," as contained in DR 5-104(A), "not only means disclosure of the nature of the relationship, but it also means explaining to the client why he or she would benefit from independent counsel and insisting independent counsel." *Id.* at 326. Although Texas law does not have a case directly on point, Texas courts have used the rulings from the Iowa Supreme Court as authority in determining issues related to business transactions between attorneys and clients. *See Dolenz*, 3 S.W. 3d at 267 (using Iowa Supreme Court decision to support the court's ruling that the attorney has the burden to justify the transaction). More importantly, the requirement to advise a client to seek independent counsel with respect to the transaction is consistent with the current Texas Disciplinary Rule of Professional Conduct 1.08(a)(2) that requires "the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction" as well as in *Fay*, which applied the same principle to the earlier disciplinary rule.

Accordingly, as part of the full disclosure requirement under DR 5-104(A), Mr. Woodard should have advised and/or insisted that Mr. DeVito seek independent counsel to review the terms of the 1988 Agreement. Based on the pleadings before the Court, however, Plaintiff does not allege that Mr. Woodard advised or insisted that Mr. DeVito seek independent counsel. In fact, as stated above, Plaintiff does not allege that Mr. Woodard provided *any* disclosure with respect to the material facts or legal consequences of the 1988 Agreement. Given the parties' relationship, legal effect of the terms used in the 1988 Agreement, as drafted by Mr. Woodard, and Defendant's limited formal education, it was imperative and required by law that Mr. DeVito be advised to seek

1    independent counsel to review the terms of the 1988 Agreement. By failing to obtain Defendant's
2    informed consent with respect to the 1988 Agreement, Mr. Woodard obtained a differing interest
3    with Mr. DeVito regarding a copyright ownership of the Work and in Defendant's life story, which
4    is prohibited under DR 5-104(A).
5         Plaintiff failed to allege that Mr. Woodard advised Mr. DeVito to seek independent counsel
6    to review the 1988 Agreement. As a result, Plaintiff has failed to state any factual allegations that
7    shows Plaintiff's right to relief is plausible and above mere speculation and, therefore, Plaintiff's
8    claims should be dismissed. In the alternative, since Plaintiff failed to advise Mr. DeVito to seek
9    independent counsel to review the terms Mr. Woodard used in the 1988 Agreement, Mr. Woodard
10   breached his fiduciary duty to Defendant. Accordingly, the 1988 Agreement should be void as a
11   matter of law.

12        ### 3. *Failure to Obtain Informed Consent*

13        Although the 1988 Agreement was signed by Defendant, Mr. Woodard failed to obtain
14   Defendant's informed consent with respect to the essential terms of the 1988 Agreement and Mr.
15   Woodard's role in the transaction, including whether he was representing Mr. DeVito in the
16   transaction. Plaintiff does not allege that Mr. Woodard advised Mr. DeVito as to the material terms
17   and legal consequences or to seek independent counsel with respect to the terms of the 1988
18   Agreement. Mr. DeVito denies that he knew or understood that the Work was a "joint work" subject
19   to the Copyright Act of 1976. Defendant's Answer at ¶¶ 67-83. By failing to obtain Defendant's
20   informed consent with respect to the 1988 Agreement, Mr. Woodard obtained a differing interest
21   with the Mr. DeVito regarding copyright ownership of the Work and in Defendant's life story, which
22   is prohibited under DR 5-104(A).
23        Plaintiff has not pled any facts that show or even suggest that Mr. Woodard obtained
24   Defendant's informed consent with respect to the 1988 Agreement other than Defendant's signature.
25   As a result, Plaintiff has failed to state any factual allegations that shows Plaintiff's right to relief is
26   plausible and above mere speculation and, therefore, Plaintiff's claims should be dismissed. In the
27
28

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

1  alternative, since Plaintiff failed to obtain Defendant's informed consent with respect to the terms

