1  SAMUEL S. LIONEL [Nevada Bar #1766]
2  TODD KENNEDY [Nevada Bar #6014]
   LIONEL, SAWYER & COLLINS
3  300 So. 4th Street #1700
   Las Vegas, Nevada 89101
4  Telephone:  (702) 383-8884

5  DANIEL M. MAYEDA (Admitted Pro Hac Vice)
   LEOPOLD, PETRICH & SMITH, P.C.
6  2049 Century Park East, Suite 3110
   Los Angeles, California 90067-3274
7  Tel:  (310) 277-3333 • Fax:  (310) 277-7444
   Email:  dmayeda@lpsla.com

8  DAVID S. KORZENIK (Admitted Pro Hac Vice)
   MILLER KORZENIK SOMMERS LLP
9  488 Madison Avenue
   Suite 1120
10 New York, New York 10022-5702
   Telephone:  (212) 752-9200

11 Attorneys for Defendants
12 FRANKIE VALLI, ROBERT J. GAUDIO, MARSHALL
   BRICKMAN, ERIC S. ELICE, DES McANUFF, DSHT, INC.,
13 DODGER THEATRICALS, LTD. and JB VIVA VEGAS, L.P.

14
                  UNITED STATES DISTRICT COURT
15
                      DISTRICT OF NEVADA
16

17 DONNA CORBELLO, an individual        CASE NO.: 2:08-cv-00867-RCJ-PAL
18
                  Plaintiff,           MOTION NO. 1: MOTION BY NEW
19                                      DEFENDANTS TO DISMISS
         v.                            COUNTS 15 THROUGH 17 OF
20                                      PLAINTIFF'S SECOND AMENDED
   THOMAS GAETANO DEVITO, an           COMPLAINT UNDER RULE
21 individual, et al.                   12(b)(6); MEMORANDUM OF
                                        POINTS AND AUTHORITIES IN
22                Defendants.           SUPPORT THEREOF
23
                                       [Oral Argument Requested]
24
                                       Courtroom:     The Honorable
25                                                     Robert C. Jones
26
27
28

LEOPOLD, PETRICH
   & SMITH
A Professional Corporation    14271 - Motion #1

1    Defendants Frankie Valli, Robert J. Gaudio, Marshall Brickman, Eric S. Elice,

2  Des McAnuff, DSHT, Inc., Dodger Theatricals, Ltd. and JB Viva Vegas, LP

3  (collectively, the "New Defendants") move for an Order dismissing Counts 15

4  through 17 of Plaintiff's Second Amended Complaint ("SAC") pursuant to Federal

5  Rule of Civil Procedure 12(b)(6).  The ground for the New Defendants' Motion to

6  Dismiss Counts 15, 16, and 17 for copyright infringement is that New Defendants

7  have been released from any copyright infringement claims arising out of Tommy

8  DeVito's autobiography.

9

10    This motion will be based upon the following Memorandum of Points and

11  Authorities, the records and files in this action and such oral argument (hereby

12  requested) as the Court may deem necessary and proper.

13

14

    DATED:  April 23, 2009

15
                                 SAMUEL S. LIONEL
16                               TODD KENNEDY
                                 LIONEL, SAYER & COLLINS
17

18                               DAVID S. KORZENIK
                                 MILLER, KORZENIK SOMMERS LLP
19

20
                                 DANIEL M. MAYEDA
21                               LEOPOLD, PETRICH & SMITH
                                 Attorneys for Defendants
22                               FRANKIE VALLI, ROBERT J.
                                 GAUDIO, MARSHALL BRICKMAN,
23                               ERIC S. ELICE, DES McANUFF, DSHT,
                                 INC., DODGER THEATRICALS, LTD.
24                               and JB VIVA VEGAS, L.P.

25

26

27

28

14271
Motion #1

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................2

II.   PLAINTIFF MAY NOT STATE COPYRIGHT INFRINGEMENT
      CLAIMS ARISING OUT OF THE DEVITO AUTOBIOGRAPHY
      BECAUSE  A JOINT OWNER OF THAT WORK WAIVED AND
      RELEASED ALL COPYRIGHT CLAIMS RELATED THERETO,
      AND HAS EXPRESSLY AND IMPLIEDLY CONSENTED TO ITS
      USE.................................................................................6

      A.    In the 1999 Letter Agreement, Alleged Copyright Joint Owner
            DeVito Expressly Waived and Released Any Right to Sue Based
            on Copyright Infringement Or Any Other Claims Against
            JERSEY BOYS...............................................................6

      B.    The New Defendants Have a Consent Equivalent To A Non-
            Exclusive License From DeVito To Use the Autobiography In
            JERSEY BOYS and They Have A Release That Accrues
            to Their Benefit..............................................................7

