SAMUEL S. LIONEL [Nevada Bar #1766]
TODD KENNEDY [Nevada Bar #6014]
LIONEL, SAWYER & COLLINS
300 So. 4ᵗʰ Street #1700
Las Vegas, Nevada 89101
Telephone:  (702) 383-8884

DANIEL M. MAYEDA *(Admitted Pro Hac Vice)*
LEOPOLD, PETRICH & SMITH, P.C.
2049 Century Park East, Suite 3110
Los Angeles, California 90067-3274
Tel:  (310) 277-3333 • Fax:  (310) 277-7444
Email:  dmayeda@lpsla.com

DAVID S. KORZENIK *(Admitted Pro Hac Vice)*
MILLER KORZENIK SOMMERS LLP
488 Madison Avenue
Suite 1120
New York, New York 10022-5702
Telephone:  (212) 752-9200

Attorneys for Defendants
FRANKIE VALLI, ROBERT J. GAUDIO, MARSHALL
BRICKMAN, ERIC S. ELICE, DES McANUFF, DSHT, INC.,
DODGER THEATRICALS, LTD. and JB VIVA VEGAS, L.P.

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DONNA CORBELLO, an individual<br><br>Plaintiff,<br><br>v.<br><br>THOMAS GAETANO DEVITO, an individual, et al.<br><br>Defendants. | CASE NO.: 2:08-cv-00867-RCJ-PAL<br><br>**MOTION NO. 3: MOTION BY DEFENDANTS VALLI, GAUDIO, DSHT AND DODGER THEATRICALS TO DISMISS COUNTS 13 AND 14 OF PLAINTIFF'S SECOND AMENDED COMPLAINT UNDER RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[Oral Argument Requested]**<br><br>Courtroom:      The Honorable<br>                          Robert C. Jones |

1    Defendants Frankie Valli, Robert J. Gaudio, DSHT, Inc. and Dodger

2  Theatricals, Ltd. move for an Order dismissing Counts 13 and 14 of Plaintiff's Second

3  Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).

4  The ground for the Motion to Dismiss Counts 13 and 14 for alternative declaratory

5  relief and an accounting is that such counts are necessarily based on the assumption

6  that a document executed on August 13, 1999 between and amongst Nick Macioci,

7  Thomas DeVito, Robert Gaudio and Frankie Valli constitutes an assignment of

8  copyright ownership but, contrary to Plaintiff's assumption, that document, on its

9  face, does not transfer any copyright ownership interest.

10    This motion is based upon the following Memorandum of Points and

11  Authorities, the records and files in this action and such oral argument (hereby

12  requested) as the Court may deem necessary and proper.

13

14  DATED: April 23, 2009

15                          SAMUEL S. LIONEL
                            TODD KENNEDY
16                          LIONEL, SAYER & COLLINS

17                          DAVID S. KORZENIK
                            MILLER, KORZENIK SOMMERS LLP
18

19                          DANIEL M. MAYEDA
                            LEOPOLD, PETRICH & SMITH
20                          Attorneys for Defendants
                            FRANKIE VALLI, ROBERT J.
21                          GAUDIO, MARSHALL BRICKMAN,
                            ERIC S. ELICE, DES McANUFF, DSHT,
22                          INC., DODGER THEATRICALS, LTD.
                            and JB VIVA VEGAS, L.P.

23

24

25

26

27

28

- 1 -

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................1

II.     PLAINTIFF'S ALTERNATIVE CLAIMS FOR DECLARATORY
        RELIEF (COUNT 13) AND FOR AN ACCOUNTING (COUNT 14)
        CANNOT STATE A CLAIM BECAUSE THEY ARE PREMISED
        ON AN ASSIGNMENT OF COPYRIGHT THAT DOES NOT EXIST....5

        A.    The Copyright Act Requires an Assignment of Copyright to be
              Expressly Conveyed in Writing...............................................6

        B.    The 1999 Letter Agreement, On Its Face, Cannot Satisfy
              Section 204's Writing Requirement.......................................7

III.    CONCLUSION...................................................................12

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

*Bieg v. Hovnanian Enterprises, Inc.*,
    157 F. Supp. 2d 475 (E.D. Pa. 2001) .......................................................7, 9

*Davis v Blige*,
    505 F.3d 90 (2nd Cir. 2007)...................................................................11

*Effects Associates, Inc. v. Cohen*,
    908 F.2d 555 (9th Cir. 1990) ....................................................... 7, 8, 9, 12

*Ernestberg v. Mortgage Investors Group*, __F.Supp.2d __, 2009 WL. 160241
    (D.Nev. Jan. 22, 2009) ..............................................................................6

*Foraste v. Brown University*,
    290 F. Supp. 2d 234 (D.R.I. 2003)...............................................................7

*Konigsberg International, Inc. v. Rice*,
    16 F.3d 356 (9th Cir. 1994) ...............................................................6, 7, 12

*Lyrick Studios, Inc. v. Big Idea Productions, Inc.*,
    420 F.3d 388 (5th Cir. 2005) ......................................................................7

*Marder v. Lopez*,
    450 F.3d 445 (9th Cir. 2006) ............................................................6, 10, 11

*McKay v. Columbia Broadcasting System, Inc.*,
    324 F.2d 762 (2nd Cir. 1963).....................................................................4

*Oddo v. Ries*,
    743 F.2d 630 (9th Cir. 1984) .....................................................................4

*Pamfiloff v. Giant Records, Inc.*,
    794 F. Supp. 933 (N.D.Cal. 1992) ...........................................................7, 9

*Radio Television Espanola S.A. v. New World Entertainment, Ltd.*,
    183 F.3d 922(9th Cir. 1999) .....................................................................12

### FEDERAL STATUTES

17 U.S.C. § 101...........................................................................................6

17 U.S.C. § 204(a) ..............................................................................6, 7, 9, 13

Federal Rule of Civil Procedure 12(b)(6) ...........................................................6

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

14940

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

In Motion to Dismiss No. 1, the New Defendants seek dismissal of Counts 15-17 for U.S. copyright infringement on the ground that any infringement claim arising out of the copyrighted work, "Tommy DeVito: Then and Now" (the "Autobiography") has been waived and released by Tommy DeVito, whom Plaintiff alleges is a co-owner of the copyright.

