# NEW DEFENDANTS' EXHIBIT C
## Letter from George Paul dated March 10, 2010



LEWIS
AND
ROCA
——— LLP ———
L A W Y E R S

George L. Paul
40 North Central Avenue
19th Floor
Phoenix, Arizona 85004-4429

Direct Dial: (602) 262-5326
Direct Fax: (602) 734-3857
GPaul@LRLaw.com
Admitted in: Arizona

Our File Number: 49341-00002

March 10, 2010

**VIA EMAIL AND U.S. MAIL**

David S. Korzenik
Miller Korzenik Sommers, LLP
488 Madison Avenue
New York, NY 10022

Daniel M. Mayeda
Leopold, Petrich & Smith, P.C.
2049 Century Park East, Suite 3110
Los Angeles, California 90067-3274Mayeda

  Re:  **Electronic and Other Discovery Issues**

Gentlemen:

   This letter follows up on our telephone conversation on March 4, 2010, about electronically stored information, and I am also writing to comply with our meet and confer obligations under Local Rule 26-7. We have several outstanding issues about electronic and other discovery, and this letter addresses certain of those issues. The letter demands: (1) that you produce the native files of the various versions of the script of the Jersey Boys production, which we understand was written on the Movie Magic® Screenwriter Program; (2) production of all emails that are relevant or discoverable in the case, including but not limited to emails to and from the writers and director of Jersey Boys; (3) to get full information about your preservation activity for all the electronically stored information, and to put you on notice that we may want to forensically inspect the hard drives of the machines that purportedly have been forensically preserved; and (4) production of all copies of all scripts without limitation, with an index or other identifying system.

   We have been discussing these issues for some time now, and therefore, a recap of our correspondence on these issues may be helpful.

     **All Scripts and Native ESI files of Drafts of Scripts**

   1.  On January 6, 2009, I emailed you to indicate that we did not believe that you had been prepared to discuss electronically stored information ("ESI") in our meet and confer Rule 26(f) conference. We wanted to discuss what you had done, but you refused to speak with us. We also wanted to discuss how the ESI was preserved. We wanted to cooperate to discuss

2162820.1

PHOENIX   •   TUCSON   •   LAS VEGAS   •   RENO   •   ALBUQUERQUE   •   SILICON VALLEY
www.lewisandroca.com



what you actually have; and what you did to preserve it, with details, and to discuss "immediate production issues." See Exhibit 1.

2.     On January 15, 2009, I wrote you a long email in anticipation of your production of ESI, which was, at that time, due in *three weeks*. We indicated we wanted details of what you had, and gave examples of what we wanted to know, including the custodians who had created, received, or possessed the ESI. We also wanted to know the applications involved, so that we could decide to request native files, or not. We indicated we wanted all versions of the book, or scripts, or outline, of any type of file. We understand that you had many versions of the script that you have not produced to us, despite our repeated requests. See Exhibit 2.

3.     On February 23, 2009, Greg Guillot and David Korzenik spoke on the phone about our purchasing the Screenwriter software, which David had informed us was the application that was used to write the script of Jersey Boys. David knew that we were purchasing it, and that such purchase was in anticipation of our reviewing the native files that constituted the evolving script of Jersey Boys. In this conversation, David indicated that he would produce the native files of the drafts of the script.

4.     On March 10, 2009, Greg Guillot wrote David Korzenik asking when we were going to getting the native files they had spoken about. We also pointed you to the place where you could buy the Screenwriter program at the best price. See Exhibit 3.

5.     On April 6, 2009, Greg wrote to David and Dan asking where the native files for the script/book were. We pointed out that in reliance on the earlier conversations, we had purchased the Movie Magic® Screenwriter Program. This email pointed out that by that point, we had had several emails requesting and discussing ESI, but that you had simply ignored all of the communications. We also pointed out that we wanted to confer about this before filing any motions. See Exhibit 4.

6.     On April 22, 2009, in response to the news from you that you were shipping us certain documents from the Rick Elice and Marshall Brickman files, Greg wrote that he assumed that the native files we had requested were coming, and that Mr. Korzenik had admitted, three weeks earlier, that he had the material in his possession. See Exhibit 5. Such files were not produced.

7.     On October 18, 2009, Greg wrote to Dan, David and Todd complaining that you had not given us all the scripts, including those used in La Jolla, and that you had only produced later versions of the scripts for other productions. This email again complained that we were entitled to every script, and every draft of every script, and that we needed the native files in order to see all that, because it was chronicled in the software that you had us purchase. See Exhibit 6. Such material was not produced.



8.       On December 18, 2009, Greg wrote Dan a long email about numerous outstanding discovery matters, and brought up the March 31, 2010 discovery cutoff. This email also pointed out that we did not yet have the native files. See Exhibit 7.

We have all along demanded the native files of the scripts, and presumably, the software that we purchased will read the files you have. We have a very good reason for demanding native format, as the program has helpful metadata that allows tracking of how the various versions have changed. See Exhibit 8.

After the 2006 revisions to the Civil Discovery Rules, discovery of ESI was institutionalized, and rules were promulgated. Under Rule 34(b)(1)(C), litigants are allowed to specify native or other formats in their ESI requests. We hereby once again demand your production of each and every script that you have in hard copy, with an index and other organizing material, without limitation. In addition, for drafts of scripts that exist in native electronic format, we reiterate our repeated and longstanding demand for such ESI. When a party originally requests a native format for production, the rules require you to produce it. See Rule 34(b)(1)(C), Fed. R. Civ. Pro., and Advisory Committee Note thereto. *See also Cenveo Corp, Inc. Southern Graphic Systems*, 2009 WL 4042898 (D. Minn 2009); *Hagenbuch v. 3B6 Systemi*, 2006 WL 665005 (N.D. Ill. 2006); and *Palm Bay Intern. Inc. v. Marchesis De Borolo S.p.A.*, 2009 WL 3757054 (E.D.N.Y. 2009).

