**EXHIBIT 1**

**[DECLARATION OF GEORGE L. PAUL UNDER PENALTY OF PERJURY]**

Gregory H. Guillot
ggmark@radix.net
Admitted *Pro Hac Vice*
GREGORY H. GUILLOT, P.C.
13455 Noel Road, Suite 1000
Dallas, Texas  75240
Telephone: (972) 774-4560
Facsimile: (214) 515-0411

John L. Krieger, (Nevada Bar No. 6023)
JKrieger@LRLaw.com
LEWIS AND ROCA LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada  89169
Telephone: (702) 949-8200
Facsimile: (702) 949-8389

George L. Paul
GPaul@LRLaw.com
Admitted *Pro Hac Vice*
Telephone: (602) 262-5326
Facsimile: (602) 734-3857
Robert H. McKirgan
RMckirgan@LRLaw.com
Admitted *Pro Hac Vice*
Telephone: (602) 262-5396
Facsimile: (602) 734-3863
LEWIS AND ROCA LLP
40 North Central Avenue, Suite 1900
Phoenix, Arizona  85004-4429

Attorneys for Plaintiff, DONNA CORBELLO

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DONNA CORBELLO, an individual,<br><br>                     Plaintiff,<br><br>     vs.<br><br>THOMAS GAETANO DEVITO, an individual, *et al*.,<br><br>                     Defendants. | Case No. 2:08-cv-00867-RCJ-PAL<br><br>**DECLARATION OF GEORGE L. PAUL UNDER PENALTY OF PERJURY** |

I, George L. Paul, do depose and state:

1. I make this Declaration pursuant to Local Rule 26-7(b).

2. I have personal knowledge about the matters set forth herein; am competent to testify about such matters; and would do so in open Court if called upon to testify.

3. I am co-counsel to Plaintiff in the matter of Corbello v. DeVito, *et al*, Case No. 2:08-cv-00867-RCJ-PAL.

4. Between November 27, 2008 and March 10, 2010 I engaged in extensive telephone conversations and correspondence with the New Defendants' counsel about duties to preserve evidence; the form of such preservation; Plaintiff's request for the production of native files of discoverable evidence; production of all discoverable e-mails; and Plaintiff's request for all scripts and drafts of scripts relating to the production which ultimately became *Jersey Boys*, without limitation. These communications and correspondence are explained and attached below.

5. First, appended as *Attachment 1,* is a true copy of the "Sedona Conference Cooperation Proclamation," as downloaded by me, from the URL, http://www.thesedonaconference.org/content/tsc_cooperation_proclamation, on April 18, 2010, and printed from my computer, without alteration.

6. On November 26, 2008 counsel for all parties participated in a telephone conference pursuant to Fed. R. Civ. P. 26(f). Therein, Plaintiff's counsel attempted to discuss several subjects, including the nature and extent of electronically stored information ("ESI") in the possession of the New Defendants. However, counsel to the New Defendants were not prepared to discuss these issues. Specifically, defense counsel seemed unaware of any actions taken to discharge the duty to preserve evidence; whether there was any ESI in the possession of the New Defendants; or the form in which such evidence existed and should be preserved. This hampered the progress of the Rule 26(f) conference significantly, leading counsel for Plaintiff to call for a supplemental conference. A letter documenting these events was sent on December 2, 2008, and a true copy of this letter is appended as *Attachment 2*. The letter speaks for itself, but generally concerned the duty to preserve evidence and the form of such preservation. I received no response to this letter, although a response was promised.

7. Given the New Defendants' failure to respond to my December 2, 2008 letter, I sent an email to all counsel, noting that Plaintiff's counsel did not believe that the New Defendants had complied with their Rule 26(f) obligations. My message noted that in the *Joint Status Report* (Doc.89), defense counsel had represented that they had fully satisfied their obligations to preserve evidence -- notwithstanding that they were unable to discuss the issue just a few days previously, by telephone. Plaintiff's counsel wanted to reconvene the Rule 26(f) conference, and wrote to defense counsel about that prospect, pointing out that they had refused to talk about the issues. Because Plaintiff's counsel were concerned that this lack of cooperation might invite ancillary litigation over discovery, we pleaded with New Defendants' counsel to communicate. We also wanted to discuss how ESI was being preserved. It was my desire to talk by telephone in an amicable and professional fashion concerning these issues, and accordingly, I sent an email to the New Defendants' counsel to that effect. A true copy of the e-mail I sent to defense counsel on January 6, 2009, is appended as *Attachment* 3. The e-mail speaks for itself. I never received a response.

8. Two days later, on January 8, 2009, I served requests for production of documents, ESI, and things, under Fed. R. Civ. P. 34, on Defendants Marshall Brickman and Rick Elice, who were known to be the writers of the Jersey Boys script.

9. On January 9, 2009, I served similar document production requests upon Defendant Des McAnuff, who was known to be the Director of the *Jersey Boys* production.

