# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

DONNA CORBELLO,

            Plaintiff,

vs.

THOMAS GAETANO DEVITO, *et al.*,

            Defendants.

Case No. 2:08-cv-00867-RCJ-PAL

**ORDER**

(Mot. Protective Order - Dkt. #298)
(Mot. Compel - Dkt. #326)
(Mot. Sanctions re: Discovery - Dkt. #327)

       The Court conducted a hearing on July 13, 2010 on (1) a *Motion for Protective Order* (Dkt. #298) filed by the New Defendants; (2) a *Cross-Motion to Compel* (Dkt. #326), filed by Plaintiff, directed to Defendants Brickman and Elice; and (3) Plaintiff's *Cross-Motion for Sanctions* (Dkt. #327). At the hearing, the Court admonished counsel regarding their lack of cooperation concerning Electronically Stored Information ("ESI") and the exchange of *ad hominem* attacks; ordered defense counsel to produce "the last round of emails" found by Defendant Brickman on a recently-discovered computer; ordered counsel to meet and confer, in person, to discuss Plaintiff's *Document Production Request Nos. 9* and *16* to Defendants Brickman and Elice, which the Court found overly-broad, and Defendants' responses, which the Court found incomplete and/or evasive; and ordered counsel, in lieu of further discovery motions, to prepare and file a *Joint Status Report* by August 10, 2010. (See Minutes of Proceedings, Dkt. #333.)

       Counsel met in Los Angeles on July 30, 2010, held follow-up conferences by telephone, and filed their *Joint Status Report* (Dkt. #335) on August 10, 2010, concerning the pending *Motion* and *Cross-motions*, and other discovery disputes discussed during their conferences which remain unresolved. The parties made significant progress in resolving the issues raised by these motions in their meet and confer sessions, but were unable to resolve all of their disputes.

The Court conducted a second hearing on August 12, 2010 regarding the issues presented in the *Joint Status Report*, including: (1) the status of Defendant Brickman's production of outstanding emails; (2) the discovery of additional emails possessed by Defendant Elice, which were first reported to Plaintiff's counsel at the July 30, 2010 personal meeting; (3) Defendants' remaining objections to *Document Production Request Nos. 9* and *16*, as narrowed by Plaintiff; (4) defense counsel's proposed temporal limitations on Plaintiff's discovery, as to Defendants Brickman and Elice; (5) Defendants' production of native files for the screen writing software used by Defendant Brickman in his early work on the *Jersey Boys* script; (6) the status of Defendants' production of scripts, drafts of scripts, and insert pages showing changes in the script for *Jersey Boys* from its conception to the present, for each performing production in the U.S. and abroad; (7) Plaintiff's requests for privilege logs for responsive documents which may have been withheld by Defendants due to privilege or work-product immunity claims; (8) Plaintiff's requests for certain financial discovery; and, (9) Plaintiff's requests for discovery concerning other *Jersey Boys* copyright litigations in which certain New Defendants and third-party witnesses are involved. (See Dkt. #336.)

The Court has considered the *Motion*, *Cross-Motions*, *Responses* (Dkt. ##317, 328) and *Replies* (Dkt. ##325, 331), the arguments of counsel at the hearings, and the parties' *Joint Status Report*. Having reviewed and considered these matters, the pending discovery motions are **GRANTED in part** and **DENIED in part** and the discovery disputes outlined in the parties' Joint Status Report (Dkt #335) are resolved as follows: the Court **DENIES** the New Defendants' *Motion for Protective Order* (Dkt. #298); the Court **GRANTS in part**, and **DENIES in part**, Plaintiff's *Cross-Motion to Compel* (Dkt. #326); the Court **DENIES** Plaintiff's *Cross-Motion for Sanctions* (Dkt. #327); and, makes the following findings and rulings:

**I.      New Defendants' Motion for Protective Order re: Native Files (Dkt. #298).**

    **A.      As to Emails and Other Correspondence (Under Plaintiff's *Requests for Production Nos. 9* and *16* as Narrowed).**

        1.      The Court finds defense counsel did not comply with their obligations to meet and confer with Plaintiff's counsel before seeking a protective order as required by FRCP 37 and LR 26-7(b).

