1  GREGORY H. GUILLOT, P.C.
   13455 Noel Road, Suite 1000
2  Dallas, Texas  75240
   Gregory H. Guillot (Admitted Pro Hac Vice)
3  ggmark@radix.net
   Telephone: (972) 774-4560
4  Facsimile: (214) 515-0411

5  LEWIS AND ROCA LLP
   3993 Howard Hughes Parkway, Suite 600
6  Las Vegas, Nevada  89169
   John L. Krieger, (Nevada Bar No. 6023)
7  JKrieger@LRLaw.com
   Telephone: (702) 949-8200
8  Facsimile: (702) 949-8389

9  LEWIS AND ROCA LLP
   40 North Central Avenue, Suite 1900
10 Phoenix, Arizona  85004-4429
   George L. Paul (Admitted Pro Hac Vice)
11 GPaul@LRLaw.com
   Robert H. McKirgan (Admitted Pro Hac Vice)
12 RMckirgan@LRLaw.com
   Telephone: (602) 262-5326
13 Facsimile: (602) 734-3857

14 Attorneys for Plaintiff Donna Corbello

15           UNITED STATES DISTRICT COURT

16              DISTRICT OF NEVADA

17 DONNA CORBELLO, an individual,        No.  2:08-cv-00867-RCJ-PAL

18                          Plaintiff,   **PLAINTIFF'S MOTION TO COMPEL RE:
                                         WRITTEN DISCOVERY TO DODGER
19    vs.                                THEATRICALS LTD AND JB VIVA VEGAS
                                         LP**
20 THOMAS GAETANO DEVITO, an
   individual, et al.,
21
                          Defendants.
22

23        Plaintiff, Donna Corbello, moves pursuant to Federal Rule of Civil Procedure 37(a) for an

24 order compelling defendants Dodger Theatricals Ltd. ("Dodger") and JB Viva Vegas LP ("JB

25 Vegas") to produce the documents and information as identified herein.

26 **I.     INTRODUCTION**

27        Counsel for Plaintiff, Dodger and JB Vegas have been conferring for months over the

28 issues raised in this motion.  Letters, e-mails, one in person meeting and numerous phone calls--

1    all to no avail.  As was stated on the record at the last status conference on November 9, the

2    parties are at an impasse.  See Declaration of Robert H. McKirgan attached as Exhibit 1.

3         Plaintiff respectfully requests the Court's help.  Basic and critical documents remain

4    unproduced.  The fundamental problem is twofold.  First, Dodger and JB Vegas have failed to

5    produce documents that they said they would months ago.  Second, Dodger and JB Vegas

6    continually take the position that they have given plaintiff what she needs and they need not give

7    any more regardless of the discoverability of the information sought.  But a defendant does not

8    get to decide for the plaintiff what she needs or what is important.  The defendants should

9    produce discoverable information and the plaintiff will decide what is important to her case.  And

10   some of the information we seek is so basic and fundamental that it is simply hard to believe that

11   after years of litigation, it remains unproduced.

12   **II.    OWNERSHIP STRUCTURE**

13        **A.    Background.**

14        As alleged in the second amended complaint, plaintiff's now deceased husband, Rex

15   Woodward ("Woodward"), co-authored a biography of Tommy DeVito (the "Work") in

16   collaboration with Mr. DeVito.[1]   It is further alleged, Mr. DeVito, unbeknownst to Woodward

17   and plaintiff, registered the Work in his own name at the U.S. Copyright Office.  Subsequently, in

18   1999, Mr. DeVito transferred the rights to the work to the defendants Frankie Valli and Bob

19   Gaudio.

20        In 2004 or 2005, Valli and Gaudio transferred rights to the Work to Dodger and the writer

21   defendants, Marshall Brickman and Rick Elice in connection with the Jersey Boys musical.  As

22   alleged, the Work was used and infringed upon in the creation of the Jersey Boys musical.

23        A number of limited partnerships (the "Production Limited Partnerships') actually put on

24   the performances of Jersey Boys and collect the box office receipts.  See Exhibit 2 (Dodger

25   response to Interrogatory No. 1).  Dodger is the general partner of the Production Limited

26   Partnerships and effectively the "mother ship" of the Jersey Boys ownership structure.  At the

27   time of filing the second amended complaint, it was plaintiff's understanding and belief that

28

---

[1]      The background facts and Plaintiff's allegations are summarized in Judge Jones' order denying the
Defendants' various motions to dismiss.  (Doc. 300).

2298954.1

1   Dodger had licensed the rights at issue to the Production Limited Partnerships.  We now know
2   that Dodger transferred the rights at issue to one of the Production Limited Partnerships-- JB
3   Broadway, LP-- and that entity licenses the rights to the various Production Limited Partnerships.
4   *See* Exhibits 3 and 4 (ownership structure chart and pertinent portion of JB Vegas partnership
5   agreement).  Plaintiff discovered this critical fact through documents recently produced by a third
6   party pursuant to subpoena; a subpoena that Dodger demanded that we withdraw.  See Exhibit 5.
7   Plaintiff will be adding JB Broadway as a defendant in this action.

8         Plaintiff must understand and prove the relationship between the various defendants and
9   other parties as it relates to the rights at issue.  Particularly, we need to show the jury how the
10  rights at issue were transferred from defendant to defendant and who now "owns" those rights.
11  We also need to show how Dodger controls the Production Limited Partnerships and how JB
12  Broadway is now licensing the rights to the infringing productions.  Accordingly, plaintiff needs
13  copies of the various limited partnership agreements for the production entities, including JB
14  Broadway LP, which appears to be the owner of the rights at issue; the assignment from Dodger
15  to JB Broadway, LP; and the documents transferring or licensing the rights from JB Broadway to
16  the Production Limited Partnerships.  These are extremely relevant documents-- much like a
17  contract in a breach of contract action-- in Dodger's possession that should have been produced
18  many months ago.

19        Additionally, in documents recently produced by third parties pursuant to subpoena, we
20  have seen references  to various other Jersey Boys limited partnerships, including "JB New York,
21  LP," which appears to finance the productions and in which  certain of the defendants may have
22  ownership interests.  Finally, publicly available records indicate that there are other Jersey Boys
23  entities including Jersey Boys LLC; Jersey Boys II, LLC; and Jersey Boys, LJP, LLC, none of
24  which have been disclosed by Dodger.  *See* Exhibits 2 and 6 (response to interrogatory one and
25  public records).

