**EXHIBIT 1**

**[DECLARATION OF GREGORY H. GUILLOT UNDER PENALTY OF PERJURY]**

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DONNA CORBELLO,<br><br>　　　　Plaintiff,<br>　vs.<br>THOMAS GAETANO DEVITO, *et al.*,<br><br>　　　　Defendants**.** | CASE NO.  2:08-cv-00867-RCJ-PAL<br><br>**DECLARATION OF GREGORY H. GUILLOT UNDER PENALTY OF PERJURY** |

　　　　1.　　My name is Gregory H. Guillot.  I am an attorney, licensed in Texas, the District of Columbia, and Louisiana, and am lead counsel to Donna Corbello, the plaintiff in this case.  I have personal knowledge of the facts set forth herein, and if called and ordered to serve as a witness, I can and will competently testify thereto under oath.

　　　　2.　　I have had numerous discussions with counsel to the New Defendants regarding the outstanding discovery issues in this case, including discussions regarding the issues raised in the *Motion to Compel Answers to Interrogatories and the Production of Documents by Defendants, Marshall Brickman and Eric S. Elice* ("Motion to Compel") filed herewith.  Those discussions have predominantly been with David Korzenik, counsel for the New Defendants, and several have included my co-counsel at Lewis & Roca, George L. Paul, Robert H. McKirgan, and/or John L. Krieger.

　　　　3.　　Besides telephone calls, electronic mail messages, and an in-person meeting in Los Angeles, California in July 2010, I also participated in two comprehensive conferences with Mr. Korzenik, expressly devoted to the discovery responses of Defendants Brickman and Elice, including a conference on August 5, 2010, concerning their responses to Plaintiff's interrogatories, and a conference on August 6, 2010, concerning their written responses to Plaintiff's document production requests, and the status of their document production.  During these conferences, Mr. Korzenik and I discussed each of Plaintiff's discovery requests; each objection lodged by Brickman and Elice and

Corbello Exhibit 1
Page 0002

1  the basis therefor; and, Plaintiff's assessment of those objections, and continuing need for certain
2  types of information and documents requested.  A number of issues raised in these conferences were
3  not covered by the New Defendants' *Motion for Protective Order* (Doc. 298), or the *Cross-Motion*
4  *to Compel* (Doc. 326) filed by Plaintiff, which was then pending against Brickman and Elice.
5  Moreover, whereas, defense counsel said he would be consulting with his clients on these issues and
6  reverting to us with responsive information, or decisions regarding what Defendants were willing
7  to produce, these issues were not included in the parties' *Joint Status Report* (Doc. 335), filed a few
8  days later, on August 10, 2010.

9        4.      On October 11, 2010, I sent an email to defense counsel with a "punch list" of
10 pressing discovery matters as to which Plaintiff was still awaiting defense counsel's responses, and
11 several pertained to Defendants Brickman and Elice.  A true copy of that email is appended to this
12 *Declaration* as *Attachment 1*, with the issues applicable to said Defendants highlighted in yellow.
13 However, notwithstanding a subsequent conference with defense counsel, in which my co-counsel
14 also participated, the issues relating to Brickman and Elice were not resolved, and defense counsel
15 indicated that we had reached an impasse with respect to several, pertaining largely to financial
16 information, and information concerning Elice's Nevada corporation, "Getting Home, Inc."  Counsel
17 were also unable to resolve Plaintiff's demand for information and documents concerning copyright
18 registrations held by Brickman and Elice, and request that certain demonstrably-inaccurate or
19 improperly-certified responses to Plaintiff's interrogatories and document production requests be
20 supplemented and/or corrected.  With respect to the latter issue, although defense counsel had
21 represented that he would be amending or supplementing some or all of the New Defendants written
22 discovery responses, he refused to agree to a date certain for doing so, or to specify which responses
23 would be amended/supplemented, and for which parties.  Ultimately, this left Plaintiff's counsel
24 uncertain regarding which of Brickman's, Elice's, and other New Defendants' discovery responses
25 remained "valid," and would be asserted by New Defendants throughout the case.