2  Mr. Woodard used in the 1988 Agreement, Mr. Woodard breached his fiduciary duty to his client,

3  Mr. DeVito.  Accordingly, the 1988 Agreement should be void as a matter of law.

4  **D.    Woodard Should Not Benefit From His Breach of His Fiduciary Duty to Mr. DeVito**

5          As stated above, contracts between attorneys and their clients negotiated during the existence

6  of the attorney-client relationship are closely scrutinized.  *See Keck* 20 S.W.3d at 699 (Tex. 2000);

7  *Dolenz*, 3 S.W.3d at 266 (strict scrutiny standard applies to all business dealings between lawyer and

8  client; even stricter scrutiny when client is elderly); *see also Williams v. Waldman*, 836 P.2d 614,

9  618 (Nev. 1992) ("An attorney-client relationship necessarily gives rise to a fiduciary relationship

10  between an attorney and client, and all transactions growing out of such a relationship are subject to

11  the *closest scrutiny* by the courts.") (internal citation omitted) (emphasis added); M.R.P.C. 1.8 cmt.

12  17 ("[t]he relationship between lawyer and client is a fiduciary one in which the lawyer occupies the

13  highest position of trust and confidence").

14          "Because the relationship is fiduciary in nature, there is a presumption of unfairness or

15  invalidity attaching to such contracts."  *Keck*, 20 S.W.3d at 699 (stating also that the lawyer has the

16  burden of proving that the transaction was "fair and reasonable" and that the client was "informed of

17  all material facts"); *see In re Singer*, 865 P.2d 315 (Nev. 1993) (applying the "strong presumption of

18  impropriety attached to business transactions" between a lawyer and client; *Ames v. Putz*, 495

19  S.W.2d 581, 583 (Tex.Civ.App.- Eastland 1973, writ ref'd); *Wright v. Sydow*, 173 S.W.3d 534, 544

20  (Tex.App.- Houston [14th Dist.] 2004, pet. denied) ("[C]ourts presume those contracts are unfair or

21  invalid"); *Dolenz*, 3 S.W.3d at 267 ("[W]hen a client attacks the validity of a transaction with a

22  lawyer, the lawyer has the burden of justifying the transaction."); *see also Mass v. McClenahan*, 893

23  F. Supp. 225 (S.D.N.Y. 1995) ("Nevada's courts have held that, when an attorney deals with his

24  client for the former's benefit, a presumption arises that the transaction between them is improper.").

25  This "presumption of impropriety . . . may be overcome only by *clear and satisfactory* evidence that

26  the transaction was fundamentally fair, free of professional overreaching, and fully disclosed." *In re*

27

28

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

1    *Singer*, 865 P.2d at 317 (emphasis added); *Williams*, 836 P.2d at 618; *Davidson v. Streeter*, 234 P.2d

2    793, 799 (Nev. 1951) (stating that "the presumptive invalidity of [a] transaction on the ground of

3    constructive fraud, where an attorney deals with his client for the former's benefit, can be overcome

4    only by the clearest and most satisfactory evidence"); *see also In re Jane Tiffany Living Trust*, 177

5    P.3d 1060 (Nev. 2008) ("This higher standard ensures that the law will protect those who cannot

6    protect themselves.").

7        As explained in *Williams*, public policy requires a lawyer to show that he (1) made sure that

8    his client was fully informed as to the nature and effect of the proposed transaction; and (2) saw to it

9    that his client either received independent advice in the matter, or else received from the attorney the

10    same advice that the attorney would have given had the transaction between his client and a stranger.