      C.    Because One Joint Owner of a Copyright Can Release Claims
            Arising Out of the Copyrighted Autobiography and/or Grant
            a Non-Exclusive License Thereto, the New Defendants Are
            Immunized From Any Copyright Infringement Claim That
            Could Be Brought By Alleged Joint Owner Corbello.................10

III.  CONCLUSION................................................................11

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Batiste v. Island Records*,
    179 F.3d 217 (5th Cir. 1999) ..................................................................10

*Effects Associates, Inc. v. Cohen*,
    908 F.2d 555 (9th Cir. 1990) ...............................................................5, 8, 9

*Ernestberg v. Mortgage Investors Group*, __F.Supp.2d __, 2009 WL 160241
    (D.Nev. Jan 22, 2009) ...........................................................................6

*Field v. Google Inc.*,
    412 F. Supp. 2d 1106 (D.Nev. 2006) ........................................................9

*Hustlers, Inc. v. Thomasson*,
    253 F. Supp. 2d 1285 (N.D. Ga. 2002) ...................................................11

*Keane Dealer Services, Inc. v. Harts*,
    968 F. Supp. 944 (S.D.N.Y. 1997) ..........................................................9

*Marder v. Lopez*,
    450 F.2d 445 (9th Cir. 2006) ...............................................................6, 10

*McKay v. Columbia Broadcasting Systems, Inc.*,
    324 F.2d 762 (2nd Cir. 1963) ................................................................10

*Meredith v. Smith*,
    145 F.2d 620 (9th Cir. 1944) ................................................................10

*Narrel v. Freeman*,
    872 F.2d 907 (9th Cir. 1989) ..................................................................7

*Oddo v. Ries*,
    743 F.2d 630 (9th Cir. 1984) ..............................................................5, 11

*Piantadosi v. Loew's, Inc.*,
    137 F.2d 534 (9th Cir. 1943) ................................................................10

*Quinn v. City of Detroit*,
    23 F. Supp. 2d 741 (E.D. Mich. 1998) ......................................................9

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) .................................................................8

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ..................................................................6

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

14939

# FEDERAL STATUTES

17 U.S.C. § 102(b) ...................................................................................................7

17 U.S.C. § 204(a) ...................................................................................................9

Federal Rule of Civil Procedure 12(b)(6) ...........................................................5, 6

# TREATISES

1 M. & D. Nimmer, <u>Nimmer on Copyright</u> § 6.10[A] (2007 ed.)............................10

3 M. & D. Nimmer, <u>Nimmer on Copyright</u> § 10.03[A][7] (2007 ed)..........................8

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

14939

e

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This is a claim for copyright infringement or, in the alternative, a claim that Plaintiff is a co-owner of the copyrighted work, "Tommy DeVito: Then and Now" (the "Autobiography"), entitled to share in the proceeds of a "license" given to certain defendants to create the hit Broadway musical play, JERSEY BOYS.  The Autobiography was registered for U.S. Copyright in 1991 by defendant Tommy DeVito, an original member of singing group, The Four Seasons, who claimed to be its sole author.  Rex Woodard, a fan of The Four Seasons who died in 1991, claimed to be a co-author and co-owner of the Autobiography.  Second Amended Complaint ("SAC") ¶¶ 26-35, 41, 74 & Ex. 21.

About a decade after the Autobiography was created, it remained unpublished as interest in The Four Seasons had waned during the 1990s.  *Id.,* ¶ 37.  Nevertheless, the star and the main songwriter of The Four Seasons, Frankie Valli and Bob Gaudio, respectively, had continued their efforts to produce a musical stage play about the group.  In August 13, 1999, Gaudio and Valli entered into a Letter Agreement with DeVito and Rick Macioci, aka Nick Massi, the two other original members of the group  (the "1999 Letter Agreement").[1]  This document provided for a grant of life story rights from DeVito and Massi for use in a Four Seasons-related musical, an agreement by DeVito and Massi to cooperate in the creation of such a musical and an express waiver and release of all claims that could arise in conjunction with such a musical.

In relevant part, the 1999 Letter Agreement specifically provided that:

---

[1]    The 1999 Letter Agreement was attached to the SAC as Exhibit 31, pages 38-41.  For the Court's convenient reference, the 1999 Letter Agreement is also attached hereto as Exhibit A.

- -     "We [Gaudio and Valli] are presently contemplating entering into an agreement which would authorize the creation of a musical stage play based on the life and music of 'The Four Seasons' (the 'Play')."

--     "you [DeVito and Massi] grant to us the exclusive right to use and incorporate the Materials in one or more theatrical productions…"; "Materials" is defined as "certain aspects of your life related to The Four Seasons including, by way of example, your creative contributions, biographies, events in your life, names and likenesses."

--     "The rights granted by you to us hereunder shall continue in perpetuity if the rights in the Play have merged with each other pursuant to the production contract between us and the initial commercial producer."