In Motion to Dismiss No. 2, defendants Eric Elice and Marshall Brickman (the co-writers of JERSEY BOYS), Des McAnuff (the director of JERSEY BOYS), and Dodger Theatricals, Ltd., DSHT, Inc. and JB Viva Vegas, L.P. (producers of JERSEY BOYS) seek dismissal of Plaintiff's copyright infringement claims under U.S. law on the ground that no copyrightable portions of the Autobiography were used in JERSEY BOYS.

In this Motion to Dismiss No. 3, defendants Frankie Valli, Robert Gaudio, DSHT, Inc. and Dodger Theatricals seek dismissal of Counts 13-14, the non-copyright infringement claims for alternative declaratory relief and an accounting, which were only brought against those defendants.

The Autobiography at issue in this case was registered for U.S. Copyright in 1991 by defendant Tommy DeVito, an original member of singing group, The Four Seasons, who claimed to be its sole author. Rex Woodard, a fan of The Four Seasons who died in 1991, claimed to be a co-author and co-owner of the Autobiography. Second Amended Complaint ("SAC") ¶¶ 26-35, 41, 74 & Ex. 21.

About a decade after the Autobiography was created, it remained unpublished as interest in The Four Seasons had waned during the 1990s. *Id.,* ¶ 37. Nevertheless, the star and the main songwriter of The Four Seasons, Frankie Valli and Bob Gaudio, respectively, had continued their efforts to produce a musical stage play about the group.

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

14867
Motion #3

1      In August 13, 1999, Gaudio and Valli entered into a Letter Agreement with

2   DeVito and Rick Macioci, aka Nick Massi, the two other original members of the

3   group (the "1999 Letter Agreement").[1] This document provided for a grant of life

4   story rights from DeVito and Massi for use in a Four Seasons-related musical, an

5   agreement by DeVito and Massi to cooperate in the creation of such a musical and an

6   express waiver and release of all claims that could arise in conjunction with such a

7   musical.

8      As expressly contemplated in the 1999 Letter Agreement, Gaudio and Valli

9   subsequently entered into other agreements including a May 1, 2004 agreement with

10   DSHT, Inc. and Dodger Theatricals Ltd., through which the musical JERSEY BOYS

11   about The Four Seasons was produced and distributed.  SAC ¶¶ 56-57.

12      Plaintiff's lawsuit alleges that JERSEY BOYS copied from the Autobiography

13   without her authorization.  On February 27, 2009, Plaintiff filed a Second Amended

14   Complaint alleging various claims against Defendant DeVito, including breach of

15   contract, fraud and conversion.  The Second Amended Complaint also alleges various

16   claims against defendants Gaudio, Valli, DSHT, Dodger Theatricals, Elice, Brickman,

17   McAnuff and the producing entity of the JERSEY BOYS production in Las Vegas, JB

18   Viva Vegas, LP.

19      Based on a claim (contested) that Woodard was a co-author of the

20   Autobiography, and on the allegation that JERSEY BOYS copied the Autobiography,

21   the plaintiff, Donna Corbello, Woodard's widow, alleges in her Second Amended

22   Complaint two alternative theories for recovery.  Either: (1) the 1999 Letter

23   Agreement must be viewed as an attempt by DeVito to transfer to Gaudio/Valli

24   exclusive rights (i.e., 100% of the rights) in the copyright in the Autobiography, which

25

26

27      [1] The 1999 Letter Agreement was attached to the SAC as Exhibit 31, pages 38-

28   41.  For the Court's convenient reference, the 1999 Letter Agreement is also attached
hereto as Exhibit A.

- 3 -

1    Plaintiff asserts DeVito could not effectively transfer because of Plaintiff's claim that

2    DeVito only owned 50% of the copyright, and thus the transfer was *void ab initio*; or

3    (2) in the alternative, the 1999 Letter Agreement constituted an "assignment" to

4    Gaudio/Valli of all of DeVito's ownership interest (according to Plaintiff, 50%) in the

5    Autobiography, making Gaudio/Valli 50% co-owners in the Autobiography with

6    Plaintiff owning the remaining 50% interest -- assuming Plaintiff is a co-owner of the

7    rights in the licensed Autobiography -- and entitling Plaintiff to an accounting of all

8    proceeds from the Autobiography, including from JERSEY BOYS.[2]

9         Thus, the viability of Plaintiff's claims depends entirely on the effect of the

10   1999 Letter Agreement.  If that writing did, in fact, assign or transfer DeVito's 50%

11   share of the copyright in the Autobiography, then Plaintiff's copyright infringement

12   claims all fail because the New Defendants would be 50% owners of the copyright

13   and own the right and license to copy and use the Autobiography in whatever manner

14   they wished.[3]  If, on the other hand, the 1999 Letter Agreement did not, in fact,

15   constitute an assignment or exclusive license of DeVito's 50% ownership interest in

16   the copyright in the Autobiography, then Plaintiff's non-copyright claims (Counts 13

17   and 14 for Declaratory Relief and an Accounting, respectively), must fail because they

18   necessarily depend on a showing that Plaintiff is a 50% co-owner of the rights in the

19   Autobiography with Gaudio/Valli and/or DSHT/Dodger.  In her Counts 13 and 14,

20   Plaintiff is effectively making the startling contention that, with regard to the

---

[2]    The Second Amended Complaint is the first pleading to allege a count for alternative declaratory relief relating to the contention that the 1999 Letter Agreement constituted an assignment of DeVito's copyright and to allege an accounting claim against defendants DSHT and Dodger Theatricals.  These are the counts that are the subject of this Motion to Dismiss.