Accordingly, please produce all versions of all final or draft scripts that you have in hard copy, and all native format files of scripts or drafts of scripts you have in your possession that constitute ESI. Since we have been asking for this material continually for over a year, and you have it in your possession, we think it only reasonable to receive this material in the next ten days. Otherwise, we will file a motion to compel.

## Emails and Discharge of Preservation Obligations; Forensic Imaging

We do not believe we have received emails to and from the creative people who wrote the play. If we have, please point them out to us. If our information is correct, it is exceedingly hard to believe that people would collaborate on a project as big as Jersey Boys, including using their computers to write the script, without using email systems to facilitate the creative process. In addition, the business people no doubt used email to put together the various entities. Please produce all this material to us. As we wrote to you over a year ago, we need to know custodians, and who has what in what format and storage device. We are open to discussing this on the telephone with you further to discharge our cooperation obligations.



LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

David S. Korzenik
Daniel M. Mayeda
March 10, 2010
Page 4

In addition, given the long delays, we need more information about how and where this material currently resides, and how you have instituted your litigation hold. How have you insured that continued use of systems is not overwriting old emails and other ESI? Have you imaged hard drives? You have all along asserted that you have taken appropriate steps to preserve ESI, but you have refused to discuss what you have done. Now that over a year has gone by since we started demanding such information, there is a strong risk of spoliation of evidence. We are entitled to know what you have done to preserve the emails and other ESI.

Accordingly, please produce all relevant emails in the case. If you refuse to do so, please explain on what grounds. And in any event, please explain exactly what you have done to implement litigation holds.

We will follow up this letter with other letters about discovery issues.

We look forward to hearing from you, and to receiving this discovery to which we are entitled, no later than March 19, 2010.

Sincerely,

George L. Paul

GLP/ell
Attachments

2162820.1

# EXHIBIT 1

**From:** Paul, George
**Sent:** Tuesday, January 06, 2009 1:46 PM
**To:** 'Daniel Mayeda'; ggmark@radix.net; Krieger, John; McKirgan, Robert; Regalado, Edgar
**Cc:** dkorzenik@mkslex.com; Todd Kennedy; HancockB@gtlaw.com; Paul, George
**Subject:** RE: Draft Joint Status Report

Dear Dan, David and Todd:

This follows up on my letter sent to you on December 2, 2008, regarding electronic discovery matters.

We still don't believe you ever complied with your Rule 26 (f) obligation to be prepared to discuss electronically stored information issues with us when we had our Rule 26 (f) conference on the telephone. In a later conversation, Dan indicated that David was writing us a response to that December 2 letter, but we never received one. In addition, in the Joint Status Report you indicated you had already fully satisfied all your preservation duties, notwithstanding your non-response to my letter and inability to discuss things just a few days before. This leaves us curious, to say the least, about what is happening with the evidence to which we are entitled.

We would like to discuss with you, as part of the Rule 26 (f) process, what you have done. There are certain technical issues where we might be able to reach an agreement, but simply refusing to talk almost always ensures problems and more litigation. For example, if any relevant evidence has been deleted from a computer, we would likely expect that you have already had the drives to such computer forensically imaged, some time ago, so that we can find the deleted data without further corruption. We assume you have done such things since you have in blanket fashion assured both us, and the Court, that you have already satisfied your obligations. Refusing to communicate with us about such technical and conceivably costly issues really invites ancillary litigation, or at least expands that realm. We don't want that and some sort of cooperation is key to avoiding problems in that area. Let's cooperate and be transparent here.

There are other issues to discuss as well, such as how ESI is being preserved, in general, when it does not have to be imaged.

Having a cooperative discussion about what you have, and what you did to preserve it (including who and what entities you talked to, and covering what media), will then allow us to discuss the immediate production issues, such as form of production, and other technical issues, etc, that we must now discuss since you will be getting document requests from us shortly, and will be producing this ESI to us very shortly.

Please let us know a convenient time to talk on the phone. I don't think a long exchange of emails will get the job done here as there needs to be a dialogue.

Thanks much,


George L. Paul


----

For more information about Lewis and Roca LLP, please go to
www.lewisandroca.com.

Phoenix (602) 262-5311
Tucson (520) 622-2090
Las Vegas (702) 949-8200
Reno (775) 823-2900
Minden (775) 586-9500
Albuquerque (505) 764-5400

This message is intended only for the use of the individual or entity to which it is addressed. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the sender of this E-Mail by return E-Mail or by telephone.

3/9/2010

In accordance with Internal Revenue Service Circular 230, we advise you that if this email contains any tax advice, such tax advice was not intended or written to be used, and it cannot be used, by any taxpayer for the purpose of avoiding penalties that may be imposed on the taxpayer.

# EXHIBIT 2

## Paul, George

| | |
|---|---|
| **From:** | Paul, George |
| **Sent:** | Thursday, January 15, 2009 3:26 PM |
| **To:** | 'Daniel Mayeda'; ggmark@radix.net; HancockB@gtlaw.com; paynec@gtlaw.com; dkorzenik@mkslex.com |
| **Cc:** | Paul, George |
| **Subject:** | Suggestions Re Electronic Discovery |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

Dear David and Dan:

Despite its somewhat rowdy nature, I personally thought the call today went well, and appreciate the honest exchange of information and of professional concerns about costs, not wasting money, and the other things we talked about. We seem to be on the same page with you and are ourselves quite sensitive to costs -- and welcome any exchange of information about how to avoid unnecessary expense in the case. So let's keep up that dialogue. Along that line, in my understanding Greg will be calling David very soon to discuss the entity and business issues, so that we can avoid suing any inappropriate parties, when we amend the complaint.