10. On January 15, 2009 Plaintiff's counsel and defense counsel spoke by telephone. However, defense counsel were still not prepared to discuss issues of preservation and production of ESI. Plaintiff's counsel wanted to know what the New Defendants had in their possession, so the parties could discuss the issues that are legally mandated to be discussed under Fed. R. Civ. P. 26(f). During this conversation, Mr. Korzenik intimated that the New Defendants did have ESI in their possession in some sort of screenwriter program and files, but did not know what it was, and indicated that the New Defendants would prefer to produce ESI in PDF form, which was not acceptable to us -- although we indicated that we would consider the option -- which was hard to do given that defense counsel had not yet informed us of what they had. Mr.

1  Korzenik expressed a reluctance to produce native files, as he thought that they might be altered or spoliated by Plaintiff's counsel.  I considered this reservation to be unreasonable and unacceptable, as it presumed that Plaintiff's counsel would act illegally, by violating the Stipulated Protective Order (Doc. 94) in place in this case. . The upshot of this conversation was that I informed defense counsel that Plaintiff's counsel would suggest a procedure by which the New Defendants could disclose what they had in their possession.  That way, the parties' lawyers could discuss consensual, low-cost options about discovery.  I wanted to communicate this desire to the New Defendants' counsel. I sent a follow up email.

11.	Appended as *Attachment 4* is a true copy of an email message I sent to defense counsel on January 15, 2009, entitled, "Suggestions Re Electronic Discovery."  The e-mail speaks for itself, and was sent to the recipients.  **I received  no response to this email.**

12.	The suggested date for a response to the questions posed to the New Defendants' counsel, in the January 15, 2009  email appended above as *Attachment* 4, was January 26, 2009. On that date we received no information at all.  Accordingly, I wrote another email to Mr. Korzenik and Mr. Mayeda.  I reminded them that the information was necessary so that we could have a ***"friendly, collaborative talk about the most efficient and lowest cost way for you to produced that stuff, and as it is due in a few business days, we should begin talking about those issues now, rather than after certain actions have been taken that will make things more expensive for everyone."*** Importantly, I said ***"Last minute fire drills producing ESI in formats we have not agreed to will only increase expense, as things might have to be done twice.  Let's work together on it."*** A true copy of the e-mail I sent to defense counsel on January 26, 2009, is appended as *Attachment* 5.  The e-mail speaks for itself.  *I never received a response*.

13.	On February 9, 2009, Plaintiff's counsel, Robert McKirgan, served  document requests under Fed. R. Civ. P. 34 to Defendant Dodger Theatricals, Ltd., one of the producers of *Jersey Boys*.  At that point, defense counsel had still refused to identify the name of any screenwriter program, and accordingly, Plaintiff simply began demanding production of the ESI in native form.

14. Appended *as Attachment 6* is true copy of a February 11, 2009 e-mail message that I received from Greg Guillot, that was also sent to counsel for the New Defendants, entitled, "Electronic Discovery Issue -- Screenwriter's Software Program." The email sought the name of the screenwriter's program, among other things.

15. At some point between February 11, 2009 and March 10, 2009, my co-counsel, Mr. Guillot, learned the name of the screenwriter program, which was "Movie Magic Screenwriter," and continued to demand native files that could be read by that program. Appended as *Attachment* 7 is a true and correct copy of a chain of e-mails dated March 10, 2009, between Mr. Korzenik and Mr. Guillot, which was also sent to me, and which speaks for itself. Mr. Korzenik's message informed us that we would be receiving responses to Plaintiff's document requests shortly.

16. On March 16, 2009, Defendants Elice, Brickman and McAnuff served responses to the production requests that Plaintiff had propounded in early- January. There was no objection in the responses to the production of native files. Nor was there any notice that Defendants would be producing ESI in anything other than native form.

17. On April 6, 2009, Plaintiff's counsel learned that the New Defendants' counsel would be producing additional documents on a "rolling basis," meaning that the documents would not come all at once, but would come piecemeal as time permitted – a proposition we were not happy with, but ultimately accommodated. Appended as *Attachment 8* is a true copy of a chain of correspondence between counsel for the New Defendants and myself, dated on April 06, 2009. In this correspondence, I continued to demand native files, and reminded Mr. Korzenik that Plaintiff's counsel had already purchased the software in question, as the parties had discussed. Mr. Korzenik's response represented that he was "looking further into [the production of native files]"

18. Thereafter, Plaintiff's counsel continued to demand native files.

19. Appended as *Attachment 9* is a true copy of a chain of email correspondence dated April 22, 2009, between Mr. Guillot, Mr. Mayeda, Mr. Korzenik and Todd Kennedy, on which I was copied. Therein, Mr. Mayeda informed us that the New Defendants would finally

5

1 be producing documents from Defendants Elice and Brickman. Mr. Guillot responded by
2 indicating that he assumed the material about to be shipped would include the native files that
3 Mr. Korznik had admitted were in his possession about three weeks earlier.  Insofar as I am
4 aware, no response to this message was received.  Moreover, the document*s finally re*ceived
5 from the New Defendants were in PDF form, notwithstanding our repeated demands for native
6 files, and the lack of any objection thereto.