        2.     The New Defendants' Motion for Protective Order is **DENIED.**

II.     **Plaintiff's Cross-Motion to Compel (Dkt. #326).**

    A.     **Scripts, Drafts of Scripts, "Change Pages" for *Jersey Boys* Script.**

        1.     Plaintiff claims that at the time her Cross-Motion to Compel was filed, Defendants had not produced documents showing all changes made to the script for *Jersey Boys*, from the time of its initial draft, to the present for all productions performed in the United States and abroad. In the Joint Status Report (Dkt. #335), and at the August 12, 2010 hearing, counsel for the New Defendants acknowledged that Defendant Elice had additional documents reflecting changes in *Jersey Boys* performance scripts, and changes made for the abridged *Jersey Boys libretto,* published in the *Jersey Boys* coffee table book which had not yet been produced.

        2.     New Defendants and Elice have produced hundreds of scripts and drafts of scripts which are in .pdf format. In addition, New Defendant Dodger Theatricals produced a notebook of page changes to scripts before the August 12, 2010 hearing, maintained as hard copy, that identifies at the top of each page the date on which changes to that portion of the script occurred in the days leading to the final, locked script for the Broadway production. New Defendant Brickman also produced what he represents are the only two comments made using the notes function of the Screenwriter software at issue. New Defendants have not produced these scripts in the native Screenwriter format and object to doing so on the grounds that doing so would be needlessly burdensome and duplicative, and that any information that they might contain has already been produced to Plaintiff. Plaintiff continues to seek these files on the grounds that they may contain some discoverable imbedded data.

        3.     The Court finds that the production of scripts and drafts in .pdf is a reasonably usable format that comports with the New Defendants' obligations. The parties discussed Plaintiff's preference for native file production at the initial case

conference on November 26, 2008, but reached no agreement. New Defendants represent that, with the additional "change pages" for *Jersey Boys* scripts and drafts of the abridged *Jersey Boys libretto* and coffee table book which were produced shortly after the August 12, 2010 hearing, that Plaintiff already has the documents she seeks in a reasonable, usable format. The New Defendants "need not produce the same electronically stored information in more than one form." Fed.R.Civ.P. 34(b)(2)(E)(iii). The Court finds that to compel additional production of these materials in native format would be an unnecessary burden and an unjustifiable waste of time and resources. The Plaintiff's request to produce these materials in native format is therefore **DENIED**.

**B.    E-mails and Correspondence Requested in Plaintiff's *Requests for Production No.s 9* and *16*.**

1. Plaintiff's *Requests for Production of Documents No. 9* and *16* were phrased to require the production of all documents which refer to or relate to the subject matter described. The Court made it clear in the status conference conducted in July 2010, that these requests were overly-broad and lacking reasonable particularity. The Court made it equally clear that the New Defendants' responses to these discovery requests were inadequate and evasive, and required the parties to meet and confer in a good faith effort to resolve or narrow their disputes.

2. At the time Plaintiff's *Cross-Motion to Compel* was filed, defense counsel had not produced all responsive emails from Defendants Brickman and Elice.

3. Defense counsel had not produced the "last round of emails" from Defendant Brickman's recently discovered computer, referenced in the Court's *Order* of July 14, 2010 (Dkt. #333) when the August 12, 2010 hearing was conducted, but represented they were in the process of doing so.

4. At the meeting between counsel on July 30, 2010, defense counsel informed Plaintiff's counsel that thousands of potentially-responsive emails from