26        Plaintiff requested these documents and information in document requests and
27  interrogatories served nearly two years ago.  To date, Dodger and JB Vegas have not produced a
28  single limited partnership agreement for the Production Limited Partnerships, nor any of the

1  agreements that transfer the rights from Dodger to JB Broadway and from JB Broadway to the

2  various Production Limited Partnerships.

3        **B.**     **Document Requests, Interrogatories and Responses.[2]**

4       The requests for production that relate to the ownership structure issue, and the responses

5  are as follows:

6  **DOCUMENT REQUEST DT NO. 10 AND VV NO. 6:**

7       **All documents and electronically stored information relating to or evidencing any**

8  **agreements you have with any of the other defendants herein concerning *Jersey Boys,***

9  **including, but not limited to, financial agreements or understandings regarding*10 Jersey***

10  ***Boys* or the *Jersey Boys Production,* or which relate to the sharing, allocation or distribution**

11  **of revenues profits, losses, or other accounting entries among the various persons who have**

12  **a financial interest therein, including yourself.**

13  **RESPONSE TO DOCUMENT REQUEST DT NO. 10 AND VV NO. 6:**

14       **Defendants object to this request on the grounds that it is grossly overbroad,**

15  **16 unduly burdensome and oppressive and seeks documents that are irrelevant and not**

16  **reasonably calculated to lead to the discovery of admissible evidence. Without waving these**

17  **objections and reserving the right to reassert them on motion or at trial, Defendants**

18  **respond as follows: Defendants will produce and already have produced copies of the**

19  **primary agreements that Defendants have with each other and with the production**

20  **establishing their compensation relating to JERSEY BOYS. Defendants object that the**

21  **request for financial information is too vague and expansive to reasonably comply with.**

22  **Defendants have already produced substantial financial summaries which are reasonably**

23  **responsive to the requests made herein - specifically relevant 1099's and Compilation**

24  **Statements. Any further financial documents evidencing costs and expenses to JBVV and**

25  **DT will be made available to counsel at a mutually convenient time in NYC. It is**

26  **understood that at the present time these financial summaries will suffice until specific**

27

28      [2]   Our request for production no. 2 requested production of all documents identified in interrogatory answers. Accordingly, we include relevant interrogatory requests.  In addition, we note that Dodger and JB Vegas combined their responses and oftentimes provided a combined response to multiple requests.

1  inquiries are made for back-up or supplemental financial documents. Agreements with

2  third parties will be supplied or made available, provided they are specifically identified in

3  advance.

4  ************

5  **DOCUMENT REQUEST DT NO. 26 AND VV NO. 16:**

6  All documents, electronically stored information or things relating to any

7  conveyance, transfers, or license whatsoever of any right(s) in the Work which you contend

8  authorized you to use, reference, or adapt the Work or appropriate any content therein, for

9  any purpose, or to convey rights to others to use, reference or adapt same.

10  **RESPONSE TO DOCUMENT REQUEST DT NO. 26 AND VV NO. 16:**

11  Defendants object to this question on the grounds that it is compound and it

12  presumes undefined facts; it is vague, undefined and lacking in any reasonable clarity.

13  Among other things, the words "use" "reference or adapt" or "appropriate" are

14  undefined, unreasonably vague and argumentative. Defendants do have waivers of claims

15  in a variety of forms and documents, but a "waiver" is not a "license, etc." And we do not

16  believe that we needed authorization to do anything that we are accused of here since the

17  Work and the Jersey Boys script are about historical facts and events, people and places

18  that no one, including the Plaintiff can claim to own or control. Quite apart from the fact

19  that no permissions were needed from any alleged "owner" of the Work for Defendants to

20  produce Jersey Boys, any claims were waived by Mr. DeVito by virtue of a variety of acts

21  and documents including, without limitation, payments accepted and received by Mr.

22  DeVito and numerous indications of approval in written form and otherwise. Among other

23  things, the 1999 Letter Agreement signed by De Vito and Massi manifests their permission

24  with respect to anything that they had that might relate to their life stories and that

25  document functions as a non-exclusive license thereto. Such written materials have been

26  and will be produced.

27  ************

28  / / /

1  **DOCUMENT REQUEST DT NO. 35:**

2        **All documents, electronically stored information or things relating to the decision to**

3  **form limited partnership to produce or co-produce regional or touring products of *Jersey***

4  ***Boys,* the organization of such entities, their ownership composition, and all agreements**

5  **between such entities and any of the nominal defendants herein.**

6  **RESPONSE TO DOCUMENT REQUEST DT NO. 35:**

7        **Defendants object to this question on the grounds that it is vague, undefined and**

8  **lacking in any fair specificity; it is not reasonably calculated to obtain discoverable**

9  **documents reasonably related to issues in this lawsuit; and that it may seek documents that**

10  **are covered by the attorney-client privilege or work product privilege. Without waiving**

11  **these objections, Defendants have produced and will be producing the basic agreements**

12  **and limit partnership agreements that are relevant to the Jersey Boys.**

13                        **\*\*\*\*\*\*\*\*\*\*\*\***

14  **DOCUMENT REQUEST VV NO. 24:**

15        **All documents relating to or evidencing the persons who own Jersey Boys.**

16  **Response to Document Request VV NO. 24:**

17        **Objection to the term "own" which is not ordinarily used in connection with the**

18  **production of a play of this kind. Defendant producers have licenses to rights in the many**

19  **elements of the production of Jersey Boys and there are different persons who are licensors**

20  **of the different rights to Defendants, for example, there are writers (the Writers of the**

21  **Script to Jersey Boys, Eric Elice and Marshall Brickman) and there are licensors of rights**

22  **to music and numerous other elements of the Jersey Boys production. So the term "own" as**

23  **to Jersey Boys is undefined and inappropriate for this kind of production. Further**

24  **Defendants object to this request on the grounds that it is extremely vague and unfocused**

25  **and lacking in any clarity that would make it possible to respond. Also, the terms "relating**

26  **to or evidencing persons" is not clear or meaningful and has no clear boundaries.**

27                        **\*\*\*\*\*\*\*\*\*\*\*\***

28  / / /

2298954.1

1   **INTERROGATORY NO. 1:**

2       **Identify all business entities, including, without limitation corporations,**

3   **partnerships, limited liability companies, or joint ventures, in which you are a member,**