26       5.      Finally, there remains an active dispute concerning an alleged communication from
27 Michael David of Dodger Theatricals to individual New Defendants herein, which somehow relates
28 to Rex Woodard or this litigation, and the New Defendants' first awareness of same.  In response

1   to Plaintiff's interrogatories concerning Defendants' first awareness of *Rex Woodard*, the verified
2   answers of Brickman and Elice (and McAnuff), all indicated that they first became aware of *this*
3   *litigation* from an email sent to them by Michael David, which they pledged to produce. However,
4   they have never done so, even though at least four New Defendants should possess it – Mr. David,
5   the sender, and the three sworn recipients. At our personal meeting in Los Angeles, California, in
6   July 2010, Mr. Korzenik showed Plaintiff's counsel an email *from Ed Strong to* Michael David
7   concerning this litigation, which he had sent following a telephone conference with Plaintiff's
8   counsel before the New Defendants were joined, and Mr. Korzenik characterized this document as
9   the email to which the subject discovery responses had referred, rather than an email from Michael
10  David – attributing the mention of Michael David to error. At the time, I had no reason to disbelieve
11  this, and I was permitted to see the document only briefly – I asked if Plaintiff's counsel could have
12  a copy, and Mr. Korzenik said "no," because he would be sending a Bates-stamped copy with the
13  New Defendants' next production disk, and it would be more orderly to handle the document's
14  distribution in that fashion. However, months elapsed, and the document never arrived, and
15  accordingly, it was mentioned in my October 11, 2010 "punch list" email, and subsequently
16  discussed again with Mr. Korzenik.

17       6.   On October 15, 2010, Mr. Korzenik finally forwarded the subject email from Ed
18  Strong to Plaintiff's counsel by email. A copy of Mr. Korzenik's email is appended to this
19  *Declaration* as *Attachment 2*, along with my response, and a copy of the subject email from Ed
20  Strong is appended to this *Declaration* under seal as *Attachment 3*. Upon examining the Ed Strong
21  email, it was immediately apparent that it had not been copied to Defendants Brickman, Elice, and
22  McAnuff, and accordingly, could not be the email from Michael David referred to in their discovery
23  responses. Rather, Mr. David must have forwarded this email to them, or sent another email, entirely
24  unrelated to the Ed Strong email. Accordingly, as shown in *Attachment 2*, I raised this issue with
25  defense counsel, and requested that they look for a forwarded email from Michael David on or near
26  the date of the Ed Strong email. *Id*. No response was received. In a subsequent conversation with
27  defense counsel, I indicated that if no such email from Michael David existed, counsel should amend
28  Brickman's and Elice's (and McAnuff's) subject responses, to provide accurate information. No

1  such supplemental or amended responses have been served.

2      7.    Unfortunately, despite my good-faith efforts, I have been unable to resolve the
3  matters discussed in this *Motion to Compel*, and, absent defense counsel's commitment to correcting
4  the deficiencies in Brickman's and Elice's written discovery responses; in view of the impasse
5  counsel have reached; and, given the deadlines for filing motions to compel established by this
6  Court, Plaintiff 's counsel have no choice but to seek this Court's assistance, in securing accurate,
7  responsive, and certifiable responses to Plaintiff's interrogatories.  Additionally, the Court's
8  assistance is required to obtain fundamental agreements and financial documents crucial to
9  Plaintiff's case, which, if not produced, will make it difficult to calculate Plaintiff's damages, as well
10 as the other information and documents discussed in Plaintiff's *Motion to Compel*.

11     8.    I further declare, under penalty of perjury, that the foregoing statements are true and
12 correct, to the best of my recollection and ability, and are made in good faith.

13     Signed at Dallas, Texas, on this 25th day of December 2010.

                                /s/Gregory H. Guillot
                                Gregory H. Guillot

Corbello Exhibit 1
Page 0005