11    *Williams*, 836 P.2d at 618-19. Where the lawyer cannot meet this burden, a court will not hesitate to

12    invalidate the transaction. *See, e.g., Cook v. Cook*, 912 P.2d 264, 266 (Nev. 1996) (invalidating a

13    property settlement agreement entered into between a lawyer-husband and client-wife because the

14    court concluded, as a matter of law, that the lawyer-husband breached his duty of full and fair

15    disclosure and that the transaction was fundamentally unfair). Plaintiff does not allege facts to

16    support that this burden was met or that such burden can be met. Courts have routinely held that

17    contracts are invalid as a violation of public policy where there is a breach of fiduciary duty. *See*

18    *Kalled v. Albee*, 142 N.H. 747, 751 (N.H. 1998) ("Failure to obtain a client's informed consent

19    constitutes a breach of fiduciary duty and a violation of public policy; such contracts are invalid");

20    *First Nat'l Bank v. One Craig Place, Ltd.*, 303 N.W.2d 688, 697 (Iowa 1981) ("[W]e found that the

21    transaction breached a fiduciary duty. We stated, 'The transaction was thus contrary to public

22    policy. We have long held contracts contrary to public policy are unenforceable.'").

23        Plaintiff contends that Mr. Woodard entered into a business transaction with Mr. DeVito as

24    Mr. DeVito's attorney. Plaintiff, however, has failed to allege facts that would make this

25    permissible. Specifically, Plaintiff failed to allege facts that Mr. Woodard (a) fully disclosed

26    material facts and legal consequences of the 1988 Agreement, including, but not limited to, Mr.

27

28

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

1    Woodard's interest in the business transaction as a "co-author" and the ability to obtain "whatever"

2    profits arising from the Work; (b) advised or insisted that Mr. DeVito seek independent counsel to

3    review the terms of the 1988 Agreement; and (c) obtained informed consent from Mr. DeVito with

4    respect to the terms of the 1988 Agreement and Mr. Woodard's dual role as writer/attorney in the

5    transaction.  Plaintiff has, however, alleged facts that support her contention that Mr. Woodard was a

6    successful, highly-specialized attorney who drafted the 1988 Agreement for Mr. DeVito to sign. Due

7    partly to his lack of education and the fact that he was not a lawyer himself, Mr. DeVito was placed

8    at a severe disadvantage in the negotiation and execution of the 1988 Agreement.

9          Given Mr. DeVito's severe disadvantage in negotiating the 1988 Agreement, as well as

10    pursuant to the applicable law cited above, Mr. Woodard had a fiduciary duty to disclose the

11    material facts and legal consequences of the 1988 Agreement, including advising Mr. DeVito to seek

12    independent counsel, and obtain Mr. DeVito's informed consent with respect to the terms of the

13    1988 Agreement. Since Plaintiff has failed to make any factual allegations that show Mr. Woodard

14    was legally able to enter into the 1988 Agreement with his client, Mr. DeVito, Plaintiff has not

15    shown a right to relief under the 1988 Agreement is plausible and above mere speculation.

16    Accordingly, Plaintiff's claims should be dismissed.

17          In the alternative, Mr. Woodard breached his fiduciary duty to Mr. DeVito by entering into a

18    transaction with Mr. DeVito without full disclosure or obtaining his informed consent to the terms of

19    the 1988 Agreement.  As a result, the 1988 Agreement is contrary to public policy and thereby

20    unenforceable.

21    **E.**    **Woodard Was Not Authorized to Obtain Publication or Literary Rights to the Work**

22          In addition to a prohibition on general business transactions, attorneys are strictly and

23    expressly prohibited from obtaining literary or media rights as a result of the legal representation.

24    Specifically, in 1988, "[p]rior to conclusion of all aspects of the matter giving rise his employment, a

25    lawyer shall not enter into any agreement or understanding with a client or prospective client by

26    which he acquires an interest in publication rights with respect to the subject matter of his

27

28

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

1    employment or proposed employment."  TEX. STATE BAR R., art. XII, § 8, DR 5-104(B) (Tex. Code

2    of Prof'l Resp.) ("DR 5-104(B)"), 34 TEX. B.J. 758 (1971, superseded 1990); *see also* NRPC 1.8(d);

3    *Rudin v. State*, 86 P.3d 572, 587–88 (Nev. 2004) ("[D]uring the course of representation, a lawyer

4    may not negotiate agreements pertaining to literary or media rights based on representation of a

5    client").