--     "You … waive any claim in connection with the Materials or Works including, but not limited to, any claim that the Works libel, slander or defame you, or violate any right of privacy, publicity, confidentiality, copyright or other personal or property right."; "Works" is defined collectively as theatrical productions based on the Material and all ancillary exploitations thereof.

--     ". . . the bookwriters of the Play, or their designees, agree to interview you and you agree to make yourselves available for such interviews by the bookwriters or their designees, as they may reasonably request."

--     ". . . in no event shall you have the right to seek injunctive relief or to enjoin or restrain or otherwise interfere with the exploitation, production, distribution or exhibition of the Play or the Works."

--     "This agreement shall inure to our benefit and the benefit of our licensees, successors, designees and assigns."

Exhibit A hereto, pages 1-4 (emphasis added).

As expressly contemplated in the 1999 Letter Agreement, Gaudio and Valli subsequently entered into other agreements including a May 1, 2004 agreement with

- 3 -

DSHT, Inc. and Dodger Theatricals Ltd., through which the musical JERSEY BOYS about The Four Seasons was produced and distributed.  SAC ¶¶ 56-57.

Plaintiff's lawsuit alleges that JERSEY BOYS copied from the Autobiography without her authorization.  On February 27, 2009, Plaintiff filed a Second Amended Complaint alleging various claims against Defendant DeVito, including breach of contract, fraud and conversion.  The Second Amended Complaint also alleges various claims against defendants Gaudio, Valli, DSHT, Dodger Theatricals, JERSEY BOYS co-writers Rick Elice and Marshall Brickman, director Des McAnuff and the producing entity of the JERSEY BOYS production in Las Vegas, JB Viva Vegas, LP (collectively the "New Defendants").

Based on a contested claim that Woodard was a co-author of the Autobiography, and on the allegation that JERSEY BOYS copied the Autobiography, the plaintiff, Donna Corbello, Woodard's widow, alleges in her Second Amended Complaint two alternative theories for recovery.  Either: (1) the 1999 Letter Agreement must be viewed as an attempt by DeVito to transfer to Gaudio/Valli exclusive rights (i.e., 100% of the rights) in the copyright in the Autobiography, which Plaintiff asserts DeVito could not effectively transfer because of Plaintiff's claim that DeVito only owned 50% of the copyright, and thus the transfer was *void ab initio*; or (2) in the alternative, the 1999 Letter Agreement constituted an assignment to Gaudio/Valli of all of DeVito's ownership interest (according to Plaintiff, 50%) in the Autobiography, making Gaudio/Valli 50% co-owners in the Autobiography with Plaintiff owning the remaining 50% interest -- assuming Plaintiff is a co-owner of the rights in the licensed Autobiography -- and entitling Plaintiff to an accounting of all proceeds from the Autobiography, including from JERSEY BOYS.[2]

---

[2]     These two theories of recovery did not become clear until Plaintiff filed her Second Amended Complaint and expressly delineated her copyright and non-copyright infringement claims.

Plaintiff's first theory is the foundation for her Counts 15-17 for copyright infringement under U.S. law because she argues that without a valid license to the Autobiography from DeVito, the New Defendants have infringed the copyright in the Autobiography.  Plaintiff's second theory is the basis for her Counts 13-14, non-copyright claims for alternative declaratory relief and an accounting, which are alleged only against Valli, Gaudio, DSHT and Dodger Theatricals.[3]

The New Defendants vigorously deny that any of them copied any copyrightable material from the Autobiography in creating JERSEY BOYS and further deny that they needed a license to that Autobiography from DeVito or anyone else to produce the play.[4]  They nevertheless bargained for the provisions of the 1999 Letter Agreement (including the life story rights license and copyright infringement release) and are entitled to rely upon that document in defense of this lawsuit brought by the alleged co-author of DeVito's Autobiography.

The New Defendants seek dismissal under Rule 12(b)(6) of Counts 15-17 for U.S. copyright infringement of the Autobiography on the well-established rule in the Ninth Circuit that a co-owner of a copyright, such as plaintiff alleges DeVito was in 1999, may grant a non-exclusive license which protects the grantee from a claim of infringement.  *Oddo v. Ries*, 743 F.2d 630, 633 (9th Cir. 1984).  Ninth Circuit law also provides that even a failed attempt to grant an <u>exclusive</u> license, as a matter of law, may constitute a grant of a non-exclusive license and that such license can extend to the grantee's assignees.  *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990).

---

[3]   Those defendants have separately moved for dismissal of Counts 13-14 in Motion to Dismiss No. 3 filed concurrently herewith.

[4]   All of the New Defendants join in the Motion to Dismiss No. 2 brought by the writers, directors and producers of JERSEY BOYS on the ground that no copyrightable portions of the Autobiography were used in JERSEY BOYS.