[3]    *See McKay v. Columbia Broadcasting System, Inc.*, 324 F.2d 762, 763 (2nd Cir. 1963) ("[A] license from a co-holder of a copyright immunizes the licensee from liability to the other co-holder for copyright infringement."); *Oddo v. Ries*, 743 F.2d 630, 632-33 (9th Cir. 1984) ("A co-owner of a copyright cannot be liable to another co-owner for infringement of the copyright.").

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

14867
Motion #3

Autobiography, she is a 50%-50% <u>partner</u> with Gaudio/Valli and/or DSHT/Dodger, persons whom she has never met and with whom she has never done business.

This motion demonstrates that, as a matter of law, the 1999 Letter Agreement cannot constitute an assignment or exclusive license of DeVito's ownership interest in the Autobiography, and that Plaintiff's 13th and 14th Counts therefore must be dismissed.

## II.   PLAINTIFF'S ALTERNATIVE CLAIMS FOR DECLARATORY RELIEF (COUNT 13) AND FOR AN ACCOUNTING (COUNT 14) CANNOT STATE A CLAIM BECAUSE THEY ARE PREMISED ON AN ASSIGNMENT OF COPYRIGHT THAT DOES NOT EXIST

Count 13 of the SAC seeks a declaration that the 1999 Letter Agreement constituted an assignment of DeVito's copyright interest in the Autobiography. Plaintiff alleges that such document transferred to Gaudio and Valli 100% of DeVito's 50% co-ownership interest in the copyright to the Autobiography, and that Plaintiff, the putative co-owner of 50% of the copyright to the Autobiography, became a co-owner of the Autobiography with Gaudio and Valli.  Count 13 further alleges that Gaudio and Valli subsequently licensed the Autobiography to Defendants DSHT and Dodger, resulting in Plaintiff becoming a co-owner of the Autobiography with DSHT and Dodger.  SAC ¶¶ 185-187.

Similarly, Plaintiff's 14th Count alleges that she has the right to an equitable accounting from Defendants Gaudio, Valli, DSHT and Dodger of their revenues from JERSEY BOYS and auxiliary works because all of those works were based on the Autobiography, of which Plaintiff is allegedly a co-owner with Gaudio/Valli and/or DSHT/ Dodger.  *Id.* ¶¶ 188 - 197.

Thus, Plaintiff's claim in Counts 13 and 14 that Defendants Gaudio, Valli, DSHT and Dodger are co-owners (with Plaintiff) of the Autobiography necessarily depends on <u>the threshold allegation that</u> the 1999 Letter Agreement assigned the

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

14867
Motion #3

1    entirety of DeVito's copyright interest in the Autobiography to Valli and Gaudio.

2

3    But, as a matter of law, that allegation is without merit.  It is flatly contradicted

4    by the terms of the 1999 Letter Agreement that is attached to and made part of the

5    SAC including Counts 13 and 14.  SAC ¶¶ 185, 190.  *See Marder v. Lopez*, 450 F.3d

6    445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint

7    'necessarily relies' if (1) the complaint refers to the document; (2) the document is

8    central to the plaintiff's claim; and (3) no party questions the authenticity of the copy

9    attached to the 12(b)(6) motion."); *Ernestberg v. Mortgage Investors Group,*

10   __F.Supp.2d __, 2009 WL 160241, *3 (D.Nev. Jan. 22, 2009) ("[D]ocuments whose

11   contents are alleged in a complaint and whose authenticity no party questions, . . . may

12   be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the

13   motion to dismiss into a motion for summary judgment).  As such, Plaintiff's Counts

14   13 and 14 should be dismissed under Rule 12(b)(6).  *Marder v. Lopez, supra*

15   (affirming motion to dismiss plaintiff's claims for a declaration of her rights as an

16   alleged co-owner of the copyright to a motion picture and for an accounting of motion

17   picture revenues when such claims were contradicted by a release referenced in

18   plaintiff's complaint.); *Konigsberg International, Inc. v. Rice*, 16 F.3d 356 (9th Cir.

19   1994) (deciding invalidity of purported copyright assignment on motion to dismiss).

20   **A.      The Copyright Act Requires an Assignment of Copyright to be**

21   **Expressly Conveyed in Writing**

22   Section 204(a) of the Copyright Act of 1976 provides that any "transfer of

23   copyright ownership" other than by operation of law (such as pursuant to a

24   bankruptcy), must be made in the form of a "writing . . .signed by the owner of the

25   rights conveyed. . . ."  17 U.S.C. § 204(a).  The term "transfer of copyright" is defined

26   as an "assignment, mortgage, exclusive license" or any other conveyance of an

27   exclusive copyright right, but not including a "non-exclusive license."  17 U.S.C. §

28   101.

1    The Ninth Circuit has explained that Section 204's writing requirement is
2    "really quite simple:  If the copyright holder agrees to transfer ownership to another
3    party, that party must get the copyright holder to sign a piece of paper saying so."
4    *Effects Associates, Inc. v. Cohen,* 908 F.2d 555, 557 (9th Cir. 1990) (Kozinski, J.).
5    Chief Judge Kozinski later elaborated that although the writing need not be lengthy or
6    complex, it must reflect the true intention of the parties to actually transfer copyright
7    ownership. *Konigsberg v. Rice,* 16 F.3d at 357 (letter signed by defendant referring to
8    a contract between the parties might have satisfied the statute of frauds but did not
9    transfer copyright ownership because there was no meeting of the minds to so transfer
10   rights).