### Our Expedited Discovery Track Means We Expect Compliance With Discovery Deadlines In the Rules and In Orders

First, let us all come to grips that we are on an expedited discovery track. All of us want to be as accommodating as possible to opposing counsel. That is clearly in our nature.

Unfortunately, it just does not seem that we can give any more extensions on discovery deadlines. That will keep you folks busy, we know, but we are simply forced to expect compliance with deadlines so that we can keep to the Court ordered schedule. As plaintiffs, we bear slightly more of the responsibility for keeping the case moving in accordance with the schedule, and must take a leadership role in this area.

We say this not to be aggressive chest pounders, or disagreeable, just to give you a friendly reminder that the case administration here will be a little less flexible than what all of us might otherwise expect of one another, and enjoy. So let's discuss this up front.

### Suggestions Regarding Electronic Discovery

On electronic discovery in particular, here is what we suggest in order to get us the relevant material, at the least hassle and cost to everyone. This proposals does not address the financial information for now. Bob McKirgan of our team will be in touch with you about that. He too will want to work with you constructively to get what we are duty bound to obtain, but with minimal hassle and waste of time and money on everyone's part.

1. That ESI "creative" and "correspondence" material (shorthand for everything we requested except the hard core financial stuff) will be due to us in 3 weeks or so. So let's take this time to discuss what you have learned you have, and then make some decisions about how the lawyers in the case can receive and consider the discoverable stuff as evidence.

2. We would like to know how many storage devices (like hard drives and diskettes) the custodians have the creative and correspondence evidence on. Usually such evidence is identified by "custodian." For example, Rick Elice might have two laptops and a desktop. If all of them contain evidence in the case, then let's identify each such storage device, by name of custodian, identification of type of machine, serial number, and the operating system on the machine. Then, please give us some sort of useable index of what's on there, including the application so that we can shortly thereafter discuss what application, or format, we will try to agree on to read the evidence. For example, a Rick Elice machine might contain: (1) various emails that are discoverable; (2) 30

word documents; (3) 29 PDF files; (4) three excel spreadsheets; and (5) 129 versions of a proprietary script writing file, such as the Movie Script Writer application you mentioned this morning.

Please also describe and identify the applications, or programs, that interact with the data so we can decide if we will go the PDF route you suggested, or whether we will request native files . If you tell us what you have, it will allow us to better try to reach an agreement with you.

After you give us the rough index for each custodian, we can then discuss what format we could agree to. There are many ways to achieve things, like keeping the evidence immutable and sacrosanct, including the provisions of our protective order. We need to try to agree on format issues. Greg and I agree we will want all versions of the book, or script, or outline, of any type or file. If you have a concern we will be tampering with the evidence, then we can mutually handle that any number of ways. That is not a reason not to give us otherwise discoverable evidence. Neither one of us thinks that 129 versions of the script is a particularly large number, given that there need not be any privilege review.

After we get your index, which we would propose to have a week from Monday, January 26th, we can talk about such things as do we just want a printouts of an email, or must we have the native file; how to handle the proprietary script writing files and application , the PDF option , and so on.

I hope this is agreeable. It seems a pretty modest suggestion.

We will be in touch with you about the index soon.

Please call with any questions.

George L. Paul

# EXHIBIT 3

Case 2:08-cv-00867-RCJ-PAL   Document 298-4   Filed 03/18/10   Page 13 of 34

## Paul, George

| | |
|---|---|
| **From:** | Gregory H. Guillot [ggmark@radix.net] |
| **Sent:** | Tuesday, March 09, 2010 9:38 AM |
| **To:** | Paul, George |
| **Subject:** | FW: Jersey Boys - Discovery Responses |
| **Importance:** | High |

---

**From:** Gregory H. Guillot [mailto:ggmark@radix.net]
**Sent:** Tuesday, March 10, 2009 10:35 PM
**To:** 'Paul, George'; 'Krieger, John'; 'McKirgan, Robert'; 'Regalado, Edgar'
**Subject:** FW: Jersey Boys - Discovery Responses

fYI
GHG

---

**From:** Gregory H. Guillot [mailto:ggmark@radix.net]
**Sent:** Tuesday, March 10, 2009 10:34 PM
**To:** 'David S. Korzenik'
**Subject:** RE: Jersey Boys - Discovery Responses

Thanks, David.

Are we going to be getting the native files we spoke of?  We have purchased Movie Magic Screenwriter in anticipation of that production.  By the way, I found the best price (and a downloadable version) here: http://www.screenstyle.com/movscreen.html

It's a hundred bucks less than the retail price.

Best,
Greg

---

**From:** David S. Korzenik [mailto:dkorzenik@mkslex.com]
**Sent:** Tuesday, March 10, 2009 9:24 PM
**To:** ggmark@radix.net
**Subject:** Jersey Boys - Discovery Responses

Greg:
As I noted when we spoke Monday, I will be sending you all our responses on the Brickman, Elice and McAnuff Interrogs and RFD's by this Friday.
All of them have been, as you know, traveling -- one is in flight today, the other two are still out of town. So, I need the time to get their review and signatures.
When I was out sick I did not know that they would be out of town and out of the country at this time.
But I will send you pdf's of the responses by Friday. I will be glad to be done with them so that we can move on to other things.
Many thanks. Best. -- David

David S Korzenik, Esq.
Miller Korzenik Sommers LLP
488 Madison Avenue
New York, NY 10022
Tel.: 212-752-9200
Fax: 212-688-3996
DKorzenik@mkslex.com

# EXHIBIT 4

## Paul, George

**From:**   Gregory H. Guillot [ggmark@radix.net]
**Sent:**   Tuesday, March 09, 2010 9:34 AM
**To:**   Paul, George
**Subject:** FW: When can we expect your documents?