7    20.   The New Defendants' subsequent productions were made on a "rolling basis," at
8 times of the New Defendants' choosing, in PDF form.  Specifically, over the ensuing months, we
9 received the following document sets from the New Defendants, bearing the dates on the dates
10 indicated. The production numbers in the case are as follows, with the dates listed representing
11 the time production sets were either received by Plaintiff's counsel, or the date as stamped on
12 disks transmitted by the New Defendants, with the exception that the first document batch of
13 JB01-723, which comprised the New Defendants' Initial Disclosures, was received in separate
14 emails dated January 13, January 16, January 26, and January 27, 2009.

15     January  2009     JB01- 723 (New Defendants' Initial Disclosures)
16     February 27, 2009  JB 0724- 3675
17     April 6, 2009      JB 3676- 11453
18     April 17, 2009     JB  11,454- 22,559
19     May 26, 2009       JB 22,560 - 23,388
20     June 24, 2009      JB 23, 291- 24,825
21     July 16, 2009      JB 24, 889- 25, 639
22     September  2009    JB 25, 640 -- 26,529

23    21.   I have personally reviewed the New Defendants' productions, and they are
24 deficient in many respects.  In addition to the failure to produce any native files, many of the
25 PDF "scripts" produced were mere fragments; the dates on which they were written, and the
26 identities of the writers, cannot be readily ascertained; it is not possible to determine which script
27 or which fragment came from whom; and, it appears that certain of the New Defendants did not
28 even produce documents responsive to Plaintiff's requests for all draft and final scripts.  For

1  example, it does not appear that any scripts were received from Defendants Dodger Theatricals,
2  Ltd. or Des McAnuff and one would expect that the producer and director of *Jersey Bo*ys would
3  possess copies of at least some scripts or drafts.   Moreover, it appears that all fragments and
4  scripts produced are clean printouts from computer files – I have not seen any PDF scans of
5  "hard copy" documents, which could include notes or annotations.  In sum, it is difficult to
6  determine who responded to what; whether all defendants responded to the individual requests
7  propounded thereto, and which document came from which defendant, but it appears that only
8  Defendants Brickman and/or Elice made any attempt to produce.

9        22.     Notwithstanding that Plaintiff served document production requests on Defendant
10 Dodger Theatrical on February 9, 2009, it was not until December 23, 2009 that this defendant
11 served a written response.  No extensions were requested for some time, although near the end of
12 the period the New Defendants' counsel was requesting extensions by telephone.  At some point,
13 Plaintiff waived objections to the late production.  Nor were any further documents produced
14 following the receipt of Defendant Dodger's responses to the document requests, which occurred
15 on December 23, 2009.

16       23.     The deficiencies that are described in ¶ 21 above were discussed in a telephone
17 conference call on March 4, 2010, which occurred among Greg Guillot, myself, Mr. Korzenik,
18 and Mr. Mayeda. Little was accomplished, except that there was a representation by all counsel
19 that they would comply with their obligations under Fed. R. Civ. P. 37, and LR 26-7 to address
20 all outstanding issues.  Counsel agreed to meet and confer by telephone in a second telephone
21 call about the issues, and in the March 4, 2009 call I indicated that I would write a letter
22 summarizing outstanding issues for the further consideration of counsel, in the meet and confer
23 process that had been planned and promised..

24       24.     On March 10, 2010, I sent a letter to counsel for the New Defendants to attempt to
25 resolve the extant dispute concerning the native files, and certain other matters, and to discharge
26 my obligations under LR 26-7.  A true copy of this letter is appended as *Attachment 10*.  The
27 letter demanded the production of: (1) the native files that had earlier been requested/demanded;
28 (2) all emails that were relevant and discoverable in the case, including but not limited to emails

7

to and from the writers and director of Jersey Boys; (3) full information about preservation efforts; and (4) all copies of all scripts and drafts of scripts, without limitation, with an index or other identifying system. The letter invited a response, and concluded that "We look forward to hearing from you . . ."

25. I did not hear from the New Defendants' counsel in response to my March 10, 2010 letter. Instead, on March 18, 2010, Mr. Korzenik called me on the phone within 5 minutes of his filing of a *Motion for Protective Order* (Doc 298), to tell me he was filing "something" we should study. There was no effort on his part to confer regarding the discovery dispute -- the New Defendants' *Motion for Protective Order* was already on file before they responded at all to what I had written.

26. I further declare, under penalty of perjury, that the foregoing statements are true and correct, and are made in good faith.

Dated: April 23, 2010.

/s/George L. Paul  
George L. Paul  
Attorney for Plaintiff Donna Corbello