|   |   |   |
|---|---|---|
| 1 |   | Defendant Elice exist, which had not previously been disclosed. Defense counsel |
| 2 |   | also disclosed a desktop computer used by Defendant Brickman's wife and/or |
| 3 |   | daughter may, but is unlikely, to have additional potentially-responsive e-mails. |
| 4 | 5. | Such emails were requested in Plaintiff's *Interrogatory No. 24*, and *Document |
| 5 |   | Production Request Nos. 2*, *9,* and *16* to Defendants Brickman and Elice, served |
| 6 |   | on January 8, 2009. |
| 7 | 6. | Plaintiff's *Document Production Request Nos. 9* and *16*, as served, were overly- |
| 8 |   | broad, and Plaintiff has narrowed these requests to enumerate 15 types of email |
| 9 |   | communications which Defendants Elice and/or Brickman may possess. (Dkt. |
| 10 |   | #335-1.) Of these, Defendants have ongoing objections to subpart 7, seeking |
| 11 |   | communications relating to "[t]he transition and/or adaptation (planned or "in |
| 12 |   | progress") of *Jersey Boys* from stage to film, on grounds that it pertains to |
| 13 |   | prospective infringements. Defendants also seek a January 2007 time limitation |
| 14 |   | as to other subparts, specifically 1, 3, 6, and 9, and propose that communications |
| 15 |   | responsive to other subparts, namely, 2, 4, 5, 8, 10, 12, 12, 13, 14, and 15, be |
| 16 |   | exempt from this temporal limitation, but subject to a search term retrieval |
| 17 |   | procedure. |
| 18 | 7. | New Defendants' request a time limitation on production responsive to the |
| 19 |   | fifteen categories Plaintiff narrowed and revised with respect to *Requests for |
| 20 |   | Production Request Nos. 9* and *16*, as they pertain to e-mails and electronically |
| 21 |   | stored information from 2007 to the present. New Defendants proposed |
| 22 |   | providing responses and unprivileged materials for the period between 1999 and |
| 23 |   | January 1, 2007. The initial date, 1999, is the date proposed by Plaintiff. The |
| 24 |   | ending date, January 1, 2007, is proposed by the New Defendants. New |
| 25 |   | Defendants claim that January 1, 2007, is the end of what they describe as the |
| 26 |   | "creative period" during which work on the *Jersey Boys* script was completed, |
| 27 |   | because this is the period leading up to the New York opening of *Jersey Boys* on |
| 28 |   | November 6, 2005. New Defendants propose that this limitation should be |

1	subject to exceptions, described below, for certain categories of information on
2	which discovery would be provided through the present.
3	8.	New Defendants argue this temporal limitation is necessary to control time and
4	costs in this litigation, particularly with regard to Brickman's and Elice's e-mails
5	and electronically stored information ("ESI") from January 2007 to the present.
6	As to e-mail from the "creative period" and those prior to January 1, 2007,
7	Brickman and Elice represent they have produced all such responsive and
8	unprivileged files on computers in their possession. The combined e-mail files
9	of these New Defendants from January 1, 2007, to the present number in the
10	thousands. The New Defendants represent that the bulk of this e-mail bears no
11	relevance to this litigation, and that the files consist of personal messages, work
12	on new and unrelated shows and projects, and "other e-mails" that are not
13	organized. New Defendants claim that, of the files that mention *Jersey Boys*,
14	many are incidental references relating to myriad travel and production issues
15	which have no relevance to the creation or revision of the script. New
16	Defendants also claim that many of the categories for which Plaintiff seeks
17	communications are unlikely to be found in e-mail maintained by the two writers.
18	9.	Given the scope of the Plaintiff's requests and the bulk of the e-mail
19	communications, the Court finds that a temporal limitation should be imposed.
20	The following factors support a temporal limitation on discovery in this case: (a)
21	*Jersey Boys* opened on Broadway on November 6, 2005, and the New
22	Defendants represent that this was the end of the "creative period" in which the
23	writers developed and wrote the script for *Jersey Boys*; (b) subsequent changes to
24	the script were minor and made to meet local production requirements such as
25	time restrictions (*e.g.* the Las Vegas production had to be shortened).
26	Additionally, script changes were made to make the script more understandable
27	in the venue (*e.g.* to change phrases and names less recognizable to foreign
28	audiences); (c) Mssrs. Brickman and Elice represent that they have produced the

responsive e-mails and ESI they have for the period before January 2007; (d) Mssrs. Brickman and Elice state they both have on their present computers a large number of e-mails and other ESI from 2007 to the present (*i.e.*, early 2007 to the present for Mr. Brickman; and April 2008 to the present for Mr. Elice) and that these e-mails of the past three-and-a-half years include numerous personal e-mails, numerous professional e-mails regarding a number of other shows that they have been working on, as well as numerous e-mails concerning *Jersey Boys* that would not likely have any bearing on the issues in this litigation; and (e) the New Defendants, among them Mssrs. Brickman and Elice, were added to this litigation in August 2008, and therefore, e-mails and other ESI after that date would include potentially privileged communications with counsel and/or among the New Defendants in aid of their joint defense.