4   **partner, contracting party, officer, shareholder, or director, that have any dealings,**

5   **involvement or interest in Jersey Boys or any of the defendants herein, and identify all**

6   **organizational documents relating to same, including, but not limited to Articles of**

7   **Incorporation, Bylaws, and annual reports, if any, from the date of organization to the**

8   **present.**

9   **RESPONSE TO INTERROGATORY NO.1:**

10       **Objection on the grounds that the interrogatory is extremely overbroad,**

11   **overreaching and unduly burdensome because it seeks documents that could not have any**

12   **possible relationship to any possible issues in this litigation. As an exploratory interrogatory**

13   **it is premised on a lack of understanding about the scale and scope of activities that are**

14   **involved in the production of a multi-city show such as Jersey Boys: Dodger has numerous**

15   **documents and agreements with numerous people and entities regarding Jersey Boys,**

16   **including for example, agreements with equipments suppliers, hair stylists, costumer**

17   **designers and providers, casting services, venues, lighting companies, actors, electricians**

18   **and numerous other service and equipment suppliers. We are providing agreements and**

19   **information reasonably relating to the issues in this lawsuit. If there are additional**

20   **agreements and information that are sought, plaintiff should identify them specifically,**

21   **formally or informally, and we will be pleased to address them. This objection applies to the**

22   **interrogatories that follow.   The following is a list of the limited partnerships and**

23   **partnerships pertaining to Jersey Boys: We will provide copies of limited partnership**

24   **agreements, while other limited partnership documents can be made available for**

25   **inspection: 1) Jersey Boys Broadway L.P.; 2) JB First National Tour L.P.; 3) JB Chicago**

26   **Zephyr L.P.; 4) JB Viva Vegas L.P.; 5) JB London Investor LP; 6) JB Toronto Partners**

27   **L.P.; 7) Jersey Boys Australia Investor LLC; 8) Jersey Boys Records L.P.; and 9) Jersey**

28   **Light & Sound L.P. The following is a list of relevant agreements or pm1ies to agreements**

1   which can made available for inspection: 1) Broadway Books (agreement relating to Jersey

2   Boys coffee table book); 2) La Jolla Playhouse; 3) Rhino Records (cast album agreement

3   also with F our Seasons regarding music rights; JB Broadway receives 40% share); 4) Rick

4   Steiner company (merchandise agreement for all L.P. 's except Las Vegas, London and

5   Australia); 5) Araca Group (merchandise agreements for Las Vegas, London and

6   Australia), 6) Letter Agreement which has already been produced (this is the agreement

7   with writers and Four Seasons members involving life story rights music etc); 7) advertising

8   and press agencies (may not be specific agreements with them - as relationship extends over

9   years and involves other productions; 8) Numerous other agreement with third parties as

10  noted above such as hair, costumes, theatres. These agreements involve literally hundreds of

11  contracting parties, freelancers, venues, service providers at each venue. Dodger or one of

12  the limited partnerships in which Dodger is a general partner is generally the entity

13  contracting with such third parties. If additional agreements are of interest, plaintiff should

14  identify them specifically, formally or informally, and we will be pleased to address them.

15                                    ************

16  **DT INTERROGATORY NO. 3 AND VV NO. 2:**

17          Identify all other documents that relate to any business relationship you have

18  entered relating to *Jersey Boys,* including, but not limited to, licenses, consulting

19  agreements, checks and receipts for payments, contracts, partnerships, separation

20  agreements, or any other agreement(s) relating to how any *Jersey Boys-related* income,

21  revenue or profit is, has been, or was to be divided or allocated.

22  **VV Interrogatory No. 2:**

23          Identify all documents relating to any business relationship that you have entered

24  into with any Person regarding JERSEY BOYS including, but not limited to, licenses; sub-

25  licenses; assignments; production agreements; consulting agreements; royalty agreements,

26  checks, payments, and statements; partnership agreements; collaboration agreements;

27  profit-sharing agreements; advertising and/r promotional agreements; other contracts;

28  and, correspondence relating to the gross revenues for JERSEY BOYS; expenses incurred

1  in connection therewith; and, the manner in which JERSEY BOYS-related income,

2  revenues and/or profits are collected, allocated, paid, and/or divided.

3  **VV Interrogatory No. 6:**

4       Identify all agreements or contracts, whether or not reduced to writing, to which

5  you and any of the following are parties: (a) DSHT, Inc. (f/k/a Dodger State Holding

6  Theatricals, Inc.); (b) Dodger Theatricals, Ltd; (c)Thomas G. DeVito; (d) Frankie Valli; (e)

7  Robert J. Gaudio; (f) Marshall Brickman; (g) Eric S. Elice aka Rick Elice; (h) Des

8  McAnuff; (i) Michael David; or (j) any entity affiliated with any of the foregoing.

9  **RESPONSE TO DT INTERROGATORY NO. 3; VV INTERROGATORY NO'S**

10  **15, 2 AND 6:**

11       These interrogatories are extremely overbroad, overreaching and unduly

12  burdensome because they seek documents that could not have any possible relationship to

13  any possible issues in this litigation. As an exploratory interrogatory it is premised on a lack

14  of understanding about the scale and scope of activities that are involved in the production

15  of a multi-city show such as Jersey Boys: Dodger has numerous documents and agreements

16  with numerous people and entities regarding Jersey Boys, including for example,

17  agreements with equipment suppliers, hair stylists, costume designers and providers, casting

18  services, venues, lighting companies, actors, electricians and numerous other service and

19  equipment suppliers. We are providing agreements and information reasonably relating to

20  the issues in this lawsuit. And we have provided extensive summaries of earnings received

21  and royalties and related payments made. Documents regarding costs and expenses will be

22  made available in New York at a time to be discussed and agreed upon by the parties.  If

23  there are additional agreements and information that are sought, plaintiff should identify

24  and request them specifically, formally or informally, and we will be pleased to address such

25  requests. But we object to the present indiscriminate shot-gun request. There are, therefore,

26  hundreds of different agreements of all kinds with third parties involving Jersey Boys and

27  thousands of documents evidencing payments to numerous persons and entities in

28  connection with *Jersey Boys* for all kinds of services, fees, royalties, etc. We have now

1     **provided substantial summaries of such payments and earning. And there are numerous**

2     **redundant documents reporting and evidencing the same payments - which can be**