6              As stated above, Plaintiff admits that Mr. Woodard provided legal services in connection

7    with the Work.  *See* Amended Complaint, ¶ 29;  *See also* Response to Motion to Dismiss, at ¶ 31 at

8    p. 12 and 22.    Specifically, Mr. Woodard provided Mr. DeVito with legal advice about his past

9    conduct, and represented Mr. DeVito in *Freedom of Information Act* proceedings, including appeals,

10   to obtain material for the Work. *Id*.  During the period of legal representation, Mr. Woodard clearly

11   negotiated and executed an agreement allegedly giving Mr. Woodard publication or literary rights to

12   the Work, which was based in substantial part on information related to the legal representation.

13   Specifically, on or about October 18, 1990, Mr. Woodard wrote a letter to a potential publisher that

14   stated, in pertinent part, as follows:

15
16              "[Defendant] commissioned me to co-author [the Work].  I am a long time
                rock historian with numerous publishing credits in various fanzines and
17              rock publications.  As a practicing attorney, I employed the Freedom of
                Information Act to obtain portions of the F.B.I. file on the Four Seasons.  I
18              feel competent to fulfill the role of literary agent [for Mr. DeVito and Mr.
                Woodard with respect to the Work]."
19

20   *See* Amended Complaint, Exhibit 12.  Mr. Woodard admits that he used his legal skills, acted as Mr.

21   DeVito's agent for the Work, and used his legal representation to obtain information about Mr.

22   DeVito and The Four Seasons which was incorporated into the Work.  Mr. Woodard also proclaims

23   himself as literary agent for the Work although, upon information and belief, there is no written

24   agreement authorizing Mr. Woodard to act as literary agent on behalf of the Work or Mr. DeVito

25   other than his role as Mr. DeVito's attorney.  *Id*.

26              Plaintiff has not pled any facts that show that Mr. Woodard, as Mr. DeVito's attorney, was

27

28

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

authorized under Texas or Nevada law to enter into an agreement giving Mr. Woodard publication or literary rights with respect to the Work.  As a result, Plaintiff has failed to state factual allegations that show Plaintiff's right to relief under the 1988 Agreement is plausible and above mere speculation and, therefore, Plaintiff's claims should be dismissed.  In the alternative, Mr. Woodard breached his fiduciary duty to Mr. DeVito by negotiating and/or executing an agreement giving the lawyer publication rights to a portrayal or account based in substantial part on information relating to the representation in violation of DR 5-104(B).  As a result, the 1988 Agreement should be void as a matter of law.

**F.    The 1988 Agreement Did Not Grant a Copyright Interest in Factual, Historical Events of Mr. DeVito's Life Story**

Plaintiff alleges in the Amended Complaint that, pursuant to the 1988 Agreement, Mr. Woodard is a joint author of the Work and is therefore entitled to a copyright interest in the Work. The 1988 Agreement provided that the Work would be "based on the recorded interview [Mr. DeVito] gave [Mr. Woodard], plus any other relevant information that would benefit the book."  *See* Plaintiff's Amended Complaint, Exhibit 10.  The 1988 Agreement also provides that Mr. Woodard and Mr. DeVito would "share equally in any profits arising from [the Work], whether they be in the form of royalties, advances, adaptations fees, or *whatever*."  *Id.*  (emphasis added).

The Work is primarily based on the recorded interviews Mr. DeVito provided Mr. Woodard that detail Defendant's life story.  In fact, Mr. Woodard's letters to publishers specifically point out that the story contained in the Work was based on the interviews with Mr. DeVito and the details Mr. DeVito provided.  *See* Amended Complaint, Exhibits 12 and 13.  Plaintiff also alleges that Mr. Woodard obtained other "relevant information" about the Defendant's life from interviews, newspaper clippings, magazine articles, record albums, fanzines, photographs, and personal questionnaires.  Accordingly, as with all biographies, the Work is based on factual, historical events that occurred over the course of Mr. DeVito's life, particularly with respect to his tenure with the musical group, The Four Seasons.