LEOPOLD, PETRICH & SMITH
A Professional Corporation

14271
Motion #1

## II. PLAINTIFF MAY NOT STATE COPYRIGHT INFRINGEMENT CLAIMS ARISING OUT OF THE DEVITO AUTOBIOGRAPHY BECAUSE A JOINT OWNER OF THAT WORK WAIVED AND RELEASED ALL COPYRIGHT CLAIMS RELATED THERETO, AND HAS EXPRESSLY AND IMPLIEDLY CONSENTED TO ITS USE

### A. In the 1999 Letter Agreement, Alleged Copyright Joint Owner DeVito Expressly Waived and Released Any Right to Sue Based on Copyright Infringement Or Any Other Claim Against JERSEY BOYS

Plaintiff attached as part of Exhibit 31 of her Second Amended Complaint and extensively referenced in that pleading the 1999 Letter Agreement between DeVito, Massi, Gaudio and Valli.  As such, the Court may consider the 1999 Letter Agreement on this motion to dismiss: "A court may consider evidence on which the complaint 'necessarily relies' if (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez,* 450 F.2d 445, 448 (9th Cir. 2006). *Id.* ("The court may treat such document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)'.") (quoting *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003)).  *See also Ernestberg v. Mortgage Investors Group,* __F.Supp.2d __, 2009 WL 160241, *3 (D.Nev. Jan 22, 2009) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, . . . may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment).

The 1999 Letter Agreement provides, on its face, that DeVito will "waive any claim," including claims for copyright infringement, in connection with a proposed theatrical musical about The Four Seasons and "any ancillary and subsidiary

LEOPOLD, PETRICH & SMITH
A Professional Corporation

14271
Motion #1

exploitations thereof including, without limitation, cast albums, motion picture and televised versions, merchandise and/or other works (collectively 'Works').)" (Exhibit A hereto, at 2-3.)

Plaintiff admits, as she must, that DeVito has waived any claim for copyright infringement arising in any way out of JERSEY BOYS: "The Agreement included a waiver by Defendant DeVito of any and all claims that the use and/or adaptation of such 'Materials' [including DeVito's 'biographies'] would violate any copyrights therein . . . ." SAC ¶54. Thus, even assuming *arguendo* that JERSEY BOYS copied copyrightable material[5] from the Autobiography -- which New Defendants deny -- an alleged joint copyright owner of the Autobiography (DeVito) has waived any infringement claim against JERSEY BOYS.

**B.    The New Defendants Have a Consent Equivalent To A Non-Exclusive License From DeVito To Use the Autobiography in JERSEY BOYS and They Have a Release That Accrues To Their Benefit**

As discussed above, in the 1999 Letter Agreement, DeVito expressly released Valli and Gaudio from any claim in connection with JERSEY BOYS or any ancillary works, including claims for copyright infringement. On its face, the 1999 Letter Agreement also expressly acknowledges that Valli and Gaudio will be entering into additional agreements authorizing and licensing others to write, produce and exploit the musical that ultimately became JERSEY BOYS.

Thus, when he entered into the 1999 Letter Agreement, DeVito understood and agreed that he was releasing any claims he might have, including any copyright claims, arising out of the musical play that ultimately became JERSEY BOYS, and

---

[5]    Biographical and historical facts, as well as other facts, are not protected by copyright law. *Narrel v. Freeman*, 872 F.2d 907 (9th Cir. 1989); 17 U.S.C. § 102(b).

LEOPOLD, PETRICH & SMITH
A Professional Corporation

14271
Motion #1

that his release would extend beyond Valli and Gaudio to the benefit of those who would be involved in writing, producing and exploiting JERSEY BOYS.

Consistent with this, Plaintiff's Second Amended Complaint alleges that DeVito's entry into the 1999 Letter Agreement resulted in DeVito becoming a financial participant in JERSEY BOYS and receiving a royalty percentage of revenues from the exploitation of the Play. SAC ¶¶ 46, 54. DeVito's Answer admits he is aware of JERSEY BOYS and gets a percentage of the profits therefrom. DeVito's Answer to SAC, filed 3/11/09, ¶¶ 46, 54.