11    Other courts have agreed that the writing requirement may only be met by a
12   document that is intended to convey ownership of a copyright or an exclusive right in
13   a copyright.  Thus, there was no assignment where the writing did not refer to the
14   domain of copyright ownership but rather to other interests such as the right to record
15   compositions (*Pamfiloff v. Giant Records, Inc.* 794 F.Supp. 933, 935 (N.D.Cal. 1992))
16   or the transfer of breach of contract claims (*Bieg  v. Hovnanian Enterprises, Inc.*, 157
17   F.Supp.2d 475, 480-82 (E.D. Pa. 2001).  *See also Lyrick Studios, Inc. v. Big Idea*
18   *Productions, Inc.,* 420 F.3d 388, 392 (5th Cir. 2005) (to satisfy Section 204(a), the
19   writing "must. . . show an agreement to transfer copyright."); *Foraste v. Brown*
20   *University*, 290 F.Supp.2d 234, 240 (D.R.I. 2003) (writing held insufficient to transfer
21   copyright ownership given that it "fails to make any reference at all to the subject
22   matter of the rights to be transferred. . . .").

23   **B.**    **The 1999 Letter Agreement, On Its Face, Cannot Satisfy Section**
24          **204's Writing Requirement**
25   Plaintiff's Counts 13 and 14 allege and assume that the 1999 Letter Agreement
26   constitutes an assignment or exclusive license of 100% of DeVito's 50% copyright
27   ownership interest in the written manuscript that Plaintiff alleges was co-authored by
28   Rex Woodward and DeVito a decade earlier.  SAC ¶¶ 54 and 81, incorporated by

- 7 -

1    reference into Counts 13 and 14.

2

3    But the 1999 Letter Agreement is not described as an "Assignment" or a

4    "License"; it never uses the words "assignment" or "license"; it does not refer to

5    DeVito (or Massi) as an "assignor" or "licensor" nor to Gaudio and/or Valli as an

6    "assignee" or "licensee"; it does not identify any copyrighted work, let alone an

7    unpublished 1988-91 manuscript that is authored by DeVito and/or Woodard; and it

8    makes no reference to DeVito's sole or partial ownership of the copyright in the

9    Autobiography. *See* SAC, Ex. 31. Nothing in the 1999 Letter Agreement states or

10   suggests that Gaudio and Valli even knew of the existence of the Autobiography at the

11   time they entered into the Letter Agreement in 1999.

12   The language of the 1999 Letter Agreement also reveals the lack of any intent

13   by the parties to convey any copyright ownership interest of DeVito to Gaudio and

14   Valli. Moreover, although Paragraph 81 of the Second Amended Complaint alleges

15   that DeVito intended in the 1999 Letter Agreement to assign or exclusively license all

16   of his rights in the Autobiography, DeVito's Answer denies any such intention.

17   DeVito's Answer to Second Amended Complaint ¶ 81, filed March 11, 2009.

18   Similarly, Gaudio and Valli disclaim any intent to acquire through the 1999 Letter

19   Agreement any assignment of or exclusive license to the Autobiography. New

20   Defendants' Answer to First Amended Complaint ¶ 76, filed October 31, 2008.[4]

21   Where, as here: (1) the purported assignor (DeVito) did not even intend to

22   assign away his copyright ownership rights, and (2) the purported assignees (Gaudio

23   and Valli) disclaim any intent to acquire copyright ownership of any Autobiography,

24   then a person not even a party to the purported assignment (plaintiff) cannot be heard

25   to assert that the document in question nevertheless worked an involuntary

26

27   _____

28   [4] While Gaudio and Valli have not yet answered the SAC, their position on the
     1999 Letter Agreement will remain the same.

- 8 -

1  assignment. *See Effects Associates,* 908 F.2d at 557 ("Section 204 ensures that the

2  creator of a work will not give away his copyright inadvertently and forces a party

3  who wants to use the copyrighted work to negotiate with the creator to determine

4  precisely what rights are being transferred and at what price."); *Pamfiloff,* 794 F.Supp.

5  at 937 ("[W]e understand the policy underlying Section 204(a) to be tipped in favor of

6  the original holder of the copyrighted material" and away from a transfer of ownership

7  interests unless the transfer is "clearly documented."); *Bieg v. Hovnanian Enterprises*,

8  157 F.Supp.2d. at 480 ("[A]ny ambiguity in the transferred document must be

9  construed in favor of the original copyright holder in order to avoid such inadvertent

10  transfers.").

11      Simply put, the 1999 Letter Agreement, on its face, was not intended to and

12  cannot reasonably be construed to effectuate a transfer of 100% of DeVito's alleged

13  50% interest in the copyright to an unidentified, decade-old manuscript of which

14  Gaudio and Valli were not even aware.  Because the 1999 Letter Agreement cannot,

15  as a matter of law, constitute the writing that is required under the Copyright Act of

16  1976 to effectuate an assignment of DeVito's copyright interest in the Autobiography,

17  Plaintiff's Counts 13 and 14, which depend on a valid assignment, do not state a valid

18  claim and must be dismissed.[5]

19      New Defendants anticipate that Plaintiff may point to the language in the 1999

20  Letter Agreement that DeVito and Massi "grant. . . .the exclusive right to use and

21  incorporate the Materials" in a musical stage play based on the life and music of The

22  Four Seasons musical group.  But "Materials" is a defined term in the 1999 Letter

23  Agreement referring to the life story rights that DeVito and Massi were conveying to

---

25      [5]    Although the 1999 Letter Agreement does not satisfy the requirements
for an assignment of copyright ownership under Section 204, it does support a finding
26  that DeVito consented to the use of the Autobiography in the creation and exploitation
of the musical that ultimately became JERSEY BOYS.  As a result, the 1999 Letter
27  Agreement constitutes an implied non-exclusive license to use the Autobiography.
*See Effects Associates*, 908 F.2d at 555-59 (where copyright assignment fails under
28  Section 204, court can find an implied non-exclusive license, which does not require a
writing).  *See* New Defendants' Motion to Dismiss No. 1.