---

**From:** David S. Korzenik [mailto:dkorzenik@mkslex.com]
**Sent:** Monday, April 06, 2009 6:47 PM
**To:** 'Paul, George'; 'Daniel Mayeda'
**Cc:** ggmark@radix.net; 'McKirgan, Robert'; 'Krieger, John'; 'Regalado, Edgar'
**Subject:** RE: When can we expect your documents?

George:
We are having the numbers stamped on the documents and doing a final review and will then send them on –
looking to the end of the week.
As to "native files" I am looking further into that and how to do it. I do not presently have the software. But will
touch base with Greg also by end of week on this.
Best. – David

David S Korzenik, Esq.
Miller Korzenik Sommers LLP
488 Madison Avenue
New York, NY 10022
Tel.: 212-752-9200
Fax: 212-688-3996
DKorzenik@mkslex.com

---

**From:** Paul, George [mailto:GPaul@lrlaw.com]
**Sent:** Monday, April 06, 2009 5:45 PM
**To:** dkorzenik@mkslex.com; Daniel Mayeda
**Cc:** ggmark@radix.net; McKirgan, Robert; Krieger, John; Regalado, Edgar; Paul, George
**Subject:** When can we expect your documents?

Dear David and Dan:

Some time ago, we received your response to the document requests we propounded to Mr. Brickman, Elice and
McAnuff.

A couple of things:

1. When can we expect production of the responsive documents?  As you know, we are responding to a motion
to summary judgment and this material may be relevant and necessary for our response.  Please let us know
soon.

2. Where are the native files of the various versions of the script/book?  We purchased the Movie Magic
Screenwriter software.  And we have written you several emails about ESI, and unfortunately, you have simply
ignored each one of these communications.  I would like to hear from you, and possibly confer about this, before
filing any motions.

Many thanks.  Let's keep out of trouble in the discovery arena.

George

----

For more information about Lewis and Roca LLP, please go to
www.lewisandroca.com.

Phoenix (602) 262-5311
Tucson (520) 622-2090
Las Vegas (702) 949-8200
Reno (775) 823-2900
Minden (775) 586-9500
Albuquerque (505) 764-5400

This message is intended only for the use of the individual or entity to which it is addressed. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the sender of this E-Mail by return E-Mail or by telephone.

In accordance with Internal Revenue Service Circular 230, we advise you that if this email contains any tax advice, such tax advice was not intended or written to be used, and it cannot be used, by any taxpayer for the purpose of avoiding penalties that may be imposed on the taxpayer.

3/9/2010

# EXHIBIT 5

**Paul, George**

| | |
|---|---|
| **From:** | Gregory H. Guillot [ggmark@radix.net] |
| **Sent:** | Tuesday, March 09, 2010 9:42 AM |
| **To:** | Paul, George |
| **Subject:** | April 22, 2009 Demand for Native Files |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

**From:** Gregory H. Guillot [mailto:ggmark@radix.net]
**Sent:** Wednesday, April 22, 2009 11:01 PM
**To:** 'Daniel Mayeda'; 'dkorzenik@mkslex.com'; 'tkennedy@lionelsawyer.com'
**Cc:** 'Paul, George'; 'Krieger, John'; 'McKirgan, Robert'; 'Regalado, Edgar'
**Subject:** RE: Brickman, Elice & McAnuff Documents; DSHT and Dodger Discovery Responses and Documents and JB Viva Vegas Initial Disclosures and Documents

Any info on McAnuff and the remaining overdue material, responses, and disclosures set forth below?

We are definitely trying to work this out amicably, and I think you know that, but if we can't even get status information from you and if you guys don't even bother to request extensions from us but just ignore deadlines and send things when you please, we need to schedule a conference ASAP regarding motions to compel.

I trust that the material from Elice and Brickman will include the native files we requested that David admitted were in his possession over three weeks ago?

Best,

Greg Guillot

**From:** Daniel Mayeda [mailto:dmayeda@lpsla.com]
**Sent:** Wednesday, April 22, 2009 7:31 PM
**To:** ggmark@radix.net; dkorzenik@mkslex.com; tkennedy@lionelsawyer.com
**Cc:** Paul, George; Krieger, John; McKirgan, Robert; Regalado, Edgar
**Subject:** RE: Brickman, Elice & McAnuff Documents; DSHT and Dodger Discovery Responses and Documents and JB Viva Vegas Initial Disclosures and Documents

fyi, I am sending out today a new disc containing docs from Rick Elice and Marshall Brickman's files.  the one to Greg is being sent Fed Ex.

**From:** Gregory H. Guillot [mailto:ggmark@radix.net]
**Sent:** Wednesday, April 22, 2009 12:35 PM
**To:** dkorzenik@mkslex.com; Daniel Mayeda; tkennedy@lionelsawyer.com
**Cc:** Paul, George; 'Krieger, John'; McKirgan, Robert; Regalado, Edgar
**Subject:** Brickman, Elice & McAnuff Documents; DSHT and Dodger Discovery Responses and Documents and JB Viva Vegas Initial Disclosures and Documents
**Importance:** High

Dear David and Dan:

A few weeks ago, you had indicated that we would have document production from Elice, Brickman, and McAnuff by that Friday.  However, while you have supplemented Valli's and Gaudio's production, we still have no documents at all from those three Defendants, although the deadline for tendering them passed long ago.