10. Plaintiff argues that *Document Production Request Nos. 9* and *16,* as narrowed, are reasonably calculated to lead to admissible evidence, including subpart 7. With respect to subpart 7, Plaintiff's Second Amended Complaint ("SAC") is not limited in scope to conduct that occurred prior to its filing. The SAC alleges ongoing and expanding U.S. and foreign infringements by the New Defendants, including Defendants Brickman and Elice; seeks ongoing accountings of profits; requests injunctive relief from such ongoing infringements; and, expressly seeks these forms of relief, and declaratory relief, with respect to film adaptations of *Jersey Boys*, which it alleges formed part of the rights licensed or conveyed by Defendant DeVito to Defendants Valli and Gaudio. (*e.g.*, Dkt. #107, ¶¶ 60, 65-66, 80, 181, 183, 185-187, 194, 216-217, 231-232.) (*See also* Dkt. #107 at 84-85.)

11. Plaintiff also argues that her infringement claims against the New Defendants are not limited to actions for copying or adapting the Work, and the "creative period" during which *Jersey Boys* was written is not the only period relevant for potentially-responsive emails Defendants Elice and/or Brickman may possess.

7

|   |   |
|---|---|
| | The SAC includes actions for the unauthorized licensing and/or assignment of rights in the Work, including the issuance of such licenses for new U.S. and foreign *Jersey Boys* productions, and collateral goods, such as the *Jersey Boys* coffee table book and cast recording. (*e.g.*, Dkt. #107 at 84-85.) The actions against Defendants Brickman and Elice also encompass claims for contributory copyright infringement, in connection with these productions and collateral goods. (*Id.*, ¶¶ 227-235). |
| 12. | Plaintiff's counsel argued at the August 12, 2010 hearing, that Peter Bennett, attorney-in-fact for Defendants Valli and Gaudio, assisted Plaintiff in the early-phase of this action, before Defendants Brickman and Elice were added (*e.g.,* Dkt. #15 at *Ex. 11*), and defense counsel has disclosed, and is producing to Plaintiff, correspondence which indicates that New Defendants were aware of this action before they were joined, and engaged counsel, for purposes of this case. |
| 13. | Plaintiff agrees that certain categories of email communications specified in Plaintiff's revised production requests are less likely to exist after a certain date, and the Court finds that accommodations are appropriate, to reduce Defendants' burden of reviewing Defendant Elice's thousands of outstanding emails in search of potentially responsive documents. |
| 14. | Plaintiff contends temporal limitations for emails concerning the topics covered by the following subparts of Plaintiff's requests would be prejudicial: 3 (regarding Defendants' compensation from *Jersey Boys*), 4 (concerning agreements regarding the *Jersey Boys* production, including those relating to the expansion thereof, which are likely to incorporate underlying rights in the Work), 6 (regarding the locations at which *Jersey Boys* has been or will be performed, which is likely to reveal further conduct alleged to comprise infringements or generate equitable accounting obligations), 7 (concerning film adaptations of *Jersey Boys*, 8 (regarding the content of the *Jersey Boys* script, as further changes |

are reasonably likely to be relevant to Plaintiff's claims), and 9 (concerning *Jersey Boys* revenues, profits, and expenses, including the individual revenues, profits, and expenses of Defendants Elice and Brickman). Plaintiff argues Defendants' production of communications responsive to these subparts should not be limited as to time.

15. The Plaintiff agrees that certain temporal limitations are appropriate for discovery of e-mails responsive to subparts 1, 2, 5, 10, 11, 12, 13 and 15. However, the Plaintiff proposes an August 18, 2008 cutoff, the date the First Amended Complaint was filed, for review and production, and that the Plaintiff have access to discovery of non-privileged e-mails responsive to the subparts after this date, through the use of search terms, mutually agreed-upon by the parties.

16. Plaintiff has articulated reasons why the discovery sought, without temporal limitations, is relevant and discoverable within the meaning of Rule 26(b)(1). The New Defendants have articulated reasons why a temporal limitation is reasonable. Applying the principals embodied in Rule 26(b)(2)(C), the Court will limit the discovery otherwise allowed by the FRCP finding that the discovery of some of the subparts of *Request No.s 9* and *16* Plaintiff seeks, even as narrowed, is unreasonably cumulative or duplicative, and that the burden and expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. *See* Fed.R.Civ.P. 26(b)(2)(C).

17. The Court finds that the request for communications relating to New Defendants' engagement to write *Jersey Boys* (No. 1) should be subject to a post-January 1, 2007 time limitation. There is no reasonable expectation of locating communications relating to the writers' hiring more than two years after the play began production in La Jolla and well over a year after its Broadway opening.