3     **produced at another time if plaintiffs counsel specifically identifies the kind of backup and**

4     **alternative summaries that he reasonably requests. We will provide copies of licenses to the**

5     **production entities that produce *Jersey Boys,* and copies of relevant agreements between**

6     **defendants to this litigation (to the extent not already produced). As to payments, revenue,**

7     **profit etc. we have provided copies of summaries of revenues and payments in connection**

8     **with *Jersey Boys,* these summaries are in the form of Monthly Compilation Statements**

9     **("MCS") as sent to investors. These Monthly Compilation Statements break out revenues**

10    **with respect to their sourcing. Further backup and confirming documents can be supplied**

11    **or made available for inspection if they are specifically and reasonably identified and**

12    **requested - but we believe that these will provide full and adequate summaries of all moneys**

13    **earned and paid. Payment information has been produced in the form of relevant 1099**

14    **Forms.**

15                    **\*\*\*\*\*\*\*\*\*\*\***

16    **INTERROGATORY NO. 7:**

17        **Identify all documents relating to the payments of monies, compensation, option**

18    **payments or royalties to any of the other nominal defendants herein, relating to Jersey**

19    **Boys, the Jersey Boys Production or Jersey Boys Collateral Items.**

20    **RESPONSE TO INTERROGATORY NO. 7:**

21        **We are producing relevant MCS and 1099's to summarize these matters. Other**

22    **more detailed or backup materials will need to be specifically identified and requested and**

23    **upon such reasonable requests such responsive materials.**

24                    **\*\*\*\*\*\*\*\*\*\*\***

25        In summary, we note that, in their responses, Dodger and JB Vegas indicated that it would

26    produce the "primary agreements the Defendants have with each other and with the

27    production…" and the "basic agreements and limit [sp] partnership agreements that are relevant

28    to the Jersey Boys productions." To date, however, those documents have not been produced. As

2298954.1

to our requests that go to the transfers of the rights at issue and ownership of those rights-- which called for the disclosure of the transfer to JB Broadway we recently discovered via third party subpoena-- the defendants improperly objected; argued the merits of their defenses; and refused to produce obviously important and critical documents.

**C.    The Courts Should Compel Production of the Requested Documents and Information.**

The documents and information that we seek are clearly discoverable and relevant.  The plaintiff needs to put together the pieces of the puzzle as to the transfer of the rights at issue; who owns the rights; how the rights are licensed to the Production Limited Partnerships; and how the defendants profit from the use of these rights.  All of this is undoubtedly spelled out in the documents not yet produced.

Accordingly, the Courts should order Dodger and JB Vegas to produce the following:

(1)    All of the limited partnership agreements and other formation documents for the Production Limited Partnerships (including all entities identified in response to interrogatory no. 1 (see Exhibit 2)); any limited partnership or entity in which the defendants are partners or hold direct or indirect ownership interests that relate to the Jersey Boys; JB New York LP; Jersey Boys Maple Leaf, LP; Jersey Boys Australia Investor, LLC; Jersey Boys LLC; Jersey Boys, II, LLC; Jersey Boys LJP, LLC; Jersey Boys Records Limited Partnership; and any other limited partnership agreement, operating agreement or other formation documents for any entities related to the Jersey Boys production and the rights at issue.

(2)    All documents relating to the transfer of the rights at issue including the transfer from Dodger to JB Broadway; any transfer or license of rights by JB Broadway to the Production Limited Partnerships; and any other document that purportedly allows the Production Limited Partnerships, or any other entity, to use the rights at issue.

**III.    FINANCIAL AND DAMAGES INFORMATION**

**A.    Background.**

Plaintiff is entitled to recover from the defendants' profits attributable to the infringement of the work.  In addition, plaintiff has a claim for equitable accounting in which the defendants need to account to Plaintiff for the profits arising from the use of the work.  *See* Order denying

11

2298954.1

motion to dismiss accounting claim at pp. 37-39 (Doc. 300).  Recoverable profits include not only the profits arising out of the Jersey Boys production and related infringement and use of the Work, but "indirect profits" such as profits from the sale of the cast album, the Jersey Boys book and film rights.  See eg, *Frank Music Corp. v. Metro-Goldwyn- Mayer, Inc*., 772 F.2d 505, 517 (9th Cir. 1985).  Defendants have wholly failed to produce the documents necessary for plaintiff to prove its damages case.

Based on the documents received to date, the various defendants receive the following but we do not have the necessary documentation to verify or quantify any of these receipts:

(1)    DeVito -- receives royalty payments from the limited partnerships.  It is unknown whether DeVito receives royalty payments from Dodger or any of the other defendants.

(2)    Valli and Gaudio receive royalty payments from the limited partnerships.  Again, it is unknown whether Valli and Gaudio receive royalty payments from Dodger or the other defendants.  Valli, Gaudio and defendant DSHT, Inc. are also partners in at least JB Vegas and, presumably, get a distribution of profit (above and beyond royalty payments) from that entity. See Exhibit 7 (JB Vegas response to interrogatory No. 4).  It also appears that Valli and/or Gaudio may hold an ownership interest in some of the other limited partnerships and in JB New York, LP but Dodger has produced no documents to verify that or to quantify the amount of profits distributed to Valli and Gaudio.

(3)    Brickman, Elice and McAnuff (and McAnuff's company, Skunk, Inc.) appear to receive royalties from the Production Limited Partnerships.  It is unknown whether they receive profit distributions or have ownership interests in any of the Production Limited Partnerships.

(4)    Dodger receives royalties from the Production Limited Partnerships as well as profit distributions.  See Exhibit 8 (pertinent portion of JB Vegas partnership agreement).

(5)    As to DSHT, Inc., it is unknown exactly what DSHT receives given the wholesale failure of DSHT, Inc. to produce any documents and information in this case.  See Plaintiff's Motion to Compel directed to DSHT, Inc.  But we do know that DSHT is a partner in at least JB Vegas and, accordingly, receives distributions of JB Vegas' profits.  See Exhibit 7.

///

2298954.1

1   (6)   JB Broadway, LP, as the purported owner of the rights at issue receives licensing
2   income from the other Production Limited Partnerships as well as profits.

3   Dodger has produced only bits and pieces of the financial picture.  The documents that
4   have been produced do not encompass all of the profits at issue.  Moreover, the documents
5   produced do not provide the necessary detail to allow plaintiff to make its damages case.