Plaintiff also alleges in her Amended Complaint that Mr. DeVito has a duty to disclose to

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

Plaintiff all income that Mr. DeVito has derived from the exploitation of the copyrights contained in the Work. *See* Amended Complaint, ¶ 87. More importantly, Plaintiff alleges that, by virtue of the 1988 Agreement, Mr. DeVito has a duty to account to Plaintiff for any profits arising from the Work in "whatever" form, "which extends beyond profits arising only from the exploitation of copyrights, encompassing any profits resulting from the Work." *See* Amended Complaint, ¶ 88. Plaintiff alleges that the Work was adapted and used to create the musical play *Jersey Boys* and, due to certain vague language in 1988 Agreement, Plaintiff is entitled to profits from the *Jersey Boys*. These allegations, however, are not supported by the law. Despite these bald assertions, Plaintiff has not pled any facts that would show Plaintiff's right to relief is plausible and above mere speculation. As a result, Plaintiff has failed to state a claim upon which relief can be granted and, therefore, Plaintiff's copyright co-ownership claims should be dismissed.

### 1. *1988 Agreement Does Not Restrict Mr. DeVito From Telling His Life Story*

The 1988 Agreement, which is void, specifically provides that Mr. DeVito and Mr. Woodard would share in the profits of arising from the Work, "whether they be in the form of royalties, advances, adaptations fees, or whatever." Plaintiff contends that the term "whatever" applies to any profits received by Mr. DeVito for the portrayal of Defendant's life story in the *Jersey Boys*. As stated above, the alleged adapted scenes from the Work described in the Amended Complaint are not copyrightable since they are historical facts that were experienced by Mr. DeVito and communicated to Mr. Woodard. To the extent Plaintiff contends that the 1988 Agreement should be enforced, the 1988 Agreement contemplates sharing profits for the use of the *entire* Work. Plaintiff has not pled any facts in the Amended Complaint that support her contention that the *entire* Work was adapted or used in *Jersey Boys*, rather only certain historical, factual events. As stated above, these particular events not copyrightable.

More importantly, the 1988 Agreement does not prohibit Mr. DeVito from communicating the historical, factual events of his life to any other party. Even if the 1988 Agreement did prohibit Mr. DeVito from communicating his life story to other individuals, which it does not, any person

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

1   may copy the underlying facts contained in the Work without violating copyright laws.  *See Feist*,

2   499 U.S. at 348 ("[o]thers may copy the underlying facts from the publication, but not the precise

3   words used to present them").  Plaintiff contends that Mr. DeVito had discussions with Defendants

4   Brickman, Elice, and McAnuff regarding the portrayal of his character in the *Jersey Boys*.  The

5   description of historical, factual events regarding his life story does not violate federal copyright law.

6   Since only the historical, factual events were used in these discussions, as opposed to the precise text

7   of the Work, no copyrights interests were violated.

8        Accordingly, Plaintiff has not pled any facts that show Plaintiff's right to relief is plausible

9   since Plaintiff is seeking to claim a copyright interest in historical facts that are not copyrightable.

10  As a result, Plaintiff has failed to state a claim for which relief can be granted and, therefore, her

11  claims regarding co-ownership of copyright interest in the Work and *Jersey Boys* should be

12  dismissed.