Accordingly, based on the pleadings, which incorporate the 1999 Letter Agreement, DeVito has consented to the use of the Autobiography in JERSEY BOYS by all of the New Defendants and has ratified such use by participating in the show's financial success. But if, as alleged by Plaintiff, DeVito was a joint owner with Plaintiff of the copyright to the Autobiography, DeVito could not grant an exclusive license in the Autobiography. *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1145-46 (9th Cir. 2008). DeVito could, however, grant a non-exclusive license to the Autobiography, either expressly or impliedly through his conduct. Indeed, DeVito's entry into the 1999 Letter Agreement and his subsequent, admitted conduct of accepting royalty checks from the producers of JERSEY BOYS, must be regarded as equivalent to a non-exclusive license to the New Defendants. *Id.* at 1146 (even though  license agreement purports to transfer exclusive rights to Sybersound, because Sybersound's licensor was only a co-owner of the copyright, the agreement is deemed to have licensed only non-exclusive rights); *Effects Associates, Inc. v. Cohen*, 908 F.2d at 558 ("A non-exclusive license may be granted orally, or may even be implied from conduct.") (quoting 3 M. & D. Nimmer, Nimmer on Copyright § 10.03[A] at 10-36 (1989 ed.), now § 10.03[A][7] at 10-49 (2007 ed.) ("Nimmer")).

*Effects* is instructive. In that case, defendant Cohen produced a movie and asked plaintiff to create special effects footage for the film. Plaintiff did but Cohen was dissatisfied and paid only part of the originally agreed-upon price. Plaintiff sued

- 8 -

for copyright infringement, claiming that copyright to plaintiff's footage did not transfer to Cohen unless and until he paid the full price. The district court granted summary judgment to Cohen and co-defendant New World, the movie's distributor. The Ninth Circuit affirmed in an opinion by Judge Kozinski, holding that although there was no writing, required by Section 204(a) of the Copyright Act to transfer to the defendants the entire copyright or any exclusive right in plaintiff's footage, as a matter of law, the facts supported the existence of a non-exclusive license in defendants' favor. Importantly, the panel held that because plaintiff understood that its footage would be incorporated by Cohen into a movie and that the movie would then be released by a distributor, the non-exclusive license extended not only to the defendant (Cohen) with whom plaintiff was in privity, but also to the defendant film distributor. 908 F.2d at 559. So it is here. The 1999 Letter Agreement itself recites that DeVito's grant is intended to benefit Valli's and Gaudio's "licensees, successors, designees and assigns." (Ex. A, at 4.)

More recently, in *Field v. Google Inc.*, 412 F.Supp.2d 1106, 1115-16 (D.Nev. 2006), Judge Jones specifically cited with approval *Effects* and Nimmer for the proposition that "[a] copyright owner may grant a non-exclusive license expressly and impliedly through conduct." The court went on to find that "consent to use the copyrighted work need not be manifested verbally and may be inferred based on silence where the copyright holder knows of the use and encourages it." *Id.* at 1116, citing *Keane Dealer Services, Inc. v. Harts*, 968 F.Supp. 944, 947 (S.D.N.Y. 1997) ("Consent given in the form of mere permission or lack of objection is also equivalent to a non-exclusive license.") (emphasis added); *Quinn v. City of Detroit*, 23 F.Supp.2d 741, 753 (E.D. Mich. 1998).

DeVito's actions of entering into the 1999 Letter Agreement knowing that the Autobiography could be used not only by Valli and Gaudio but also by the writers, producers and distributor of JERSEY BOYS, and of accepting royalty checks from the producers for the exploitation of JERSEY BOYS (as Plaintiff has alleged), constitute

- 9 -

the grant of consent equivalent to a non-exclusive license to the New Defendants to use the Autobiography in JERSEY BOYS.

**C.**   **Because One Joint Owner of a Copyright Can Release Claims Arising Out of the Copyrighted Autobiography and/or Grant a Non-Exclusive License Thereto, the New Defendants Are Immunized From Any Copyright Infringement Claim That Could Be Brought By Alleged Joint Owner Corbello**

Because all of the New Defendants have a consent equivalent to a non-exclusive license from DeVito to use the Autobiography in JERSEY BOYS, Plaintiff has no valid copyright infringement claim against the New Defendants. *Meredith v. Smith*, 145 F.2d 620, 621 (9th Cir. 1944) (a "co-owner had the right to give permission" for non-exclusive use of a copyrighted work); *Batiste v. Island Records*, 179 F.3d 217, 224 (5th Cir. 1999) ("An authorization to the defendant from one joint owner will be an effective defense to an infringement action brought by another joint owner."); *McKay v. Columbia Broadcasting Systems, Inc.*, 324 F.2d 762, 763 (2nd Cir. 1963) ("[A] license from a co-holder of a copyright immunizes the licensee from liability to the other co-holder for copyright infringement."); *Piantadosi v. Loew's, Inc.*, 137 F.2d 534, 537 (9th Cir. 1943) (a third party granted a non-exclusive copyright license by one co-owner had no duty to the other co-owner) (affirming summary judgment to defendant licensee); 1 Nimmer § 6.10[A] at 6-35.