1  Gaudio and Valli so that Gaudio and Valli could proceed to authorize the creation of a

2  musical about The Four Seasons and ancillary Works (collectively, the "Works"),

3  which Works would portray each of the four principal members of the group:  "The

4  authors of the play may wish to use or incorporate certain aspects of your life related

5  to The Four Seasons including, by way of example, your creative contributions,

6  biographies, events in your life, names and likenesses (the 'Materials')."  The

7  document also requires DeVito and Massi to "make yourselves available for such

8  interviews by the bookwriters. . . as they may reasonably request" and permits the

9  play's creators "to dramatize and/or fictionalize events and incidents in your life and

10  the manner in which you are depicted; to use, change, adapt or elect not to use the

11  Materials as we may determine; and to make any other changes to the Materials and

12  the Works as we may, in our sole discretion, deem inappropriate."  (See Exhibit "A"

13  hereto.)

14       Thus, by its plain terms, the granting language in the 1999 Letter Agreement

15  merely conveys the right to use DeVito's and Massi's names, likenesses and life story

16  rights.[6]  These are rights Plaintiff's counsel himself has publicly asserted must be

17  obtained in order for a play about The Four Seasons to depict actual members of the

18  group.  *See* Greg Gulliot's 08/16/06 message to the chat group on the fan website,

19  "Frankie Valli and The Four Seasons" (for convenient reference, copy attached hereto

20  as Exhibit "B").

21       If the 1999 Letter Agreement was actually intended to assign DeVito's

22  copyright interest in the Autobiography, it would have, at a minimum, specifically

23

24       [6]     The language in the 1999 Letter Agreement parallels the grant of life
25  story rights language discussed in and attached as an Appendix to the *Marder v. Lopez*
    opinion, 450 F.3d at 454-55 (Marder agrees to provide research, interviews and other
26  services in connection with the preparation of a screenplay and grants the right to use
    such services and "the story of Marder's life and her experiences as a dancer, and such
27  uses may be factual and/or fictional with the right to make such changes therein and
    thereto as [producers] in their sole discretion may determine in connection with said
28  motion picture FLASHDANCE. . . ").

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

14867
Motion #3

1   identified the manuscript so there could be no misunderstanding of the property being

2   conveyed to Gaudio and Valli.  In addition, since DeVito had secured a copyright

3   registration for the Autobiography in 1991 (SAC ¶ 42 & Ex. 21), the 1999 Letter

4   Agreement undoubtedly would have made specific reference to this copyright

5   registration if DeVito's copyright interest was being transferred.  Indeed, both the

6   copyright registration and a copy of the manuscript would have been attached to and

7   made part of the 1999 Letter Agreement if that document was supposed to assign to

8   Gaudio and Valli all of DeVito's copyright interest in the Autobiography.  The 1999

9   Letter Agreement does none of those things.  It clearly does not state or suggest that

10  DeVito is assigning to Gaudio and Valli any copyright interest he may have in the

11  Autobiography and, under the settled law discussed above, such a fundamental grant

12  of rights cannot simply be implied or assumed to be included within the term

13  "Materials," especially when that term's definition does not identify any copyright

14  interest, any copyright registration or the Autobiography.

15       Plaintiff also might rely on the word "copyright" in the waiver section of the

16  1999 Letter Agreement.  But that paragraph, on its face, constitutes a broad waiver of

17  any possible claim by DeVito and Massi "in connection with the Materials or Works

18  including, but not limited to any claim that the Works libel, slander, or defame you or

19  violate any right of privacy, publicity, confidentiality, copyright or other personal or

20  property right."  A waiver or release of an infringement claim is not the same as an

21  assignment of copyright ownership.  *Davis v Blige*, 505 F.3d 90, 102 (2nd Cir. 2007)

22  ("Licenses and assignments function differently from settlements and releases. . . .").

23       The fact that the 1999 Letter Agreement both grants life story rights and waives

24  the right to sue on various claims including copyright infringement, does not

25  transform the document into an assignment of copyright ownership or an exclusive

26  license of copyright interests.  The recent case of *Marder v. Lopez, supra,* is

27  instructive.  There, the plaintiff dancer sold her life story rights to Paramount and

28  cooperated with a writer who created the screenplay for the motion picture

- 11 -

1    FLASHDANCE. Analogously to the instant case, the plaintiff signed a document that

2    both granted to Paramount her life story rights to make a movie and waived various

3    claims arising out of creation of the movie. 450 F.3d at 447. Plaintiff subsequently

4    sued when she saw that Sony, under an apparent license from Paramount (but without

5    her consent), was using elements from FLASHDANCE in an unrelated music video.

6    The district court granted the defendant's motion to dismiss under Rule 12(b)(6) after

7    reviewing plaintiff's life story release with Paramount. The Ninth Circuit affirmed

8    finding that it is typical for entertainment companies involved in making a project

9    based on a real person to secure a document that both grants life story rights and

10    releases claims that might arise from the project. *Id.* at 452 ("As Paramount points

11    out, it is generally recommended that a party seeking to acquire life story rights for

12    use in a motion picture include both [waiver of claims and grant of rights] clauses in

13    such an agreement. *See Jay S. Kenoff*, 1-5 Entertainment Industry Contracts Form 5-1

14    ¶¶ 1-2 (Donald C. Farber, ed., Matthew Bender & Co., Inc. 2004).")