Additionally, we have no responses to our discovery requests to DSHT or Dodger.  The DSHT discovery was served on February 6, 2009.  The Dodger Theatricals discovery was served a couple of days later.  However, we've received nothing yet, and I can't find (please correct me if I'm wrong) any request by you to extend the deadline for responses to the DSHT or Dodger discovery.

We need the production and responses due from your clients and we also must process the documents for Summation once they are received from you so we can review them, and there is little time left before our response is due to DeVito's Motion, and we'd expected to see your responses and documents in connection with that.  Also, as you know, the New Defendants' deadline for responding to our Second Amended Complaint is tomorrow.  It will certainly be unconscionable for you to file some sort of dispositive motion for those defendants tomorrow, when you have withheld discovery responses, so I hope that's not what's on your agenda.

Finally, the Initial Disclosures of JB Viva Vegas were due under the Rules 10 days after that party was served with our Second Amended Complaint.  However, we have not received those Initial Disclosures and no extension has been requested.

Could you please advise us concerning all of these issues?

Sincerely,
Greg Guillot


**CONFIDENTIALITYNOTICE:**Thisemail message may be protected by the attorney/client privilege, workproduct doctrine or other confidentiality protection. If you believe ithas been sent to you in error, do not read it. Instead, please notifythe sender that you have received the message in error, then delete it.Thank you.

---

**Gregory H Guillot, Esq.**
President

**Work:** (972) 774-4560
**Mobile:** (214) 769-4699
**Fax:** (214) 515-0411

**Email:** ggmark@radix.net
http://www.linkedin.com/in/gregoryhguillot

Gregory H.
13455 Noel
Suite 1000
Dallas, TX

See who we know in common

3/9/2010

# EXHIBIT 6

1297271.1

**Paul, George**

| | |
|---|---|
| **From:** | Gregory H. Guillot [ggmark@radix.net] |
| **Sent:** | Tuesday, March 09, 2010 9:41 AM |
| **To:** | Paul, George |
| **Subject:** | Another Demand for the Native Files in October 2009 |
| **Importance:** | High |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

**From:** Gregory H. Guillot [mailto:ggmark@radix.net]
**Sent:** Sunday, October 18, 2009 7:10 PM
**To:** 'Daniel Mayeda'; 'David Korzenik'; 'Todd Kennedy'
**Cc:** 'Paul, George'; 'Krieger, John'; 'McKirgan, Robert'; 'Regalado, Edgar'
**Subject:** Question about JB 0011749
**Importance:** High

Dear David and Dan:

In JB 0011749, you have provided us with a document which, on its face, consists of Des McAnuff's notes on the Jersey Boys script as of February 2004. It says it's his notes on Jersey Boys.

However, you have only provided us with the pages that relate to "Spring" – the early days section. It does not appear that you have provided us with the complete document, but instead, with an excerpt, with notes on only the beginning of the play, though the document is supposed to be notes re: all of the play.

Can you please confirm that this document ends at JB 0011755 and that you have not withheld a single page of these notes from us? If that is not the case, we need a full explanation – it is entirely unacceptable for you to pick and choose among these notes for what you think we might be interested in. As you well know by know, our allegations of copying are not limited to the "Spring" section of the play.

We have numerous problems with your discovery responses and nonresponses but for right now, on an urgent basis, I need to know if Des McAnuff's notes regarding the play at JB 0011749, stopped with his discussion of "Spring." If they did not – and they do not appear to – they appear to be his notes on one section only – we need a complete explanation, along with the missing documents, pronto.

You also have not given us all the scripts. You have not produced the various scripts used in La Jolla. You have produced only later versions of the scripts for the other productions (some as late as late-2008), which on their face indicate that there were earlier versions of the script that were changed with the version you provided, yet you have not produced those earlier versions which actually were used and performed. In other cases, you have submitted redlined versions of scripts to show changes from another version, but not the actual scripts as used by the actors. Only 6 scripts have been produced, and those are not all the scripts with all the variations that have been used. We are entitled to every script and every draft of every script and we need the native files in order to see all that, as it is chronicled in the software you had us purchase.

Please address these two issues as soon as possible. We will be contacting you about other problems but right now, what I'm extremely concerned about is the limitation of the notes re: Jersey Boys to the Spring section, as

3/9/2010

shown in JB 0011749.  We are entitled to every single page, and need every single page.

Greg Guillot

| **Gregory H Guillot, Esq.**<br>President | | |
|---|---|---|
| Work: (972) 774-4560<br>Mobile: (214) 769-4699<br>Fax: (214) 515-0411 | Email: ggmark@radix.net<br>[in] http://www.linkedin.com/in/gregoryhguillot | **Gregory H. Guillot, PC**<br>13455 Noel Road<br>Suite 1000<br>Dallas, TX 75240 USA |
| See who we know in common | | Want a signature like this? |

3/9/2010

# EXHIBIT 7

**Paul, George**

| | |
|---|---|
| **From:** | Gregory H. Guillot [ggmark@radix.net] |
| **Sent:** | Tuesday, March 09, 2010 9:40 AM |
| **To:** | Paul, George |
| **Subject:** | Another ESI-related Communication |

**Importance:**   High

George -- in December 2009, I sent this email which also mentions the failure to produce the native files -- third paragraph from the bottom