18. The Court finds that requests for communications relating to New Defendants' compensation and income, revenue and expenses for *Jersey Boys* (Nos. 3 and 9) should be subject to the proposed January 1, 2007 time limitation. Counsel for the New Defendants has agreed that the underlying documents regarding these topics will continue to be produced by Dodger Theatricals. Therefore, production of communications regarding these topics post-January 1, 2007 from Brickman and Elice is burdensome and duplicative.

19. The Court finds that the request for communications relating to the locations and dates of *Jersey Boys* performances (No. 6) should be subject to the proposed time limitation. The court accepts representations made by defense counsel that the locations and dates of these performances have been produced in numerous ways, and that information will continue to be available. It is unnecessarily burdensome and duplicative to compel New Defendants to produce post-January 1, 2007 communications on these topics.

20. The Court finds that Plaintiff's Complaint allegations "on information and belief" are insufficient to support Plaintiff's request for communications relating to the possible adaptation of *Jersey Boys* into film (No. 7).

21. As to the following requests, the Court finds that production of post-January 1, 2007 communication is appropriate and should be accomplished through the application of search terms and parameters reasonably tailored to identify the responsive communications: background information provided to either New Defendant for his engagement to write *Jersey Boys*, including biographical material (No. 2); agreements concerning *Jersey Boys* (No. 4); the adaptation or referencing of other works referring to the Four Seasons in connection with the writing of *Jersey Boys* (No. 5); the content of the *Jersey Boys* script and any changes to it (No. 8); Rex Woodard (No. 10); the DeVito Autobiography (No. 11); this litigation (No. 12); biographies or autobiographies of the Four Seasons (No. 13); books that primarily concern the Four Seasons (No. 14); and scripts or

     treatments in which the Four Seasons are mentioned (No. 15).  Counsel shall propose, agree on and apply a set of reasonable search terms that accomplish the limitations and direction provided in this order.

II. **Issues Addressed in Meet and Confer Sessions Conducted on July 30, 2010, and the Follow-Up Conferences of August 5 and August 6, 2010.**

  A. **Discovery Concerning Other Copyright Litigations in Which New Defendants Are Involved.**

    1. Certain New Defendants, namely, Defendants Elice, Brickman, Valli, Gaudio, and Dodger Theatricals, Ltd., are, or have been, parties to other copyright infringement litigations involving *Jersey Boys*, including *Sofa Entertainment v. Dodger Productions*, No. CV 08-02616 DMG (PJWx) (C.D. Cal.), and/or *Jersey Boys Broadway v. Gehling*, No. 1:10-cv-03060-RJS, (S.D.N.Y.). The case pending in the Southern District of New York also includes, as a party, Christian Hoff, whom Plaintiff asserts is a key witness in this case.

    2. The subject matter of the *Sofa Entertainment* case in the Central District of California involved a "fair use" defense to a copyright infringement claim concerning the use of a clip of the Ed Sullivan Show.  The Plaintiff believes discovery of this case is relevant because the New Defendants have also raised a fair use defense in this case. (Dkt. #319 at 24.)  It was dismissed on a motion for summary judgment before the August 12, 2010 hearing.  The case pending in the Southern District of New York, includes actions by New Defendants for copyright infringement against an allegedly competing production, in which the valuation of copyrighted songs performed in Jersey Boys is at issue, along with alleged appropriations of proprietary *Jersey Boys* staging elements.  The New Defendants argue that neither case has any bearing on the copyrights that are the subject of this case.

    3. The Court finds that the burden or expense of producing this proposed discovery outweighs its likely benefit.

**B.     The Provision of Privilege Logs.**

1. Defense counsel have produced no privilege logs to date in response to any of Plaintiff's discovery requests, notwithstanding that certain of Plaintiff's requests would appear to encompass at least some information or documents protected by the attorney-client privilege. Plaintiff requests that the Court order Defendant Elice to produce a privilege log for all e-mails preceding the filing of the First Amended Complaint, and for such later responsive e-mails as may be retrieved by a search conducted on a mutually agreed-upon key word search. Plaintiff agrees that the issue of privilege logs is not ripe for resolution with respect to specific discovery requests.

2. The New Defendants ask that the Court find that they have not waived the attorney-client privilege by failing to produce a privilege document log to date given the "breadth and specificity of documents requests." The New Defendants ask that the Court enter an order finding any direct communication New Defendants have had with any attorney who represents any of the New Defendants in this case are covered by the attorney-client privilege and are not required to be identified in a privilege log. The New Defendants also ask that the Court find that communications between New Defendants "that are in aid of the defense and done in connection with requests from defense counsel" are covered by the attorney-client privilege and need not be identified in a privilege log. The New Defendants agree that any other documents (*i.e.,* those which do not involve direct defense counsel communication, as to which New Defendants assert a privilege, should be listed in a privilege log or other similar cost-effective method provided by Rule 26.