6   In short, Dodger has produced two things: (1) unaudited "monthly compilations" from the
7   Production Limited Partnerships; and (2) form 1099s sent to various defendants by the Production
8   Limited Partnerships.  The monthly compilation statements -- an example of which is attached as
9   Exhibit 9-- shows that the Production Limited Partnerships pay royalties but the monthly
10  compilation statement does not specify to whom the royalties are paid and the nature of the
11  royalties.  Additionally, the monthly compilation statement shows profit distributions but, again,
12  does not specify to whom profits are distributed.

13  The 1099s produced by Dodger-- an example of which is attached as Exhibit 10-- are
14  missing a number of years for various defendants.  *See* chart attached as Exhibit 11.[3]
15  Additionally, there is no way to verify if the 1099s encompass all payments made to the
16  defendants without the underling accounting data for the Production Limited Partnerships and
17  Dodger.

18  Moreover, the 1099s do not reflect profit distributions paid to the defendants.  Profits paid
19  out of the limited partnerships are reported on a Schedule K-1, not on a form 1099.[4]  To date, not
20  one K-1 has been produced.

21  And we have no documents and information as the character and amount of "indirect
22  profits" received by the defendants related to Jersey Boys.  Finally, Dodger and JB Vegas have
23  produced no financial projections for Jersey Boys, which is critical to enable Plaintiff to prove her
24  share of future profits.

25  Dodger and JB Vegas, in the discovery responses discussed below, claim to have provided
26  a "very full picture of earnings and payments."  But that is simply not the case.  Although Dodger

27

28
_____

[3]   Counsel for Dodger has told us that Dodger will provide the missing 1099s and we will provide a list of the missing 1099s.
[4]   A partner's share of income and distributions to the partner are reported on a Schedule K-1 (Form 1065). See Form 1065 and related instructions at www.irs.gov/pub/irs/1065.

2298954.1

1  has provided some information about royalties (the 1099s), it is not clear that all royalties have

2  been disclosed.  And more importantly, there has been absolutely no production of documents and

3  information as to the receipt of profits, both direct and indirect.  Most notably, Dodger has yet to

4  produce a single K-1.  Further, the unaudited monthly compilation statements obviously do not

5  tell the whole story.  Media reports indicate that Jersey Boys has grossed nearly a billion dollars.

6  See Exhibit 12.  Yet, the unaudited monthly compilation statements produced by Dodger reflects

7  about $500 million gross revenues.  See Exhibit 13 (summary chart of monthly compilation

8  statements).

9      If trial were today, Plaintiff would be wholly unable to prove up its damages case against

10  the defendants because Dodger has failed to comply with proper discovery requests.

11      **B.      The Document Requests, Interrogatories and Responses.**

12      The relevant document requests, interrogatories and responses are as follows:

13  **DOCUMENT REQUEST DT NO. 19 AND VV NO. 12:**

14      **All documents, electronically stored information or things relating to the anticipated**

15  **or projected longevity of *Jersey Boys,* including, but not limited to, correspondence,**

16  **financial projections, news articles, and reports to investors or potential investors.**

17  **RESPONSE TO DOCUMENT REQUEST NO. 19 AND VV NO. 12:**

18      **Defendants object to these requests on the grounds that they are grossly overbroad,**

19  **unduly burdensome, inadequately defined and seek documents that are irrelevant and not**

20  **reasonably calculated to lead to the discovery of admissible evidence. To the extent that**

21  **there are projections about Jersey Boys expected longevity, we will try to identify them and**

22  **will provide them to the extent that such things might appear in reports to investors.**

23                          **\*\*\*\*\*\*\*\*\*\*\*\***

24  **DOCUMENT REQUEST DT NO. 27 AND VV NO. 17:**

25      **All documents, electronically stored information or things relating to or evidencing**

26  **Defendant's profits, revenues or other consideration obtained from Jersey Boys, Jersey**

27  **Boys Collateral Items, and the Jersey Boys book authored by David Cote.**

28  **/ / /**

                                      14

1  **RESPONSE TO DOCUMENT REQUEST DT NO. 27 AND VV NO. 17:**

2  **Summaries of such documents have been produced. If more detail and backup**

3  **materials are reasonably required then it will be made available for inspection in response**

4  **to specific and reasonable requests.**

5  \*\*\*\*\*\*\*\*\*\*\*

6  **DOCUMENT REQUEST DT NO. 32 AND VV NO. 21:**

7  **Defendant's federal income tax returns for the tax years 2004 to the present.**

8  **RESPONSE TO DOCUMENT REQUEST DT NO. 32 AND NO. 21:**

9  **We object to this request on the grounds that it contains privileged information**

10  **which is unrelated to any issue or matter in this case. We also object on the grounds that**

11  **there are alterative means of obtaining the same information that is germane to this case**

12  **and that Defendants have already produced 1099' s and other financial summaries that you**

13  **might reasonably require in this action.**

14  \*\*\*\*\*\*\*\*\*\*\*

15  **DOCUMENT REQUEST DT NO. 34 AND VV NO. 23:**

16  **All or your financial statements, audited or unaudited, relating to *Jersey Boys* for**

17  **the years 2004 through the present.**

18  **RESPONSE TO DOCUMENT REQUEST DT NO. 34 AND VV NO. 23:**

19  **Defendants object to the request on the grounds that the information relevant to**

20  **Jersey Boys earnings and payments have already been provided in the form of summaries,**

21  **as discussed by counsel, and in the form of 1099' s all of which provide a very full picture of**

22  **earnings and payments. Without waiving this objection, defendants will make available**

23  **audited yearly statements specific to Jersey Boys.**

24  \*\*\*\*\*\*\*\*\*\*\*

25  **DOCUMENT REQUEST DT NO. 36:**

26  **All documents, electronically stored information or things relating to any effort to**

27  **solicit or secure investors in *Jersey Boys,* or any predecessor production.**

28  **/ / /**

2298954.1

**RESPONSE TO DOCUMENT REQUEST DT NO. 36:**

Defendants were not involved in soliciting or securing investors in a "predecessor production." Defendants object to this request on the grounds that it vague, undefined, and lacking in any reasonable or fair specificity. We object as well on the grounds that this request is not reasonably calculated to indentify or obtain documents that are properly discoverable or reasonably related to the subject-matter of this lawsuit. The request is also so overbroad and unclear that it would possibly call for documents subject to the attorney-client and work product privilege. There were no references to the Work in any solicitation materials.