13                           **IV.    CONCLUSION**

14       As set forth more fully above, Plaintiff has not pled any facts that show that Mr. Woodard, as

15  Defendant's attorney, provided full disclosure as to the material facts of the 1988 Agreement,

16  advised Mr. DeVito to seek independent counsel, or obtained Defendant's informed consent with

17  respect to the terms of the 1988 Agreement.  Plaintiff has also not pled any facts that show Plaintiff

18  right to relief is plausible with respect to her co-ownership interest claims since Mr. Woodard was

19  strictly prohibited from obtaining publication or literary rights with respect to the Work.  As a result,

20  Plaintiff has failed to state a claim for which relief can be granted and, therefore, Plaintiff's claims

21  should be dismissed.

22       In the alternative, Mr. Woodard breached his fiduciary duty by entering into a business

23  transaction with Defendant, his client, and failing to: (a) provide Mr. DeVito with full disclosure of

24  the material facts and legal consequences of the 1988 Agreement, including, but not limited to, Mr.

25  Woodard's alleged literary and media rights to the Work; (b) advise Mr. DeVito to seek independent

26  counsel with respect to 1988 Agreement; and (c) obtain Defendant's informed consent with respect

27

28

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

to the 1988 Agreement.  Mr. Woodard also breached his fiduciary duty to his client, Mr. DeVito, by obtaining publishing or literary rights in the Work as allegedly evidenced by the 1988 Agreement. As a result, the 1988 Agreement, which the Plaintiff relies upon to assert an co-ownership interest in the Work and *Jersey Boys*, should be found void as a matter of law.

Because Plaintiff has failed to state factual allegations that show Plaintiff's right to relief is plausible and above mere speculation, this case should be dismissed or, in the alternative, summary judgment should be granted in favor of Mr. DeVito on all of Plaintiff's claims, and any other such relief that Defendant DeVito is entitled.

DATED: March  13, 2009.

Respectfully submitted,

GREENBERG TRAURIG, LLP

By:   /s/ L. Bradley Hancock
BOOKER T. EVANS (Nevada Bar No. 1209)
L. BRADLEY HANCOCK (*Admitted Pro Hac Vice*)
CHRISTOPHER B. PAYNE (*Admitted Pro Hac Vice*)
ALMA G. CHAO (Nevada Bar No. 10538)
3773 Howard Hughes Parkway
Suite 500 North
Las Vegas, Nevada 89169
*Attorneys for Defendant*
THOMAS GAETANO DEVITO

1

**CERTIFICATE OF SERVICE**

2     I hereby certify that the foregoing **DEFENDANT TOMMY DEVITO'S MOTION TO**

3 **DISMISS UNDER RULE 12(B)(6), OR, ALTERNATIVELY, MOTION FOR SUMMARY**

4 **JUDGMENT** was served on all counsel of record listed below through the Court's Electronic Filing

5 System:

6     John L. Krieger, Esq.                              Daniel M. Mayeda
      LEWIS AND ROCA LLP                         LEOPOLD, PETRICH & SMITH, P.C.

7     3993 Howard Hughes Parkway, Suite 600   2049 Century Park East, Suite 3110
      Las Vegas, Nevada 89169                      Los Angeles, California 90067-3274

8

9     Gregory H. Guillot, Esq.                         David S. Korzenik
      GREGORY H. GUILLOT, PC                   MILLER KORZENIK SOMMERS LLP

10    13455 Noel Road, Suite 1000                  488 Madison Avenue, Suite 1120
      Dallas, Texas 75240                              New York, New York 10022-5702

11

12    George L. Paul                                   Samuel S. Lionel
      Robert H. McKirgan                           Todd Kennedy

13    LEWIS & ROCA, LLP                          LIONEL, SAWYER & COLLINS
      40 North Central Ave., Suite 1900          300 So. 4th Street # 1700

14    Phoenix, AZ 8500                              Las Vegas, Nevada 89101

15

16    DATED: March 13, 2009

17                                                        /s/ Christopher B. Payne
                                                        Attorney for Defendant DeVito

18

19

20

21

22

23

24

25

26

27
                                          Page 22 of 22
28

Greenberg Traurig, LLP
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)