The 1999 Letter Agreement and other admissions in the pleadings discussed above are fatal to Plaintiff's copyright infringement claims against the New Defendants. As such, Plaintiff's Counts 15-17 of the Second Amended Complaint must be dismissed. *See Marder v. Lopez*, 450 F.3d at 452-53 (affirming defendants' motion to dismiss plaintiff's copyright infringement claims due to broad release that was attached to plaintiff's complaint). If Plaintiff has any claim at all, it would be against alleged joint copyright holder DeVito whom Plaintiff might contend should account to Plaintiff for any royalties DeVito obtained from the exploitation of the

account to Plaintiff for any royalties DeVito obtained from the exploitation of the Autobiography. *See Oddo v. Ries*, 743 F.2d at 633 (A co-owner of a copyright has a duty to account to the other co-owner); *Hustlers, Inc. v. Thomasson*, 253 F.Supp.2d 1285, 1290 (N.D. Ga. 2002) (plaintiff co-owner's remedy is to seek an accounting against its co-owner; plaintiff has no infringement action against a licensee of the allegedly wrongdoing co-owner).

## III.   CONCLUSION

Plaintiff's claims for copyright infringement under U.S. law (Counts 15-17) depend on her contention that JERSEY BOYS infringed her alleged 50% copyright interest in the DeVito Autobiography and that the New Defendants have no license to use that Autobiography.  Even assuming *arguendo* that JERSEY BOYS copied elements from the Autobiography that were copyrightable -- the subject of Motion No. 2 -- Counts 15-17 cannot state a valid claim because the New Defendants have a consent, equivalent to a non-exclusive license, from DeVito, whom Plaintiff alleged is a co-owner of the copyright to the Autobiography.  As non-exclusive licensees from a co-owner of the allegedly infringing work, the New Defendants are immunized from any claim by Plaintiff, the alleged other co-owner of that work.

Motion No. 1 should be granted and Plaintiff's Counts 15, 16 and 17 should be dismissed with prejudice.

DATED:  April 23, 2009

DANIEL M. MAYEDA
LEOPOLD, PETRICH & SMITH
A Professional Corporation
Attorneys for Defendants
FRANKIE VALLI, ROBERT J.
GAUDIO, MARSHALL BRICKMAN,
ERIC S. ELICE, DES McANUFF, DSHT,
INC.,DODGER THEATRICALS, LTD.
and JB VIA VEGAS L.P.

# EXHIBIT A

# EXECUTED

### EXHIBIT A

Robert Gaudio and Frankie Valli
c/o Peter C. Bennett, Esq.

Beverly Hills, California 90210

Dated as of _____, 1999

Mr. Nicholas Macioci

West Orange, New Jersey 07052

Mr. Thomas Devito
c/o J.R. Reilly

Henderson, Nevada 89014

### Re: "The Four Seasons"

Dear Nicky and Tommy:

For One Dollar ($1.00) and other good and valuable consideration, receipt of which is hereby acknowledged, the parties agree as follows:

We are presently contemplating entering into an agreement which would authorize the creation of a musical stage play based on the life and music of "The Four Seasons" (the "Play"). In connection with the Play, the authors of the play may wish to use or incorporate certain aspects of your life related to The Four Seasons including, by way of example, your creative contributions, biographies, events in your life, names and likenesses (the "Materials"). In consideration of our right to use such Materials, as more fully set forth below, you shall be entitled to the following:

(a) One-fourth (i.e., 25%) of the royalty actually paid specifically for the underlying rights as a whole ("Your Royalty Share"), subject to the same waivers, deferrals and royalty pool calculations as are applicable to us in our capacity as underlying rights holders, provided we shall not enter into an agreement for the underlying rights in which the royalty allocated to underlying rights is less than one-third the aggregate royalty allocated to the book, music and lyrics of the Play without your approval. By way of example only, if 6% of the gross weekly box office receipts ("GWBOR") is paid for

160244/7/JPB/X082/0000/06/15/99

37

Corbello v. DeVito, et al.
Exhibit 31 — 00038

the book, music and lyrics of the Play, the underlying rights shall receive no less than 2% thereof, and you shall be entitled to receive 0.5% thereof. By way of further example, if the book, music and lyrics are allocated 15.6% of weekly operating profits in a royalty pool, the underlying rights shall be allocated no less than 5.2% thereof, and you shall be entitled to receive 1.3% thereof. Your Royalty Share shall be divided between you as follows: 80% to Thomas Devito and 20% to Nicholas Macioci. You will further be entitled to one-fourth of the subsidiary rights income payable to us in our capacity as underlying rights holder, which amount shall be divided between you in the same ratio as applicable to the royalty, provided we shall not enter into an agreement in which the author's share of subsidiary rights allocated to underlying rights is less than one-fourth the entire author's share without your approval. By way of example only, if the author's share of stock and amateur advances is $600,000 (net of agency fees and commissions), underlying rights shall receive no less than $150,000 thereof, and you shall be entitled to receive $37,500 thereof. You shall not be entitled to share in subsidiary rights income derived from the Play or in royalties paid or received for any purpose other than in connection with the underlying rights (such as royalties which may be paid for writing services, or for music or lyrics);

     (b) One-fourth (i.e., 25%) of the advance actually paid specifically for the underlying rights, to be divided equally between you. By way of example only, if a $30,000 advance is paid for the underlying rights, you shall receive $3,750 each. You shall not be entitled to share in monies paid or received for any purpose other than the underlying rights;

     (c) $10,000 of the advance actually paid specifically for underlying rights, such advance to be paid entirely to Nicholas Macioci.