15       Because the 1999 Letter Agreement, on its face, constitutes a waiver of claims

16    and a grant of life story rights - - not an assignment of or exclusive license to any

17    copyright interest DeVito might hold in an undisclosed manuscript -- Plaintiff's 13th

18    and 14th Counts should be dismissed as a matter of law. *See, eg., Konigsberg v. Rice,*

19    16 F.3d at 356 (affirming motion to dismiss after finding purported transfer document

20    insufficient under Section 204(a)); *Effects Associates,* 908 F.2d at 559 (finding no

21    transfer of copyright ownership as a matter of law); *Radio Tel. Espanola S.A. v. New*

22    *World Entertainment, Ltd.*, 183 F.3 922, 927-29 (9th Cir. 1999) (affirming summary

23    judgment against plaintiff claiming transfer, for failure to "satisfy" the requirements of

24    Section 204(a)).

25

26    **III.**    **CONCLUSION**

27       Plaintiff's non-copyright claims (Counts 13 and 14) depend solely on the

28    contention that the 1999 Letter Agreement constitutes an assignment or exclusive

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

14867
Motion #3

1   license of 100% of Tommy DeVito's ownership interest in his Autobiography. This

2   Motion demonstrates that the 1999 Letter Agreement, as a matter of law, cannot

3   satisfy the requirements under Section 204 of the Copyright Act for a writing that

4   actually conveys ownership of a copyright interest. Because Plaintiff cannot show

5   that DeVito transferred his ownership interest to any defendant, Counts 13 and

6   14 cannot state a claim and must be dismissed with prejudice.

7

8

DATED:  April 23, 2009

DANIEL M. MAYEDA
LEOPOLD, PETRICH & SMITH
A Professional Corporation
Attorneys for Defendants
FRANKIE VALLI, ROBERT J.
GAUDIO, MARSHALL BRICKMAN,
ERIC S. ELICE, DES McANUFF, DSHT,
INC., DODGER THEATRICALS, LTD.
and JB VIVA VEGAS, L.P.

- 13 -

14867
Motion #3

# EXHIBIT A

# EXECUTED

## EXHIBIT A

Robert Gaudio and Frankie Valli
c/o Peter C. Bennett, Esq.

Beverly Hills, California 90210


Dated as of _____, 1999

Mr. Nicholas Macioci
___ ____ ____ __
West Orange, New Jersey 07052

Mr. Thomas Devito
c/o J.R. Reilly
___ ___ ___.
Henderson, Nevada 89014

Re: "The Four Seasons"

Dear Nicky and Tommy:

For One Dollar ($1.00) and other good and valuable consideration, receipt of which is hereby acknowledged, the parties agree as follows:

We are presently contemplating entering into an agreement which would authorize the creation of a musical stage play based on the life and music of "The Four Seasons" (the "Play"). In connection with the Play, the authors of the play may wish to use or incorporate certain aspects of your life related to The Four Seasons including, by way of example, your creative contributions, biographies, events in your life, names and likenesses (the "Materials"). In consideration of our right to use such Materials, as more fully set forth below, you shall be entitled to the following:

(a) One-fourth (i.e., 25%) of the royalty actually paid specifically for the underlying rights as a whole ("Your Royalty Share"), subject to the same waivers, deferrals and royalty pool calculations as are applicable to us in our capacity as underlying rights holders, provided we shall not enter into an agreement for the underlying rights in which the royalty allocated to underlying rights is less than one-third the aggregate royalty allocated to the book, music and lyrics of the Play without your approval. By way of example only, if 6% of the gross weekly box office receipts ("GWBOR") is paid for

160244/7/JPB/5082/0000/06/15/99

37

Corbello v. DeVito, et al.
Exhibit 31 -- 00038

the book, music and lyrics of the Play, the underlying
rights shall receive no less than 2% thereof, and you shall
be entitled to receive 0.5% thereof. By way of further
example, if the book, music and lyrics are allocated 15.6%
of weekly operating profits in a royalty pool, the
underlying rights shall be allocated no less than 5.2%
thereof, and you shall be entitled to receive 1.3% thereof.
Your Royalty Share shall be divided between you as follows:
80% to Thomas Devito and 20% to Nicholas Macioci. You will
further be entitled to one-fourth of the subsidiary rights
income payable to us in our capacity as underlying rights
holder, which amount shall be divided between you in the
same ratio as applicable to the royalty, provided we shall
not enter into an agreement in which the author's share of
subsidiary rights allocated to underlying rights is less
than one-fourth the entire author's share without your
approval. By way of example only, if the author's share of
stock and amateur advances is $600,000 (net of agency fees
and commissions), underlying rights shall receive no less
than $150,000 thereof, and you shall be entitled to receive
$37,500 thereof.  You shall not be entitled to share in
subsidiary rights income derived from the Play or in
royalties paid or received for any purpose other than in
connection with the underlying rights (such as royalties
which may be paid for writing services, or for music or
lyrics);

          (b) One-fourth (i.e., 25%) of the advance
actually paid specifically for the underlying rights, to be
divided equally between you. By way of example only, if a
$30,000 advance is paid for the underlying rights, you
shall receive $3,750 each. You shall not be entitled to
share in monies paid or received for any purpose other than
the underlying rights;

          (c) $10,000 of the advance actually paid
specifically for underlying rights, such advance to be paid
entirely to Nicholas Macioci.

          In consideration of the foregoing payments, you
grant to us the exclusive right to use and incorporate the
Materials in one or more theatrical productions, and any
and all ancillary and subsidiary exploitations thereof
including, without limitation, cast albums, motion picture
and televised versions, merchandise and/or other works
(collectively, "Works"). We shall further have the right
to use the Materials in the advertising, publicity and
promotion of the Works. You hereby consent to any such use

160244/7/TPB/8082/0000/06/15/99

- 2 -

Corbello v. DeVito, et al.
Exhibit 31 -- 00039

and agree that the Works may be exploited throughout the world in all media now existing or later devised, and you further acknowledge that you will not receive any compensation for the use of the Materials or in connection with any of the Works other than the compensation expressly set forth herein.   The rights granted by you to us hereunder shall continue in perpetuity if the rights in the Play have merged with each other pursuant to the production contract between us and the initial commercial producer. If the rights of the initial commercial producer lapse prior to merger, and we enter into a production contract with another commercial producer within two (2) years following such lapse of rights, our rights hereunder shall continue only for the duration of such subsequent producer's rights, and in perpetuity if merger has occurred pursuant to our production contract with such subsequent producer.