-----Original Message-----
From: Gregory H. Guillot [mailto:ggmark@radix.net]
Sent: Friday, December 18, 2009 1:51 AM
To: 'Daniel Mayeda'; 'gpaul@lrlaw.com'; 'jkrieger@lrlaw.com'; 'Robert McKirgan'
Cc: 'Christopher Payne'; 'dkorzenik@mkslex.com'; 'HancockB@gtlaw.com'; 'Max Couvillier'; 'tkennedy@lionelsawyer.com'
Subject: RE: Request to reconsider extension denial

Dan:

Neither of our main concerns are addressed in your message below, and they are crucial. In addition to the discovery deadline issues, the main difficulty we have with your request is your desire to withhold one of your briefs in order to file it contemporaneously with another brief, even after the first brief has been completed. You are writing the briefs. You cannot write two at one time, nor, procedurally, can you present arguments relating to one motion in your reply to the other. You will be finished with one of the briefs before the other, just as we completed our briefs one at a time. Given the press of the hearing date and the discovery cut-off date and the regrettable status of discovery, *we* need the amount of time we are insisting upon in order to prepare our end of the case. These are important motions and arguments. We are not dictating to you; we are expressing our own bottom line needs, which we have been consistent regarding all along, and which cannot possibly be a surprise to you, if you have spoken with David.

The desire for a hearing on January 27 was yours, not ours (we did not want a hearing that late) and the existing deadlines for your briefing were carefully discussed with David over a three or four-day period, and carefully scheduled with a January 27 hearing date in mind so that we would have the rock bottom minimum amount of time we needed to prepare for that hearing and address the discovery issues and do what we need to do on our end. We now are having that hearing only 1 week later than the date around which these other dates were calculated, but you are requesting 21 days more for two of your replies and one week for the other. This math doesn't work for Motion Nos. 1 and 3, but we are attempting to meet you half-way. The one week extension on Motion No. 2 is acceptable to us, but is not acceptable if we get two other briefs just the week before, 21 days from the deadline set with reference to the hearing date. It's that simple. It has nothing to do with your motives. In order to accommodate you, we need to avoid the dump, and that's what it would be, regardless of your intentions.
It's not about your intentions, but about the effect on us and the case, again with reference to the current Court-ordered deadlines for discovery completion and this hearing.

Dan, we appreciate the fact that you have accommodated our requests for extension, but please keep a couple of things in mind. First, every extension we have obtained was accompanied by lengthy concomitant extensions for you of equal duration on your reply briefs. Second, we have never requested an extension of time for any reason other than the physical inability to finish by a deadline notwithstanding all-nighters dedicated to completing the project, either due to other briefs becoming due in this case near the same time; due to my surgery; or, in one instance, because my largest client was sold and I had to work on their closing and the transition, as the solo that I am. We have never requested an extension for a vacation, or to file our briefs at the same time instead of when they were finished, and most importantly (dispositively) our delays did not push up against a drop-dead hearing date unless we extended the hearing deadline at the same time

1

by stipulation (we have always been concerned that we have sufficient time to prepare for the hearing). We essentially put the case on hold for a month to accommodate your travels to China, and rescheduled the case largely for that purpose. Finally, we have met your motion practice-related generosity (which again was appreciated) by refraining from filing motions to compel and/or a motion for sanctions as you ignored your discovery obligations dating back to February 2009, and we later permitted you to cure those oversights by agreeing to a further extension of time which, if met, would not result in a motion for sanctions or claims that you waived your right to raise objections. Those discovery-related extension grants by us exceed, by months, any extension granted to us for any document in this case, and we still don't have responses; you've made it known to us that we're not going to get compliant responses even after all this time; and when we get your responses, replete with the objections we are allowing you to belatedly raise, we must deal with them so that depositions may proceed and this will occur during the same time period we are being hit with all of your briefs, under your proposal.

I understand that David would like to stay discovery entirely for the *months* it will take the Court to consider and rule on the motions, to delay this case even further, and perhaps this is your expectation of what is going to happen and this is why you are not concerned with the discovery cut-off. However, we are very concerned with it, and it is a significant factor in our decision. I'm sure we can work something out if you will simply move on your desire to file the replies to Nos. 3 and 1 simultaneously. This is really the only reason you gave in your stipulation and that is not a good reason at all because there is no relationship between these motions, and you've had our responses to those particular motions for a long time without having any other motions due in this case during the same period (unlike us). It is not unreasonable to ask you to abandon that rationale and present us with things sequentially, so the prejudice to us is minimized and we can prepare. I can only prepare for one of your motions at a time, so if we have a reply on 1 or 3 I can begin working on that one for the week I'm waiting for the second one. I don't understand why you can't comprehend that this would be helpful, and avoid a situation where everything is dumped upon us at the last minute before the hearing and in the midst of major discovery issues and obligations. This is not a problem you face -- you know what our arguments are, and we don't get to write up any more of them! Thus, you can craft your argument based on things we wrote and filed in September, but you want us to only have a couple of weeks, in the midst of depositions and discovery disputes to deal with yours. Discovery has been withheld from us and that is simply a fact. Were it not so, again, we would not be faced with the same difficulties we face now. The scripts you produced reference other scripts not produced.
We don't have the native files. Your clients have objected to providing us with information on where anecdotes and passages in Jersey Boys originated, which passages in Jersey Boys are truth and fiction; which portions of the Work your clients admit to using for "historical purposes;" whether Jersey Boys New York is the true owner of the production after an assignment referenced in other documents you've produced; etc. Heck, we even asked for all documents relating to other copyright disputes in which your clients are involved, and we're not getting things from the Scfa Entertainment case -- I could go on forever with what you've failed to provide, including all discoverable financial information, such as agreements and communications with investors -- we've been told that you're not going to bother with that because they are not relevant to the motions (a position not supported by the Rules). For goodness sakes, we don't even have all interrogatory responses or written responses and objections to document production requests and we've got a March 31 discovery cut-off! Given that you're not going to be working on all that before Christmas, these issues are all going to come to a head in January, before the hearing, and we are not going to be able to wait any longer to conduct depositions of the octogenarians, septuagenarians, and other crucial parties in the case -- whether or not you comply with paper discovery requests. These issues are inherently related
-- we are working within a case schedule here.