3. The Court will order that the parties produce a privilege document log which complies with the requirements of Fed.R.Civ.P. 26(b)(5)(A) for documents responsive to discovery requests which have been withheld as privileged. Privilege document logs shall be served no later than thirty days from entry of

this order with respect to discovery responses served before October 30, 2010, and within thirty days of any additional or supplemental responses. Neither side shall be required to individually identify privileged communications with their counsel made on or after notice of this lawsuit.

C. **The Discovery of Financial Information Relevant to Damages, Including Details Regarding Revenues, Profits, and Expenses, and Communications With, and Reports to, Investors.**

1. Plaintiff seeks the identification of all investors and limited partners in the production companies that produce *Jersey Boys* in the U.S. and around the world. New Defendant Dodger Theatricals Ltd. is the general partner that acts for these production entities. The New Defendants argue that because these investors and limited partners are only passive investors in the productions, there is no need for them to be identified. The New Defendants agree that if the New Defendants are investors in a production company, they may be identified as such, but no other identification or discovery concerning these investors is required.

2. The Plaintiff contends it would be prejudicial to her to limit Plaintiff's discovery of financial information concerning revenues, expenses, and profits associated with *Jersey Boys* to Defendant Dodger Theatricals, Ltd. Plaintiff's claims for monetary damages and/or an equitable accounting are not limited to Defendant Dodger Theatricals and its related companies, but also encompass the profits of the individual New Defendants, Brickman, Elice, McAnuff, Valli and Gaudio. Plaintiff claims that financial material from Defendant Dodger Theatricals, may show the amounts it has paid these New Defendants, but will not establish all expenses and other costs which the individual New Defendants may seek to deduct from revenues they must account for and pay over to Plaintiff, if her causes of action succeed. Plaintiff contends that financial material from Dodger Theatricals will reflect profits the individual New Defendants have realized from the sale of collateral products, such as the *Jersey Boys* coffee table book, and the original cast recording, also encompassed by Plaintiff's claims, but covered by

|   |   |   |
|---|---|---|
| | | separate agreements with unrelated companies. |
| | 3. | The Court finds that limits are appropriate on Plaintiff's discovery concerning passive investors in *Jersey Boys*, but are not appropriate with respect to investors who have also been listed as producers of the play; who are, or have been, actively involved in the financial aspects of the production, and/or whose identities have already been publicized, through news article or interviews. |

For good cause shown,

**IT IS ORDERED:**

1. Defendants' *Motion for Protective Order* (Dkt. 298) is **DENIED**.
2. Plaintiff's *Cross-Motion to Compel* (Dkt. #326) is **GRANTED in part** and **DENIED in part**, consistent with the provisions of the body of this order.
3. Plaintiff's *Cross-Motion for Sanctions* (Dkt. #327) is **DENIED.**
4. Counsel for the parties shall serve opposing counsel with privilege document logs which fully comply with the requirements of Fed.R.Civ.P. 26(b)(5)(A) for documents produced on or before October 30, 2010, within thirty days of entry of this order.
5. Counsel for the parties shall serve privilege document logs for documents produced after October 30, 2010, within thirty days of additional or supplemental document responses and/or production.
6. Counsel shall not be required to list direct communications between the parties and their counsel made on or after notice of this litigation.
7. The Court will continue to monitor the progress of discovery in this case, and will convene monthly hearings for that purpose. The next hearing is scheduled for **January 4. 2011 at 10:00 a.m., in Courtroom 3B.**
8. Counsel shall have until November 19, 2010, to exchange lists of depositions each side anticipates taking, and meet and confer concerning outstanding discovery disputes briefly addressed at the hearing conducted November 9, 2010.
9. Counsel shall have until December 3, 2010, to file motions to compel and motions for protective order concerning discovery disputes on which they have met and conferred

1 and have reached an impasse. Responsive briefs are due fourteen days after service, and replies are due seven days after service.

10. Any request for relief in the motions decided in this order not specifically addressed is **DENIED.**

Dated this 12th day of November, 2010.

_____
Peggy A. Leen
Unites States Magistrate Judge