*************

**DT INTERROGATORY NO.4:**

Identify all documents relating to the payment of any monies, compensation, option payments or royalties to "Owner" (as defined in the *Letter Agreement)* pursuant to the *Letter Agreement.*

**VV Interrogatory No. 12:**

Identify all Persons to whom you transfer or pay, or have transferred or paid, any revenues or income generated from the JERSEY BOYS production (s) identified in response to Interrogatory No.8.

**RESPONSE TO DT INTERROGATORY NO.4 AND VV INTERROGATORY NO. 12:**

There are numerous redundant documents reporting and evidencing the payments to the Owner and payments to others. The efficient way to convey this information is by drawing from 1099 Statements to Owners and others from Dodger. We have produced 1099's issued so far, reflecting payments to Owner and others. If further documents are needed, along with documents evidencing Defendants' cost and expenses, they will, as discussed, be provided in response to specific reasonable requests. The MCS' s produced provide responsive information as well.[5]

*************

---

[5]   Interrogatories 5 and 6 requested the same information as to the "Bookwriter," Valli and Gaudio and the responses were identical. We do not repeat here.

2298954.1

**DT INTERROGATORY NO.8:**

State the total amounts of all payments of monies made to "Owner" (as defined in the *Letter Agreement)* pursuant to the *Letter Agreement,* including, but not limited to, payments made for the following items: a) Option payments pursuant to Section 1 of the *Letter Agreement;* b) Advance Payments pursuant to Section 2 of the *Letter Agreement;* c) Underlying Rights Royalties pursuant to Section 3 of the *Letter Agreement;* d) Music Royalties pursuant to Section 3 of the *Letter Agreement;* e) Additional Royalties pursuant to Section 3 of the *Letter Agreement;* f) Advance Payments pursuant to Section 7(d) of the *Letter Agreement;* g) Payments pursuant to Section 7(e) of the *Letter Agreement;* h) Payments pursuant to Section 7 (f) of the *Letter Agreement;* i) Payments pursuant to Section 7(h) of the *Letter Agreement;* j) Payments of Subsidiary Rights Proceeds pursuant to Section 8 of the *Letter Agreement;* k) Payments pursuant to Section 9 of the *Letter Agreement;* 1) Payments relating to Film Rights as defined in Section 10 of the *Letter Agreement;* m) Payments relating to the Cast Album as defined in Section 11 of the *Letter Agreement;* n) Payments of shares of net profits of any Financing Entity pursuant to Section 15 of the *Letter Agreement;* 0) Payments pursuant to Section 16 of the *Letter Agreement.*

**RESPONSE TO INTERROGATORY NO.8:**

Same answer as to Interrogatory No.4. Responsive MCS and 1099's have been supplied. In line with discussions between counsel these materials are being supplied to provide answers to questions regarding revenues and distribution of such revenues. More detail and backup etc. must be specifically requested and as to such reasonable requests responsive materials will be made available in NYC as arranged by counsel.[6]

\*\*\*\*\*\*\*\*\*\*\*\*

**INTERROGATORY NO. 10:**

Identify all financial statements (including income statements, balance sheets, statement of cash flows, and statements of owners' equity) relating to Jersey Boys, the

---

[6]     Interrogatory No. 9 sought the same information for the "Bookwriter" and the same response was provided.  We do not repeat here.

2298954.1

1  Jersey Boys Production, any and all Financing Entities (as defined in the Letter

2  Agreement), any production of Jersey Boys, or any company of Jersey Boys including, but

3  not limited to financial statements relating to Supplemental Foreign Territories (as defined

4  in the Letter Agreement).

5  **VV Interrogatory No. 17:**

6       Identify all documents relating to or comprising your financial statements, including

7  income statements, balance sheets, statement of cash8 flows, and statements of owners'

8  equity, from your inception to the present.

9  **RESPONSE TO DT INTERROGATORY NO. 10 AND VV INTERROGATORY NO 17:**

10       Objection to the extreme lack of focus and specificity to this request, which make

11  the interrogatory overly burdensome and unreasonable. Available summaries have been

12  supplied in the form of MCS and annual financial statements along with 1099's. There are

13  numerous other redundant documents as well as numerous other documents evidencing

14  costs and expenses of the Jersey Boys production, but these will be produced in NYC upon

15  request with some reasonable particularity and specificity so that information is identified

16  and the kinds of documents that contain such information can be efficiently identified

17  without redundancy or production of financial materials that have no reasonable

18  connection with any issues in this lawsuit.

19                          **\*\*\*\*\*\*\*\*\*\*\***

20  **DOCUMENT REQUEST DT NO. 18 AND VV NO. 11:**

21       All documents, electronically stored information or things relating to any effort or

22  proposal to adapt *Jersey Boys* for film or television, including, but not limited to,

23  documents relating to consideration paid, or to be paid, for any such adaptation, and notes,

24  treatments, scripts and correspondence relating to the content of any such adaptation.

25  **RESPONSE TO DOCUMENT REQUEST NO. 18 AND VV NO. 11:**

26       Defendants object to this request on the grounds that it is grossly overbroad, unduly

27  burdensome and oppressive and seeks documents that are irrelevant and not reasonably

28  calculated to lead to the discovery of admissible evidence. Plaintiff has no justification for

2298954.1

1    seeking information to determine if she might have a claim against a work that is not yet

2    been created. These vague and unfocused requests might also reach documents covered by

3    the attorney-client privilege and they are objected to on those grounds as well. Without

4    waiving any of these objections, Defendants note that no film or television rights have been

5    sold and that to the extent that any potentially responsive documents might exist or ever

6    come into existence, they are and/or would be proprietary and privileged and have no

7    bearing on any issues in this litigation. JBVV has no such rights in any such adaptations

8    and DT does not presently have such rights.

9                                    ************

10           In summary:

11           (1)     Dodger says it will produce its audited financial statements (RFP No 34).  Yet, to

12   date, no audited financials have been produced for Dodger.  Dodger also says that the request for

13   the audited financials of the Production Limited Partnerships "lack[s] focus and specificity"

14   (Interrogatory No. 10).  Yet, it has produced the unaudited financials for the Production Limited

15   Partnerships (the so called "monthly compilation statements").  It should produce the more

16   reliable and detailed audited financials as well.