     In consideration of the foregoing payments, you grant to us the exclusive right to use and incorporate the Materials in one or more theatrical productions, and any and all ancillary and subsidiary exploitations thereof including, without limitation, cast albums, motion picture and televised versions, merchandise and/or other works (collectively, "Works"). We shall further have the right to use the Materials in the advertising, publicity and promotion of the Works. You hereby consent to any such use

160244/7/IPB/8082/0000/06/15/99

- 2 -

-13-

Corbello v. DeVito, et al.
Exhibit 31 -- 00039

and agree that the Works may be exploited throughout the
world in all media now existing or later devised, and you
further acknowledge that you will not receive any
compensation for the use of the Materials or in connection
with any of the Works other than the compensation expressly
set forth herein.  The rights granted by you to us
hereunder shall continue in perpetuity if the rights in the
Play have merged with each other pursuant to the production
contract between us and the initial commercial producer.
If the rights of the initial commercial producer lapse
prior to merger, and we enter into a production contract
with another commercial producer within two (2) years
following such lapse of rights, our rights hereunder shall
continue only for the duration of such subsequent
producer's rights, and in perpetuity if merger has occurred
pursuant to our production contract with such subsequent
producer.

Without limitation of the foregoing, we shall have
the right, but not the obligation, to use the Materials in
any manner which we see fit including, without limitation:
to depict you or create or develop a character or
characters based on you either in whole or in part; to
dramatize and/or fictionalize events and incidents in your
life and the manner in which you are depicted; to use,
change, adapt or elect not to use the Materials as we may
determine; and to make any other changes to the Materials
and the Works as we may, in our sole discretion, deem
appropriate.

You waive any right to inspect or approve the
Works or any use of the Materials in connection therewith.
You further waive any claim in connection with the
Materials or Works including, but not limited to, any claim
that the Works libel, slander or defame you or violate any
right of privacy, publicity, confidentiality, copyright or
other personal or property right.

In addition to the foregoing, the bookwriters of
the Play, or their designees, agree to interview you, and
you agree to make yourselves available for such interviews
by the bookwriters, or their designees, as they may
reasonably request.

The rights granted to us herein are irrevocable,
and not subject to rescission or injunction under any
circumstances. In the event of a breach by us, your sole
remedy shall be an action at law for damages actually

L602447/7/JPB/8082/0000/06/15/99

- 3 -

Corbello v. DeVito, et al.
Exhibit 31 -- 00040

Jul-01-99 04:20P GAUDIO/PARKER.

suffered; in no event shall you have the right to seek
injunctive relief or to enjoin or restrain or otherwise
interfere with the exploitation, production, distribution
or exhibition of the Play or the Works.

      We shall have the unrestricted right to assign
this agreement in whole or in part. This agreement shall
inure to our benefit and the benefit of our licensees,
successors, designees and assigns. It shall be binding
upon you, your heirs, executors, administrators,
representatives and assigns and shall be governed by the
laws of the State of New York.

      This agreement is intended to expand and not
limited the rights granted to us pursuant to previous
agreements between the parties. You acknowledge there are
no assurances that the Play will be produced or that any
royalties, subsidiary rights income or other monies will be
received by us and paid to you. You further acknowledge
that, other than as expressly set forth herein, no promises
have been made to you, nor have you relied on any prior
representations in entering into this agreement.

      If the foregoing is acceptable, please countersign
this letter where indicated.

                          Very truly yours,

                              Frankie Valli

                              Robert Gaudio

AGREED AND ACCEPTED:

Nicholas Macioci

Thomas Davito

160744747/1PB/R082/0000/2303/J41/L744091

             - 4 -

Corbello v. DeVito, et al.
Exhibit 31 -- 00041

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is **2049 Century Park East, Suite 3110, Los Angeles, California 90067-3274**.

On April 23, 2009, I served the foregoing document described as **MOTION NO. 1: MOTION BY NEW DEFENDANTS TO DISMISS COUNTS 15 THROUGH 17 OF PLAINTIFF'S SECOND AMENDED COMPLAINT UNDER RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on the interested parties in this action.