Without limitation of the foregoing, we shall have the right, but not the obligation, to use the Materials in any manner which we see fit including, without limitation: to depict you or create or develop a character or characters based on you either in whole or in part; to dramatize and/or fictionalize events and incidents in your life and the manner in which you are depicted; to use, change, adapt or elect not to use the Materials as we may determine; and to make any other changes to the Materials and the Works as we may, in our sole discretion, deem appropriate.

You waive any right to inspect or approve the Works or any use of the Materials in connection therewith. You further waive any claim in connection with the Materials or Works including, but not limited to, any claim that the Works libel, slander or defame you or violate any right of privacy, publicity, confidentiality, copyright or other personal or property right.

In addition to the foregoing, the bookwriters of the Play, or their designees, agree to interview you, and you agree to make yourselves available for such interviews by the bookwriters, or their designees, as they may reasonably request.

The rights granted to us herein are irrevocable, and not subject to rescission or injunction under any circumstances. In the event of a breach by us, your sole remedy shall be an action at law for damages actually

160244/7/JPB/8082/0000/06/15/99

Corbello v. DeVito, et al.
Exhibit 31 -- 00040

PAGE.12                     212 308 00
Jul-01-99 04:20P GAUDIO/PARKER.                                      P.01

suffered; in no event shall you have the right to seek
injunctive relief or to enjoin or restrain or otherwise
interfere with the exploitation, production, distribution
or exhibition of the Play or the Works.

We shall have the unrestricted right to assign
this agreement in whole or in part. This agreement shall
inure to our benefit and the benefit of our licensees,
successors, designees and assigns. It shall be binding
upon you, your heirs, executors, administrators,
representatives and assigns and shall be governed by the
laws of the State of New York.

This agreement is intended to expand and not
limited the rights granted to us pursuant to previous
agreements between the parties. You acknowledge there are
no assurances that the Play will be produced or that any
royalties, subsidiary rights income or other monies will be
received by us and paid to you. You further acknowledge
that, other than as expressly set forth herein, no promises
have been made to you, nor have you relied on any prior
representations in entering into this agreement.

If the foregoing is acceptable, please countersign
this letter where indicated.

                                        very truly yours,

                                        Frankie Valli

                                        R. Gaudio

AGREED AND ACCEPTED:

Nicholas Macioci

Thomas Devito

160244/7/IPB/1042/0000/0301/06/15/99                  - 4 -

P.06

P.12    NO.976                    FRANKLIN WEINRIB   4:26PM  1999  AUG.13

                                        40

Corbello v. DeVito, et al.
Exhibit 31 — 00041

# EXHIBIT B

FrankieValliandTheFourSeasons · Frankie Valli and The 4 Seasons Fan Site

I didn't know about the DVD of videos! That will make it worthwhile. Maybe
I missed that part of the discussion - I've been out of town!

Regards,

Greg

---

Message #5260  Mon Aug 28, 2006 1:14 am
RE: [FrankieValliandTheFourSeasons] Definitive Pop: Frankie Valli & The Four
Seasons

This too is disappointing. It's actually something less than In Season,
which is still very much in print. They keep releasing Greatest Hits
packages that are virtually identical! Where's the value-added stuff?

Can you tell us more about the 4 CD boxed set? I hope it has GILG on it! I
know we can't get rights to the Motown stuff for a compilation, but for
goodness sake, there's lots of other material to draw from that the Seasons
partnership does own.

Greg

---

Message #5259  Mon Aug 28, 2006 1:09 am
RE: [FrankieValliandTheFourSeasons] Re: Definitive Pop: Frankie Valli & The F...

That's a little disappointing - I thought we were getting new material!
Personally, I don't want to hear Frankie doing hits of others, even if they
sound good. Not Frankie's fault obviously - he is not a writer. But I'm
disappointed in Bob. Come on Bob, you can still write songs!!!!

Greg

---

Message #5226 Wed Aug 23, 2006 6:27 pm
RE: [FrankieValliandTheFourSeasons] Four Seasons Bowling Alley Union NJ

According to my legal database, there is no Four Seasons bowling alley in
the entire state of New Jersey, much less one in Union, New Jersey.

I think the days of independent bowling alleys are well over - the big
companies bought up the independents long ago.

Greg

---

Message #5200  Wed Aug 16, 2006 7:45 am
RE: [FrankieValliandTheFourSeasons] Re: Comments

FrankieValliandThe4Seasons · Frankie Valli and The 4 Seasons Fan Site

Speaking of Jersey Boys . . .

a) I'm going back to New York to see it a second time with a friend, on Saturday, September 23rd - I can't wait. I hope I get JLV this time, rather than Dominic Nolfi. I know JLV has been ill, but is now back.

b) Although they may well have kind hearts, it's not from the kindness of their hearts that Frankie and Bob have to give money to Tommy and to Nick's estate, and that fact really doesn't tell us anything about them - Tommy and Nick's estate are entitled to compensation as a matter of law. Both have "rights of publicity" which they exploited during their lifetimes - rights to the use and exploitation of their names and likenesses, and both of their names and likenesses are used in the play. If they were not paid, they would have a right to sue and receive compensation, just as Elvis Presley's estate and Princess Diana's estate do when products and programs use their names and likenesses. This "right of publicity" is well-established at common law. Fortunately, it doesn't appear there is any problem here -- Tommy has been quoted as saying he's happy with the checks coming in. Believe me, if the checks weren't coming in, Tommy wouldn't be happy, and would have a right to be unhappy, and right now up with more money than he's getting now if he had to sue to enforce his rights! Moreover, because the right of publicity is heritable, Nick's estate has a right to his share. The same could be said of anyone whose name or likeness is used in a play. Now, the amount of the compensation due is not set by law, but that the right exists, can't had to be accommodated. One can't make a play about someone and not give that person money - believe me!