Dan, we were always clear that we would not accommodate any request for extension that was grounded in a desire to file your briefs simultaneously instead of as they were ready, simply to effectuate a simultaneous filing (a goal which has no value and will also give the Judge less time to prepare as he can only read one brief at a time too). *We* were the ones to first use the term, "dump" -- not in an accusatory way, or to characterize your intentions, but in a preventative way, to express what we wanted to avoid!!!
I know that David understands this fully and was always careful to give other reasons for why you needed more time as we were extending your dates each time we requested extensions. David knew that we wouldn't even listen to the "simultaneous filing" rationale, yet that's the only rationale given in your stipulation for a 21 day extension

of time in response to a one week delay in the hearing.  Obviously that raised an issue
and pretty much threw all the negotiations and reasons for the stipulation to move the
hearing date to the period it is scheduled for now right out the window.  I am one man,
and I will be arguing the major part of each of the motions relating to your clients.  I
need time to prepare for all of them -- with your replies in mind -- while also conducting
depositions in this case in January throughout Texas and in Las Vegas (at a minimum) the
same month.  This is the schedule we all have, so we need to keep it in mind.  It would
greatly assist us if you could simply agree to file one reply before the other to
accommodate our own need to prepare.  This will make it more possible for us to provide
you with additional time.

Let's talk about it tomorrow.  I'm truly sorry -- I want to always say, "yes," but in this
instance, saying that would be cutting off my own arm.  I need the time to prepare for the
hearing on all 3 of your motions.

Best regards,
Greg


-----Original Message-----
From: Daniel Mayeda [mailto:dmayeda@lpsla.com]
Sent: Friday, December 18, 2009 12:04 AM
To: ggmark@radix.net; gpaul@lrlaw.com; jkrieger@lrlaw.com; Robert McKirgan
Cc: Christopher Payne; dkorzenik@mkslex.com; HancockB@gtlaw.com; Max Couvillier;
tkennedy@lionelsawyer.com
Subject: Request to reconsider extension denial
Importance: High

Greg,

I was surprised to see your response below declining the simple and reasonable extension
we have asked for to file our Reply Briefs. To resist, you raise a host of other issues
that are not fairly related to a request that does not prejudice you nor have any bearing
on our motions.

We asked you for the extension because we need the time - not, as you suggest, for
ulterior reasons or to "dump" two briefs on you on the same day.  Please remember that I
have eight different clients who must all be consulted and included in this process.  I
have been working long hours and have almost completed a first draft of the Reply to #1,
but it is rough and has not been seen by any of my co-counsel, let alone my multiple
clients (in different cities and all of them pressured with their own personal and
professional needs).  I am still far from being in a position to circulate my drafts to
everyone with whom I must consult, and the holidays will undoubtedly complicate and slow
down this process.

Also, you may feel that Motions #1 and #3 are not related, but we regard them as
complementary and cannot agree to file one before the other is complete.  We should be
allowed to make that determination.

It is impossible for me to finish Reply #1 within 1 week and equally impossible for me to
finish Reply #3 within 2 weeks.  I asked for 3 weeks for both of those Replies because I
reasonably believe that I will need at least two weeks to prepare them, extending time
from December 18 to January
8 is only 13 business days (some of which will be "short days" at my office in terms of
secretarial help), and I have plans to be out of the office between Christmas and New
Year's.

Why do you impugn my motives for seeking this extension and seek to dictate a schedule for
our Replies that will not work for us?  In all of the twelve times you asked us to grant
you extensions on plaintiff's Oppositions, we have never challenged your stated bases for
the extensions, we have never attributed ill motives to you and we never once argued or
quibbled that your reasons were insufficient.  Nor did we ever fail to give you whatever
time you requested or press you to accept less time than you sought.  Indeed, more than
once we suggested to your co-counsel, George, that you should go ahead and take more time
than you initially requested, whatever time you realistically felt you needed to complete

your work, so that you would not have to come back again for additional time.

The due dates for our Replies are now mixed in with the holidays only because, in a collegial and understanding way, we acceded to your many requests for extensions.   It is truly unfair that, having accommodated your needs, we are now being penalized and forced into unreasonable time schedules that impair family time, planned vacation and create hardships for me and my staff, let alone my clients.

I ask you to reconsider your position so that we can avoid having to file a motion on what ought to be a simple accommodation in light of the holidays.

Dan Mayeda

-----Original Message-----
From: Gregory H. Guillot [mailto:ggmark@radix.net]
Sent: Thu 12/17/2009 3:52 PM
To: Daniel Mayeda; gpaul@lrlaw.com; jkrieger@lrlaw.com; 'Robert McKirgan'
Cc: 'Christopher Payne'; dkorzenik@mkslex.com; HancockB@gtlaw.com; 'Max Couvillier';
tkennedy@lionelsawyer.com
Subject: RE: Stip re: extensions for New Defendants' Reply Briefs

Dear Dan:


Consistent with our position in the past, we are amenable giving you an extension of time.
Although, we are rather perplexed by your requested need to extend the time to file the
Reply on Motion to Dismiss No. 1 when you already have a draft prepared, particularly
given that your only reason for wanting the additional time is for strategic reasons
rather than attorney "need."  We believe there is no overlap between the responses to
Motions 1 and 3 that would dictate a "need" to file them at the same time.  These motions
are simple and there is no overlap between them.  One deals with whether the writing
requirement for assignments is met by the 1999 agreement and this is wholly-unrelated to
the other motion dealing with whether DeVito was capable of "waiving" Donna's right to
recover for copyright infringement or whether he issued an "implied nonexclusive license"
to her.  Rather, the reasoning for filing the replies to Motions 1 and 3 appears to be
simply for the purpose of "dumping" the replies on us.  Is there any reason why the
response to Motion No. 1 cannot be finished before the Christmas holiday?
We propose extending the deadline for the Motion 1 reply by 1 week; the Motion 3 reply
within two weeks; and the Motion No. 2 reply to January 15 (as you have requested).