17           (2)     Dodger has refused to produce the underlying accounting data for Dodger and the

18   Production Limited Partnerships (i.e., the Quick Books data) because it says it has produced the

19   1099s and monthly compilation statements, which they assert provides a "full picture."  But that

20   assertion is wrong.  Without the underlying account data we can not verify the royalties paid to

21   the defendants; quantify the profits distributed to the defendants; and identify and quantify the

22   defendants' share of indirect profits.

23           (3)  Dodger, in one response, says it will provide financial projections and, in another,

24   says it will not produce the financial information provided to the investors, which undoubtedly

25   contains projections.  Regardless, to date, not one financial projection has been produced and such

26   projections are clearly relevant to proving up future profits.

27           (4)  Dodger and JB Vegas refuse to produce tax returns, which obviously include income

28   and profits received.  And the Production Limited Partnership tax returns will include the various

                                        19

2298954.1

1   K-1s reflecting profits paid out to the defendants.

2       (5)  Dodger refuses to produce any documents relating to the potential sale of film rights,

3   which Plaintiff needs in order to quantify future profits.[7]

4       **C.    The Court Should Compel Dodger and JB Vegas to Produce the Requested Documents.**

5       Dodger and JB Vegas should be compelled to produce the following:

6       (1)    The audited financial statements of the Production Limited Partnerships.  To date,

7   Dodger has only produced the *unaudited* "monthly compilation statements."  We know that

8   audited financial statements exist for the limited partnerships because a third party, pursuant to

9   subpoena duces tecum, produced audited financial statements for some of the limited

10  partnerships.  *See* Exhibit 14 (Kinsella production).  Audited financial statements are clearly more

11  reliable than unaudited "compilation statements."  Moreover, the audited financials contain

12  footnotes not found in the unaudited monthly compilation statements that provide insights into the

13  contractual arrangements between the parties as well as references to other entities-- not disclosed

14  by Dodger-- which appear to be providing a Jersey Boys profit stream to Dodger.  *Id.* at p. 6,

15  note 5.

16      (2)    The tax returns of Dodger and the Production Limited Partnerships.  Again, tax

17  returns are reliable and clearly relevant and discoverable.    See eg, *Cullum v. Diamond A.*

18  *Hunting, Inc.*, 2009 U.S. Dist. LEXIS 4572, 4-5 (W.D. Tex. Jan. 21, 2009) (tax returns

19  discoverable in infringement case even though gross revenues reflected on returns may contain

20  revenues from unrelated to infringement).

21      (3)    The K-1s issued by Dodger and the Production Limited Partnerships.  The K-1s

22  will show profit distributions made to the defendants; profits which form the basis for the

23  Plaintiff's recovery.  Accordingly, Dodger and JB Vegas should be compelled to produced all K-

24  1s issued to any of the defendants by Dodger and the Production Limited Partnerships; JB

25  Broadway; Skunk, Inc (Mr. McAnuff's wholly owned company); and any other entity in which

26  any of the defendants (or JB Broadway or Skunk) have a direct of indirect ownership interest.

27

28
---

[7]      We have been accused of trying to kill the film rights deal by issuing a third party subpoena to the potential buyer of the film rights.  We have no interest in killing that deal.  Indeed, Plaintiff hopes a deal is struck because that would increase the amount of money due Plaintiff.

2298954.1

1       (4)    The missing 1099s issued by the Production Limited Partnerships to the various

2  defendants.  *See* footnote 2.

3       (5)    The Quick Books data, in electronic native format, of the Production Limited

4  Partnerships.  The Production Limited Partnerships use the accounting software Quick Books.

5  The Quick Books data is in the custody and control of Dodger, who is the managing partner for

6  the various Production Limited Partnerships.  The Quick Books data is critical as the accounting

7  records will tell us what monies have been distributed to the defendants by the Production

8  Limited Partnerships.  This is the only way for the plaintiff to confirm that it has picked up all

9  monetary payments and distributions to the various defendants.  In addition, the Quick Books data

10 should be produced in its native format.  First, that is the least burdensome way to produce the

11 data as the accounting data can simply be copied to a disk.  Second, it is much easier for the

12 plaintiff to work with the electronic data than it is with paper.  The Quick Books software -- in the

13 electronic production -- will allow plaintiff to run reports and otherwise search the data more

14 quickly and efficiently than combing thru thousands of pages of paper.  Finally, the Quick Books

15 production should include a chart of accounts.  Typically, an accounting system will have a chart

16 of accounts that identify the various account numbers and a corresponding description of the

17 account.

18      (6)    Copies of the checks, and related cover statement, for royalty and profit payments

19 to the defendants.  Dodger has produced copies of the checks and cover statements relating to the

20 royalty payments to defendant DeVito.  To date, however, Dodger has refused to produce copies

21 of the checks for any of the other defendants.  These checks are relevant.  The DeVito checks

22 indicate, in the cover statement, the nature of the royalty payment being sent to Mr. DeVito.  *See*

23 Exhibit 15.  Similarly, the checks to the other defendants should contain this relevant and critical

24 information, which is important to the issue of whether a royalty payment relates to the Work as

25 opposed to musical rights or other rights that may not necessarily be recoverable by the plaintiff.

26      (7)    The financial statements and Quick Books data of Dodger.  To date, Dodger has

27 produced very little financial information at the Dodger level.  The information produced by

28 Dodger has been financial information at the level of the Production Limited Partnerships.  We

2298954.1

1   need the financial information at the Dodger level to determine other sources of revenue coming

2   to Dodger outside of the Production Limited Partnerships; ie, the indirect profits.  For example,

3   Dodger may be receiving monies from other sources such as sales of the Jersey Boys book, the

4   cast album and other ancillary items which would not be picked up in the Production Limited

5   Partnerships' financial statements and Quick Books data.  The Dodger financials and underlying

6   data will also show whether Dodger (as opposed to the Production Limited Partnerships) is

7   paying any royalties or profits to the other defendants.  And for the same reasons described above,

8   Dodger should produce its Quick Books data in electronic format with a chart of accounts.

9   Finally, Dodger should produce its audited financial statements.[8]

10      (8)  Offering materials to investors and revenue and profit projections.  Dodger has raised

11   money from outside investors to finance the production of Jersey Boys.  Undoubtedly, offering

12   materials and financial information-- including revenue and income projections-- were provided

13   to these investors.  Plaintiff needs this information to prove future profits.  Accordingly, Dodger

14   should be compelled to produce these materials as well as any and all financial projections related

15   to Jersey Boys.