☒ by placing the original and/or a true copy thereof enclosed in (a) sealed envelope(s), addressed as follows:

**SEE ATTACHED SERVICE LIST**

☒ **BY REGULAR MAIL:** I deposited such envelope in the mail at 2049 Century Park East, Suite 3110, Los Angeles, California 90067-3274. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

☐ **BY FACSIMILE MACHINE:** I transmitted a true copy of said document(s) by facsimile machine, and no error was reported. Said fax transmission(s) were directed as indicated on the service list.

☐ **BY ELECTRONIC MAIL:** I transmitted a true copy of said document(s) by electronic mail, and no error was reported. Said electronic mail(s) were directed as indicated on the service list.

☐ **BY OVERNIGHT MAIL:** I deposited such documents at the Federal Express Drop Box located at 2049 Century Park East, Suite 3110, Los Angeles, California 90067-3274. The envelope was deposited with delivery fees thereon fully prepaid.

☐ **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand to the above addressee(s).

☒ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 23, 2009, at Los Angeles, California.

Maureen Johnson

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

13365

1

**SERVICE LIST**

| | |
|---|---|
| Gregory H. Guillot<br>Gregory H. Guillot, PC<br>Suite 1000<br>13455 Noel Road<br>Dallas, TX 75240 | Attorney for Plaintiff<br>Donna Corbello<br>Tel:  972-774-4560<br>Fax:  214-515-0411<br>Email: ggmark@radix.net |
| George L. Paul<br>Lewis and Roca<br>40 North Central Avenue<br>Phoenix, AZ 85004-4429 | Attorney for Plaintiff<br>Tel:  602-262-5326<br>Fax:  602-734-3857<br>Email: gpaul@lrlaw.com |
| John L. Kreiger<br>Lewis and Roca LLP<br>3993 Howard Hughes Pkwy.<br>Suite 600<br>Las Vegas, NV 89169-0961 | Attorney for Plaintiff<br>Tel:  702-949-8200<br>Fax:  702-949-8363<br>Email: jkreiger@lrlaw.com |
| Booker T. Evans, Jr.<br>Greenberg Traurig LLP<br>2375 East Camelback Road<br>Suite 700<br>Phoenix, AZ 85016 | Attorney for Defendant<br>Thomas Gaetano DeVito<br>Tel:  602-445-8423<br>Fax:  602-445-8000<br>Email:  EvansBT@gtlaw.com |
| Christopher B. Payne<br>Greenberg Traurig<br>1000 Louisiana<br>Houston, TX 77002 | Attorney for Defendant<br>Thomas Gaetano DeVito<br>Tel.  713-374-3500<br>Fax:  713-374-3505<br>Email:  paynec@gtaw.com |
| Lawrence B. Hancock<br>Greenberg Traurig, LLP<br>1000 Louisiana<br>Houston, TX 77002 | Attorney for Defendant<br>Thomas Gaetano DeVito<br>Tel:  713-374-3500<br>Fax:  713-374-3505<br>Email: hancockb@gtlaw.com |
| Alma Chao<br>Greenberg Traurig, LLP<br>3773 Howard Hughes Parkway<br>Suite 500 North<br>Las Vegas, NV 89169 | Attorney for Defendant<br>Thomas Gaetano DeVito<br>Tel:  702-792-3773<br>Email: chaoa@gtlaw.com |

2

# SERVICE LIST CONTINUED

David S. Korzenik
Miller Korzenik Sommers, LLP
488 Madison Avenue
New York, NY 10022

Attorney for Defendants
Frankie Valli; Robert J. Gaudio;
Marshall Brickman; Eric S. Elice aka
Rick Elice; Des McAnuff; DSHT, Inc.
fka Dodger Stage Holding Theatricals,
Inc.; and Dodger Theatricals, Ltd.
Tel:  212-752-9200
Email: dkorzenik@mkslex.com

Samuel S. Lionel
Lionel, Sawyer & Collins
300 S. Fourth St., Suite 1700
Las Vegas, NV 89101

Attorney for Defendants
Frankie Valli; Robert J. Gaudio;
Marshall Brickman; Eric S. Elice aka
Rick Elice; Des McAnuff; DSHT, Inc.
fka Dodger Stage Holding Theatricals,
Inc.; and Dodger Theatricals, Ltd.
Email:  slionel@lionelsawyer.com

Todd E. Kennedy
Lionel, Sawyer & Collins
300 S. Fourth St., Suite 1700
Las Vegas, NV 89101

Attorney for Defendants
Frankie Valli; Robert J. Gaudio;
Marshall Brickman; Eric S. Elice aka
Rick Elice; Des McAnuff; DSHT, Inc.
fka Dodger Stage Holding Theatricals,
Inc.; and Dodger Theatricals, Ltd.
Email:  tkennedy@lionelsawyer.com

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

13365

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13365