Greg

Message #5163  Sat Aug 5, 2006 8:06 pm
RE: [FrankieValliandTheFourSeasons] Re: Great Jersey Boys review

There's a difference between assessing the Jersey Boys' capacity to be a credible, standalone, live musical act, and assessing the merits of the play, which is more than just a Beatlemania-type presentation of sound-alike reproductions of Four Seasons classics.

The play is fantastic, and is a four-Tony-award-winner. It is the best musical Broadway currently has on offer. That is significant. I hope to see the play for the second time in September. I have little interest in seeing the Jersey Boys perform on the Today show or something like that, however. I've seen their appearances, and they don't do too much for me in that context. They are no Four Seasons. But the play is great and they are fantastic in it, and the performances they give on stage for the play are outstanding.

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is **2049 Century Park East, Suite 3110, Los Angeles, California 90067-3274**.

On April 23, 2009, I served the foregoing document described as **MOTION NO. 3: MOTION BY NEW DEFENDANTS TO DISMISS COUNTS 15 THROUGH 17 OF PLAINTIFF'S SECOND AMENDED COMPLAINT UNDER RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on the interested parties in this action.

☒ by placing the original and/or a true copy thereof enclosed in (a) sealed envelope(s), addressed as follows:

**SEE ATTACHED SERVICE LIST**

☒ **BY REGULAR MAIL:** I deposited such envelope in the mail at 2049 Century Park East, Suite 3110, Los Angeles, California 90067-3274. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

☐ **BY FACSIMILE MACHINE:** I transmitted a true copy of said document(s) by facsimile machine, and no error was reported. Said fax transmission(s) were directed as indicated on the service list.

☐ **BY ELECTRONIC MAIL:** I transmitted a true copy of said document(s) by electronic mail, and no error was reported. Said electronic mail(s) were directed as indicated on the service list.

☐ **BY OVERNIGHT MAIL:** I deposited such documents at the Federal Express Drop Box located at 2049 Century Park East, Suite 3110, Los Angeles, California 90067-3274. The envelope was deposited with delivery fees thereon fully prepaid.

☐ **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand to the above addressee(s).

☒ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 23, 2009, at Los Angeles, California.

_____
Maureen Johnson

1

**SERVICE LIST**

| | |
|---|---|
| Gregory H. Guillot<br>Gregory H. Guillot, PC<br>Suite 1000<br>13455 Noel Road<br>Dallas, TX 75240 | Attorney for Plaintiff<br>Donna Corbello<br>Tel: 972-774-4560<br>Fax: 214-515-0411<br>Email: ggmark@radix.net |
| George L. Paul<br>Lewis and Roca<br>40 North Central Avenue<br>Phoenix, AZ 85004-4429 | Attorney for Plaintiff<br>Tel: 602-262-5326<br>Fax: 602-734-3857<br>Email: gpaul@lrlaw.com |
| John L. Kreiger<br>Lewis and Roca LLP<br>3993 Howard Hughes Pkwy.<br>Suite 600<br>Las Vegas, NV 89169-0961 | Attorney for Plaintiff<br>Tel: 702-949-8200<br>Fax: 702-949-8363<br>Email: jkreiger@lrlaw.com |
| Booker T. Evans, Jr.<br>Greenberg Traurig LLP<br>2375 East Camelback Road<br>Suite 700<br>Phoenix, AZ 85016 | Attorney for Defendant<br>Thomas Gaetano DeVito<br>Tel: 602-445-8423<br>Fax: 602-445-8000<br>Email: EvansBT@gtlaw.com |
| Christopher B. Payne<br>Greenberg Traurig<br>1000 Louisiana<br>Houston, TX 77002 | Attorney for Defendant<br>Thomas Gaetano DeVito<br>Tel. 713-374-3500<br>Fax: 713-374-3505<br>Email: paynec@gtaw.com |
| Lawrence B. Hancock<br>Greenberg Traurig, LLP<br>1000 Louisiana<br>Houston, TX 77002 | Attorney for Defendant<br>Thomas Gaetano DeVito<br>Tel: 713-374-3500<br>Fax: 713-374-3505<br>Email: hancockb@gtlaw.com |
| Alma Chao<br>Greenberg Traurig, LLP<br>3773 Howard Hughes Parkway<br>Suite 500 North<br>Las Vegas, NV 89169 | Attorney for Defendant<br>Thomas Gaetano DeVito<br>Tel: 702-792-3773<br>Email: chaoa@gtlaw.com |

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

13365

# SERVICE LIST CONTINUED

David S. Korzenik
Miller Korzenik Sommers, LLP
488 Madison Avenue
New York, NY 10022

Attorney for Defendants
Frankie Valli; Robert J. Gaudio;
Marshall Brickman; Eric S. Elice aka
Rick Elice; Des McAnuff; DSHT, Inc.
fka Dodger Stage Holding Theatricals,
Inc.; and Dodger Theatricals, Ltd.
Tel:  212-752-9200
Email: dkorzenik@mkslex.com

Samuel S. Lionel
Lionel, Sawyer & Collins
300 S. Fourth St., Suite 1700
Las Vegas, NV 89101

Attorney for Defendants
Frankie Valli; Robert J. Gaudio;
Marshall Brickman; Eric S. Elice aka
Rick Elice; Des McAnuff; DSHT, Inc.
fka Dodger Stage Holding Theatricals,
Inc.; and Dodger Theatricals, Ltd.
Email:  slionel@lionelsawyer.com

Todd E. Kennedy
Lionel, Sawyer & Collins
300 S. Fourth St., Suite 1700
Las Vegas, NV 89101

Attorney for Defendants
Frankie Valli; Robert J. Gaudio;
Marshall Brickman; Eric S. Elice aka
Rick Elice; Des McAnuff; DSHT, Inc.
fka Dodger Stage Holding Theatricals,
Inc.; and Dodger Theatricals, Ltd.
Email:  tkennedy@lionelsawyer.com

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

13365