I also believe it is important for you to understand that our concerns are not limited to
merely preparing for the hearing, but also encompass the discovery cut-off date in this
case, which is scheduled to occur at the end of March.  We are not amenable to
rescheduling this case again, and we fully intend to complete all depositions and other
discovery by March 31st.  As such, we intend to take a number of Texas-related depositions
in January and also DeVito's deposition (as he and a doctor have testified that his
condition is "grave" and near death), and certain of your client's depositions as well,
and we will be dispatching deposition notices shortly.
The longer you delay in sending us your replies essentially translates into more of your
drafting time overlapping with discovery, as well as preparing for the hearing.  Our
discovery schedule is somewhat tight, but we intend to meet it, and believe it can be
easily met.  We will therefore not be amenable to any future extensions of time to file
reply briefs.


For this reason, we ask that your 3 reply briefs be staggered and filed promptly upon
completion.  Please keep in mind that in addition to these concerns, we still don't have
all of your discovery documents and responses and I just gave David a further extension of
time on those and we'll have to be reviewing that stuff too and dealing with discovery
disputes, as referenced in our response to Motion No. 2.  This cannot all be dumped on us
so close to the hearing, especially when we are highly doubtful that your clients will
comply fully with your discovery obligations (i.e., where is your privilege log, and are

you providing us all the financial material or withholding it until you determine whether your motions will succeed?), and if things don't improve we will also be dealing with a motion to compel.

I look forward to your response.

Best regards,

Greg

From: Daniel Mayeda [mailto:dmayeda@lpsla.com]
Sent: Thursday, December 17, 2009 2:29 PM
To: gpaul@lrlaw.com; Gregory H. Guillot; jkrieger@lrlaw.com; Robert McKirgan
Cc: Christopher Payne; dkorzenik@mkslex.com; HancockB@gtlaw.com; Max Couvillier; tkennedy@lionelsawyer.com
Subject: Stip re: extensions for New Defendants' Reply Briefs
Importance: High

Greg/George/John,

New Defendants' Reply Briefs for Motions to Dismiss #1 and #3 are due tomorrow.  I have a good handle on Reply #1 but not on #3, and as I have informed you earlier, I want those Reply Briefs to be prepared with reference to each other and filed at the same time.  I believe I need an additional two weeks, but this takes us right into the middle of the holidays and conflicts with my plans to be away between Christmas and New Year's.

Accordingly, I would like an extension for Reply #1 and #3 to Jan. 8, 2010.  Since that is the current deadline for Reply #2, that deadline should be moved back 1 week, to Jan. 15, 2010.

Given that the hearing is now set for Feb. 4, these extensions should still give plaintiff and the Court ample time to analyze the Replies and get reacy for the hearing.

Please see the attached stipulation and let me know if it meets with your approval so I can get it filed today.  Thank you.

Dan Mayeda

*****************************************************************
DANIEL M. MAYEDA
Leopold, Petrich & Smith, P.C.
2049 Century Park East, Suite 3110
Los Angeles, CA  90067
phone (310) 277-3333
fax (310) 277-7444

dmayeda@lpsla.com

# EXHIBIT 8



EXT. OUTER SPACE

The vastness of space. Suddenly a hole in the sky opens
with a flash and a SPACESHIP rumbles into view. On its h
the letters NSEA PROTECTOR. Magnificent, though on close:
inspection it shudders ever so slightly, denoting pre-CGI
model work on a budget. We're watching a TV show.

                    LAREDO (V.O.)
              We're exiting the time knot sir!

INT. NSEA PROTECTOR COMMAND      - SPACE

5 Members of the crew of the NSEA PROTECTOR sit in the lau
circa - 1979-"high-tech" cabin. All of them human except
for DR.

LAZARUS, a purple reptilian-looking alien. LAREDO is 9.  1
exchange relieved smiles.

Easily make multiple revisions
with color-coded  and marked
You can also track all revisions
made and without doubt  THE ALIEN)
                                we live to

                    COMPUTER (O.S.)
              Systems register functional.

                    GWEN
              All systems are working, Commander.
              Commander?

They all turn to look at THE COMMANDER, who turns to reve:
himself dramatically. Good looking. His acting is classic
Charlton Heston take-no-prisoners style. He looks around t
command deck, worried, almost sniffing the air.

                    COMMANDER
              I don't like it.  It was too easy...
              Look for ambient energy fields.

                    LAREDO
              All normal sir... The entire spectrum.

                    COMMANDER
              Check again Laredo.







**Gregory H Guillot, Esq.**
President

Work: (972) 774-4560
Mobile: (214) 769-4699
Fax: (214) 515-0411

Email: ggmark@radix.net
http://www.linkedin.com/in/gregoryhguillot

Gregory H. Guillot, PC
13455 Noel Road
Suite 1000
Dallas, TX 75240 USA

See who we know in common

Want a signature like this?