16      (9)  The contracts and transactional documents related to the indirect profits such as

17   contracts relating to the Jersey Boys book, cast album and potential film rights.  For example,

18   Dodger's response to interrogatory No. 1 (Ex. 2) identifies a number of contracts that relate to the

19   Jersey Boys book; the cast album; and merchandising agreements, all of which relate to "indirect

20   profits" and none of which have been produced.

21   **IV.    VIDEOS OF JERSEY BOYS PRODUCTION**

22      We requested production of all video recordings of the Jersey Boys production.  We want

23   to show the jury the actual production, which we assert infringes upon the Work and, under our

24   equitable accounting claim, used the Work without Plaintiff's permission.  The video recordings

25   are clearly relevant and discoverable.  Yet, Dodger and JB Vegas refuse to produce such

26   recordings:

27

28

---

[8]      We understand that Dodger is involved in productions other than Jersey Boys.  We have communicated to Dodger's counsel that Dodger may redact from the production the financial information related to productions other than Jersey Boys.

2298954.1

**DOCUMENT REQUEST DT NO. 8 AND VV NO. 4:**

**All audiovisual recordings of all performances of Jersey Boys in your possession which have been fixed in any tangible medium of expression, including videotapes, compact discs, digital video discs, Blu-ray discs, hard drives, tapes, or other optical or magnetic storage media.**

**RESPONSE TO DOCUMENT REQUEST DT NO.8 AND VV NO.4:**

**We object to this request on the grounds that it is unfocused, lacking in any clarity or specificity and is not reasonably crafted to yield or identify properly discoverable documents. There are many recordings of music, b-roll, ad materials, audio and video, cast album recordings of all kinds. We will not produce such materials. There is a bootleg copy of the Broadway performance of Jersey Boys that Plaintiff has obtained and it reflects the NY performance of Jersey Boys. Third parties have restricted and limited recordings of the NY production under strict union limitations on use and copying.**

********

The request is not "unfocused."  And we clarified in our October 19 conference that we seek recordings of the complete production, not promotional snippets.  There is a strong need for the recordings as the jury should be allowed to see the actual production(s) at issue.

The "bootleg" to which the defendants refer is of poor quality; is interrupted by standing and sitting by the audience and does not include all the elements relevant to the Plaintiff's case. Presumably, the videos that Dodger and JB Vegas possess are of much higher quality.

As to purported third party restrictions precluding production, Dodger and JB Vegas have produced no documents to verify such restrictions.  The Court should compel production of the videos that Dodger and JB Vegas possess or, at a minimum, identify such videos in their possession and produce the documents that allegedly restrict production as the proposition that such restrictions trump this Court's ability to compel production of clearly relevant evidence is dubious at best.

/ / /

/ / /

2298954.1

1    **V.     CONCLUSION**

2         For the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion

3    to compel and order production of the documents and information requested above.

4         DATED this 20th day of December, 2010.

5                                    LEWIS AND ROCA LLP

6
                                     By /s/ John L. Krieger
7                                        LEWIS AND ROCA LLP
                                         3993 Howard Hughes Parkway, Suite 600
8                                        Las Vegas, Nevada  89169
                                         John L. Krieger, (Nevada Bar No. 6023)
9                                        JKrieger@LRLaw.com

10                                       LEWIS AND ROCA LLP
                                         40 North Central Avenue, Suite 1900
11                                       Phoenix, Arizona  85004-4429
                                         George L. Paul (Admitted Pro Hac Vice)
12                                       GPaul@LRLaw.com
                                         Robert H. McKirgan (Admitted Pro Hac Vice)
13                                       RMckirgan@LRLaw.com

14                                       GREGORY H. GUILLOT, P.C.
                                         13455 Noel Road, Suite 1000
15                                       Dallas, Texas  75240
                                         Gregory H. Guillot (Admitted Pro Hac Vice)
16                                       ggmark@radix.net

17
                                     Attorneys for Plaintiff Donna Corbello
18

19

20

21

22

23

24

25

26

27

28

2298954.1

1

## CERTIFICATE OF SERVICE

2

      Pursuant to Fed. R. Civ. P. 5(b), I certify that I am an employee of LEWIS AND

3

ROCA LLP. and that on this day I caused the document entitled PLAINTIFF'S MOTION

4

TO COMPEL RE: WRITTEN DISCOVERY TO DODGER THEATRICALS LTD AND JB

5

VIVA VEGAS LP to be served as follows:

6

7

     [ ]    by placing same to be deposited for mailing in the United States Mail, in a

8

             sealed envelope upon which first class postage was prepaid in Las Vegas,

9

             Nevada; and/or

10

     [ ]    Pursuant to Fed. R. Civ. P. 5(b)(2)(D), to be sent via facsimile;

11

     [ ]    to be hand-delivered; and/or

12

     [X]    by U.S. District Court ECF electronic transmission to the attorneys of record.

13

L. Bradley Hancock
Christopher B. Payne

14

Greenberg Traurig, LLP
1000 Louisiana, Suite 1800

15

Houston, Texas  77002

16

Booker T. Evans, Jr.
Greenburg Traurig, LLP

17

2375 East Camelback Road, Suite 700
Phoenix, Arizona  85016

18

Alma Chao

19

Greenburg Traurig, LLP
3773 Howard Hughes Parkway, Suite 500 North

20

Las Vegas, Nevada  89169

21

Attorneys for Thomas Gaetano DeVito

22

23

Daniel M. Mayeda
Leopold, Petrich & Smith, P.C.
2049 Century Park East, Suite 3110
Los Angeles, California  90067-3274

David S. Korzenik
Miller Korzenik Sommers LLP
488 Madison Avenue, Suite 1120
New York, New York  10022-5702

Samuel S. Lionel
Todd Kennedy
Lionel, Sawyer & Collins
300 South Fourth Street, Suite1700
Las Vegas, Nevada 89101

Attorneys for Defendants Frankie Valli,
Robert J. Gaudio, Marshall Brickman,
Eric S. Elice, Des McAnuff, DSHT, Inc.,
and Dodger Theatricals, Ltd.

Dated this 20th day of December, 2010.

24

25

/s/ Jennifer L. Bryan
Jennifer L. Bryan

26

An employee of Lewis and Roca LLP

27

28

2298954.1