**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

DONNA CORBELLO,                                )
                                               )
                          Plaintiff,           )          Case No. 2:08-cv-00867-RCJ-PAL
                                               )
vs.                                            )          **ORDER**
                                               )
THOMAS GAETANO DEVITO, *et al.,*               )          (Objection to Order - Dkt. #520)
                                               )
                          Defendants.          )
_____)

Before the court is Plaintiff's Emergency Objection to Magistrate Judge's April 15, 2011,
Orders (Dkt. #520) which the Chief District Judge referred to the undersigned to treat as a motion for
clarification.  The court has considered the Objection, New Defendants' Response (Dkt. #526),
Plaintiff's Reply (Dkt. #529), New Defendants' Surreply (Dkt. #533), and Plaintiff's Notice of Errata
(Dkt. #540).

**BACKGROUND**

The court conducted a hearing on April 14, 2011, on the parties' numerous discovery motions
and entered a number of written orders.  In the current emergency objection, which the District Judge
directed the undersigned to treat as a motion for clarification, the Plaintiff requests modification or
clarification of the order granting in part and denying in part Plaintiff's Motion to Compel (Dkt. #360)
regarding written discovery to Dodger Theatricals, Ltd. ("Dodger"), and JB Viva Vegas, LP.  The order
required Dodger to serve supplemental responses to Request for Production Nos. 10 and 26; to produce
all audio/visual recordings responsive to Request for Production No. 8 in its care, custody or control, or
state that it had no responsive materials; and to supplement Response to Request No. 18 to state
whether it had any signed agreement to adapt Jersey Boys for a film or television, and if so, to produce
any such agreement.  The order gave Dodger until April 29, 2011, to serve supplemental responses to

1   these requests, and denied any request for relief in the moving and responsive papers not specifically
2   addressed in the order.

3        The Plaintiff seeks modification or clarification of the undersigned's order denying Plaintiff's
4   request to compel production of financial information.  Specifically, the Plaintiff requests that Dodger
5   be compelled to produce: (1) audited financial statements for the Production Limited Partnerships and
6   any other entity that is generating revenues, profits, royalties or other form of income to any of the
7   Defendants; (2) the remaining monthly compilation statements not previously produced up through the
8   present, with an update shortly before trial; (3) the QuickBooks accounting data (in electronic format)
9   for the Production Limited Partnerships and any other Jersey Boys-related entity for which Dodger
10  possesses or controls the accounting data; (4) the remaining 1099s not yet produced; and (5) account
11  summaries or check registers for royalties paid by the foreign Production Limited Partnerships to the
12  Defendants.

13       Plaintiff also seeks a modification of the court's Order (Dkt. #497) which granted in part and
14  denied in part Plaintiff's motion to compel answers to interrogatories, and the production of documents
15  by Defendant DSHT, Inc., (Dkt. #356).  In the court's Order (Dkt. #497) the court compelled DSHT to
16  serve supplemental responses by April 29, 2011.  Specifically, the court compelled a supplemental
17  responses to Interrogatory Nos. 13, 21, 22, and Request for Production Nos. 5, 7, and 11.

18       The New Defendants oppose the motion indicating that the court's order (Dkt. #497) disposing
19  of the discovery disputes concerning DSHT is moot because there was never any dispute over whether
20  the DSHT Separation Agreement was discoverable.  The New Defendants claim that the issue was not
21  before the court, and therefore the order did not address it.  The New Defendants represent that the
22  Separation Agreement has been located and produced to Plaintiff.

23       The Plaintiff also requests modification or clarification of the court's Order (Dkt. #509) to
24  compel Dodger to produce: (1) the assignment from Dodger to Jersey Boys Broadway; (2) the licenses
25  from Jersey Boys Broadway to the Production Limited Partnerships, or any other Jersey Boys-related
26  entities; (3) the Jersey Boys Records LP Partnership Agreement; (4) the Jersey Light and Sound
27  Partnership (or operating) agreement; (5) the partnership and operating agreements for the entities
28  formed in connection with the Canadian production and all related licenses and sub-licenses; (6) the

1  partnership and operating agreements for the entities formed in connection with the Australian

2  productions and all related licenses, sub-licenses, and investment contracts; and (7) the partnership and

3  operating agreements for the entities formed in connection with the London Production and the related

4  licenses, sub-licenses and investment contracts.

5        The New Defendants argue that with respect to the Dodger order (Dkt. #509), the discovery the

6  court denied was a proper exercise of discretion under Fed.R.Civ.P. 26(b)(2)(C) which limited

7  Plaintiff's requests for additional production of financial documents concerning income, costs and

8  expenses for the productions Plaintiff addresses in Section IV of her objections.  With respect to the

9  discovery granted, the New Defendants claim the order was clear and that Dodger has complied with it.

10  Finally, the New Defendants assert that the court did not rule on a number of discovery matters

11  addressed in the Plaintiff's Emergency Objection (Dkt. #520) because the Plaintiff's motion papers did

12  not raise or contest certain discovery issues.

13  **DISCUSSION**

14        As the district judge noted in his order referring this matter to the undersigned for clarification,

15  discovery in this case has been acrimonious.  Plaintiff has repeatedly accused the Defendants of hiding

16  or withholding critical information.  Defendants have repeatedly claimed that Plaintiff has not reviewed

17  the voluminous discovery that has been provided.  The court has considered and resolved many, many

18  discovery disputes and thoroughly read and considered thousands upon thousands of pages of moving

19  and responsive papers and supporting declarations and exhibits.  The task of reading all of the moving

20  and responsive papers was not delegated to a law clerk.  During oral argument at the hearing on April

21  14, 2011, the court gave each side 30 minutes to argue their positions, telling counsel that all of the

22  moving and responsive papers had been read, and requesting that counsel argue the points most

23  significant to them.  Counsel for Plaintiff announced his intention to use, and used, the bulk of his time

24  to argue that the New Defendants' discovery failures warranted sanctions.  The Chief District Judge has

25  referred this matter to me to treat Plaintiff's emergency objection as a motion for clarification of the

26  two orders at issue.

27        The orders are clarified below.

28  ///

3

1      **I.      The DSHT Order (Dkt. #497)**

2              This order adjudicated Plaintiff's disputes and requests to compel discovery from DSHT, Inc.

3      The last paragraph of Plaintiff's emergency objection complains that the undersigned did not compel

4      the production of the Separation Agreement between Dodger and DSHT.  This is true.  The Separation

5      Agreement was not specifically mentioned.  However, as Defendants correctly point out, this was

6      because the Plaintiff did not request an order compelling production of the Separation Agreement.  It

7      was not in dispute in the motion to compel Dodger.  Counsel for the New Defendants represents that it

8      stated in DSHT's supplemental response that there was a Separation Agreement, but that a signed copy

9      could not be located.  After the court's order was entered, DSHT requested an extension of time (Dkt.

10     #515) to visit former counsel for DSHT to see if it could be located.  Counsel for the New Defendants

11     represents in their opposition to this motion that they found a copy of the signed Separation Agreement

12     and produced it to Plaintiff May 11, 2011, along with other related documents.  Plaintiff's reply

13     indicates that the New Defendants produced a Separation Agreement.  However, the Separation

14     Agreement provided that Jersey Boys was to be dealt with in a different agreement between the parties.

15     As a result, Plaintiff pressed for the Jersey Boys' related Separation Agreement, and New Defendants

16     supplemented their discovery responses stating it was their informed conclusion that there was no other

17     Separation Agreement other than DSHT's investment in the Jersey Boys production.  The New

18     Defendants indicated this conclusion was based on a search of DSHT's former counsel's file.  Plaintiff

19     then requested that the New Defendants identify the former counsel whose files were searched.  Her

20     reply indicated she had received no response to date, and argued the New Defendants should ordered to

21     identify the former counsel.  Her Errata (Dkt. #540) corrects this statement indicating Defendants

22     identified the former counsel in a letter dated May 23, 2011.

23             The New Defendants have produced the DSHT Separation Agreement, and supplemented their

24     discovery responses after searching the files of former counsel to indicate that there is no other

25     Separation Agreement.  By signing responses to Plaintiff's discovery requests, the New Defendants and

26     counsel for the New Defendants have certified to the best of their knowledge, information and belief,

27     formed after reasonable inquiry, the disclosure is complete and correct as of the time it is made.  See

28     Fed.R.Civ.P. 26(g)(1)(A).  The court will not compel the New Defendants to produce a document it

4

1   represents has been produced after searching the files of DSHT's former counsel, or other agreements

2   counsel represent do not exist.

3   **II.   The Dodger Order (Dkt. #509)**

4          Plaintiff complains that the court's order used loose and limiting language that gave Dodger an

5   "out" from producing many of the operative ownership documents and related licensing and assignment

6   documents.  Plaintiff's multiple motions to compel outlined in considerable detail the ownership

7   structure and involvement of each of the New Defendants as Plaintiff understands them.  The order

8   granted in part and denied in part the motion to compel directed to Dodger and JB Viva Vegas, LP

9   (Dkt. #360).  Specifically, it ordered Dodger to serve a supplemental response to Request for

10  Production Nos. 10 and 26 to clarify whether it had produced "all agreements between the parties; all

11  licenses between the parties and the production companies; all limited partnership agreements between

12  parties and production companies in which they are investors . . . ."  Plaintiff's objection asserts that this

13  language is loose and limiting and gives Dodger an "out" in one portion of the brief, and in another

14  portion of the brief says that the language requiring production of "'all agreements between the parties'

15  is broad enough to encompass the obviously relevant and important license and assignment documents

16  between Dodger and Jersey Boys Broadway, both of whom are parties."  Plaintiff requests a

17  modification or clarification of the order to make clear that the assignment from Dodger to Jersey Boys

18  Broadway must be immediately produced.

19         The New Defendants respond that they served supplemental responses on April 29, 2011, as

20  ordered, and have produced all agreements and licenses that could be located in their possession.

21  Counsel for the New Defendants represents that there were no transfer or assignment of rights between

22  Dodger and Jersey Boys Broadway LP that was ever signed or reduced to writing.  Dodger stated in its

23  April 29, 2011, supplemental response that after a diligent search, it had produced all such agreements

24  and licenses that it could locate in its possession.  The supplemental responses were served under

25  penalty of Rule 26(g)(1)(A), and the court will not compel the New Defendants to produce an

26  agreement they represent does not exist.

27  ///

28  ///

5

1      **A.**      **Ownership Documents and Related Licensing and Assignment Agreements**

2            Plaintiff's Reply (Dkt. #529) acknowledges that after "much effort and numerous briefing, the

3   New Defendants have produced most of what they should have produced in the first place." Plaintiff

4   argues that the New Defendants did not produce critical documents until Plaintiff brought her motions

5   to compel. Plaintiff contends that the New Defendants have delayed producing critical documents or

6   did not produce critical documents until after her motions to compel were filed, and that Dodger did not

7   confirm that certain assignments or licenses were oral until well after the emergency objection was

8   filed. The Plaintiff filed the emergency objection because the deadline for doing so was May 5, 2011.

9   Counsel for Plaintiff represents that documents "keep trickling in," and that the New Defendants

10   produced additional documents the week before the reply was filed. Thus, it is disingenuous for the

11   New Defendants to suggest that the objection was brought without cause, and if nothing else, the

12   objection caused the New Defendants "to cough up more documents."

13            The New Defendants have supplemented their discovery responses, and Plaintiff now concedes

14   that they have produced "most of what they should have" before motion practice. The court appreciates

15   that Plaintiff had a deadline to file an objection to the court's order and may not have had an adequate

16   opportunity to review and assimilate the supplemental responses before the objection was filed. The

17   court also appreciates that the New Defendants provided additional documents and correspondence

18   clarifying certain of their discovery responses after the objection was filed. The New Defendants

19   affirmatively represent that they have produced all ownership and related licensing and assignment

20   agreements in their care, custody or control.

21            The New Defendants are obligated to timely supplement their discovery responses if additional

22   responsive documents are found or if they become aware that their discovery responses are incomplete

23   or inaccurate. *See* Fed.R.Civ.P. 26(e). Thus, the court also appreciates that the New Defendants,

24   consistent with their supplementation obligations, may continue to "cough up" more documents.

25   Indeed, elsewhere in Plaintiff's objection, Plaintiff seeks an order compelling updated critical financial

26   documents that Plaintiff fears will not be timely prepared and produced before trial. Parties have an

27   obligation to conduct a diligent search for all responsive documents in their care, custody or control.

28   Rule 26(e) obligates both parties to supplement their discovery disclosures and the court expects the

parties to timely supplement their discovery responses as required by Rule 26(e) if they become aware of additional documents. Plaintiff's specific complaints about Defendants' failure to produce relevant ownership and related licensing and assignment agreements are addressed below.

With respect to the assignment from Dodger to Jersey Boys Broadway, the New Defendants have served supplemental responses under penalty of Rule 26(g), and represent that there were no transfer or assignment of rights between Dodger and Jersey Boys Broadway, LP that was ever signed or reduced to writing. The court will not order the New Defendants to produce a document they represent does not exist.

Plaintiff next requests that the order should be modified or clarified to make clear that licenses from Jersey Boys Broadway to the various Production Limited Partnerships must be produced. Again, the New Defendants served supplemental responses April 29, 2011, as ordered, and represent to the court in the response that there were only three licenses reduced to signed writings of the production companies, and that they have produced the same. Specifically, they have signed licenses for: (1) the Australian production; (2) the First National Tour; and (3) the two licenses for the London production which have produced along with the unsigned license for the Canadian production. The New Defendants represent that all remaining licenses were oral and implied, and that it took considerable effort to determine that no signed licenses existed. With respect to the signed licenses that exist, counsel for New Defendants represent that these were supplied May 11, 2011, "in case they had not already been supplied" and that the production of written licenses for Jersey Boys is complete. Significantly, the New Defendants do not represent that they previously produced all of the signed licenses before the May 11, 2011 supplemental responses. This may be because counsel did not take time and effort to locate the documents in their earlier productions, or because they were not actually produced initially. The court has insufficient information to make this determination. In any event, the court will not order the New Defendants to produce documents they represent do not exist.

Next, Plaintiff asserts that the language of the order should be modified to clarify that production of the agreement between Dodger and Jersey Boys Records LP, and between Jersey Light and Sound and Dodger is required. The New Defendants' response concedes that the order does not require production of these LP agreements. Although the New Defendants do not believe these

documents are "necessary or germaine to the claims at issue," counsel believes they have been produced. The court will clarify or modify the Order (Dkt. 509) to require the New Defendants to serve a supplemental response verifying that these documents have been produced, or if not, to produce them. Counsel for the New Defendants affirmatively represents that the Defendants have produced the record agreement with Rhino Records and that it will produce the LP Agreements for JB Records, LP now that it is a party if it has not already done so. Counsel for the New Defendants affirmatively represents that the agreement for Jersey Light and Sound was produced May 10, 2011. The court will clarify or modify its order to require the New Defendants to produce the Jersey Boys Records LP Agreement(s), and accepts the representation that they have produced the Jersey Light and Sound Agreement.

Plaintiff requests that the court's order be modified or clarified to require production of the JB Toronto Partners LP partnership agreement and other agreements or writings referred to in the JB Australia Investor LLC Operating Agreement Dodger has produced. Additionally, Plaintiff states that while Dodger has produced the JB London Investor LP Partnership Agreement, it has not produced either the Jersey Boys UK Ltd. Partnership Agreement or the investment contract between Jersey Boys UK Ltd. and JB London Investor LP. The New Defendants respond that the court's order does not require production of agreements for the intermediate foreign investment companies, but that they have produced all applicable licenses for them that exist. Counsel for the New Defendants refer to their May 11, 2011, supplemental production and have provided Bates citations for the applicable agreements produced. Again, the court accepts the New Defendants' representations they have produced all of these agreements, even though not formally mentioned in the court's prior order, and will not compel further production of documents counsel for the New Defendants represent do not exist.

**B.     Financial Information**

Plaintiff objects to the court's order limiting the financial and damages information the court required Dodger to produce. Plaintiff's objection argues that she needs documents and data to prove: (1) the amount of royalties paid to a particular Defendant; (2) the gross revenues attributable to the infringement; and (3) the nature of the costs and expenses that the Defendants will assert as an offset to the revenues. Plaintiff claimed in the underlying motion, and reiterates in her objection, that she does not have what she needs. The New Defendants insist she does.

Plaintiff's Reply (Dkt. #529) concedes that Dodger has produced over 80 K-1s rather than the handful claimed in the initial objection.  However, Plaintiff continues to believe not all K-1s have been produced.  Specifically, Plaintiff claims that K-1s have not been produced for the individual Defendants, Dodger, or New Defendant Michael David.  Plaintiff asks that the court require the New Defendants to produce audited financial statements which are only issued once a year, arguing they are not lengthy, and that it would not be burdensome to produce them.   Plaintiff points out that there are only seven productions involved in this case, the oldest of which Jersey Boys Broadway, has been in operation for eight years.  Thus, the New Defendants would be required to produce and copy a maximum of 56 additional documents.  Plaintiff knows that audited financial statements are prepared because she received one or more of them in third-party discovery.  Plaintiff contends that the audited financials are clearly discoverable, and that regardless of the reliability of the unaudited MCSs, they should be produced.  Plaintiff simply does not believe that the MCSs reflect all of the revenue at issue because the MCSs produced to date show approximately $500 million in gross revenues, which is approximately one-half of the internet reported gross box office receipts Plaintiff's expert, Mr. Kessler, refers to in his declaration.  Plaintiff believes that the MCSs do not reflect gross revenues, but only revenues net of certain expenses not reflected on the MCSs.

Plaintiff also reiterates that the New Defendants should be required to produce the QuickBooks electronic accounting data for the production limited partnerships.  Plaintiff has the burden of proving gross revenues of the production limited partnerships and the amount of royalties and other payments paid to the various Defendants by the production limited partnerships.  The New Defendants have the burden of proving offsetting costs of production.  The New Defendants do not claim that copying the QuickBooks data to a disk would be burdensome or expensive.  Plaintiff continues to believe that the QuickBooks data is the most up-to-date record of gross revenue generated, and that it should break down the different types of revenues and offsetting costs at issue.  Additionally, because K-1s for 2011 will not be prepared and issued until well after trial, Plaintiff seeks production of QuickBooks data believing it should be more recent and up to date.

Plaintiff also believes that the K-1s for the foreign productions "do not come close to giving the full financial picture."  Plaintiff asserts that no K-1s or 1099s have been produced for JB Australia

Management LLC which is controlled by Dodger.  Plaintiff believes that no 1099 or other tax reporting documents have been produced that reflect Dodger's income stream for the profits of JB London Investor, LP, that not one K-1 has been produced for JB Canada Licensing, and that no financial information has been provided for this entity or the profit stream accruing to Dodger for this entity.  In short, Plaintiff believes there are "gaping holes in the financial picture for the foreign productions."  Plaintiff believes the production of the QuickBooks data for all of the production limited partnerships, as well as the other entities managed and controlled by Dodger, is the only way she will get a complete picture of the Defendants' revenue.

Plaintiff also argues that the QuickBooks data should be produced to allow her to test the legitimacy of the production costs the New Defendants will claim to offset revenue.  Not every cost qualifies as a deduction.  Rather, the New Defendants may only legitimately claim offsets for costs directly assisting in the production of the infringing goods.  Thus, Plaintiff is entitled to discovery on the nature of the costs, and believes that the QuickBooks data may show that a lot of the costs summarized in the MCS relate to meals, limos, and other perks that have nothing to do with actual production costs.  Plaintiff maintains that the court will effectively grant summary judgment to the New Defendants that the costs reflected in the MCSs are valid offsetting costs unless the court allows Plaintiff discovery of the QuickBooks data.

The New Defendants filed a Surreply (Dkt. #533) to respond to Plaintiff's claims and supporting exhibits Plaintiff raised in her reply for the first time.  The New Defendants claim these are new materials, and raise issues the New Defendants could not address in their opposition.  The surreply indicates that the New Defendants have been providing Plaintiff's counsel with lists and charts showing 1099 and K-1 productions so that Plaintiff could see where they were complete or identify gaps, if any.  A June 6, 2011 letter from counsel for New Defendants to counsel for Plaintiff is attached as Exhibit "1" to the surreply.  It outlines efforts to conclude financial discovery issues, to locate and fill in the gaps of missing documents, and to clarify what documents exist that have already been produced.  The head of Dodger's Finance Department, Ms. Maldonado, is in the process of reviewing the K-1 charts provided to the court and Plaintiff's reply, and the New Defendants explained why certain K-1s Plaintiff believes are missing are not.  The New Defendants now represent that they have produced all

10

1099s and K-1s and their foreign equivalents, and that their productions are complete.

The court carefully weighed and considered the parties' competing arguments about what had been produced, what had not been produced, and the relative value of what the New Defendants were objecting to producing, in the underlying discovery motions. Plaintiff has repeatedly complained that the only documents Dodger has produced that relate to the revenues of the various productions are the unaudited Monthly Compilation Statements or MCSs. Plaintiff claims that "the MCSs undoubtedly do not reflect all of the revenue at issue." This is because counsel for Plaintiff believes gross revenues are actually $1 billion based on internet reports of gross box office revenues. The MCSs the Defendants have produced reflect only $500 million in gross revenues. Thus, Plaintiff asks that the order be clarified or modified to require Dodger to produce documents that reflect gross revenues. Specifically, Plaintiff seeks audited financial statements and the QuickBooks electronic data for the Production Limited Partnerships, in addition to the 1099s, K-1s, and their equivalents for foreign entities, the court has required the New Defendants to produce.

Counsel for the New Defendants argued in the opposition to the underlying motion, and in response to Plaintiff's objection, that the QuickBooks for the Production LPs do not show more detail than the MCSs that have been produced. The New Defendants have produced MCSs through February 2011, and understand their continuing obligation to produce supplemental MCSs as they are prepared. The New Defendants represent that they have now located and produced all 1099s and K-1s and their foreign equivalents, and have explained why what Plaintiff believes are gaps or missing documents are not actually gaps or missing documents. The court accepts these representations and will not compel the New Defendants to produce additional K-1s, 1099s, or their foreign equivalents which the New Defendants represent have been produced. However, the court will require the New Defendants to supplement their document productions to provide Plaintiff with copies of audited financial statements for the seven production limited partnerships involved in this case. The court will not require the New Defendants to produce the QuickBooks data for the following reasons.

Counsel for the New Defendants provided the declarations of Paula Maldonado, the head of Dodger's Finance Department, and Ira Schall, a CPA and outside consultant, to explain in considerable detail the financial documents and data that exist and what the data contained in the MCSs show. The

1  declarations also address why the internet calculation Plaintiff relies upon to argue the gross profits

2  have been grossly understated is simply wrong.

3        After reviewing the voluminous competing positions in the moving and responsive papers in the

4  underlying discovery motions, the court found the declarations of Ms. Maldonado and Mr. Schall

5  credible and convincing that the New Defendants had given Plaintiff authoritative financial discovery,

6  and that the MCS was the most authoritative and detailed financial operating statement of a Broadway

7  production company's financial and business activities.  The New Defendants' declarations and

8  arguments outlined in detail that the MCSs were financial documents that were required by New York

9  law and regulated by the New York State Attorney General's Office in the highly regulated theater

10 industry.

11       Mr. Schall's declaration related his significant experience in accounting in the theatrical

12 industry, and explained clearly and convincingly that the MCS's report earnings, expenses and profits

13 on a weekly basis for a theatrical production.  He outlined that the MCSs were prepared by Dodger

14 Theatricals as the general partner for each of the Jersey Boys production companies with the exception

15 of the Toronto Production Company which is now closed.  He outlined that the MCSs are required by

16 Regulation 51 of the New York Arts & Cultural Affairs Law, Article 23, and are enforced by the New

17 York Attorney General's Office.  His declaration averred that the MCS compiles, in detail, all weekly

18 earnings and expenses for each production over a four-week cycle and include, among other things: (1)

19 a balance sheet for each of the production company or LP; (2) a summary statement of Profit & Loss for

20 each LP; and (3) individual weekly Profit & Loss Statements showing all income and expenses for the

21 relevant four-week cycle for each of the limited partnership production companies.  He attested that the

22 MCSs are more detailed than annual audited statements which merely summarize in less detail the

23 substance of what the MCSs contain, and that they are monitored by unions and guilds, and managers

24 and agents of royalty participants.  Mr. Schall explained why financial documents from Defendants

25 Brickman, Elise, McNulty, Valley, Gaudio, and the LP investors including DSHT would not verify

26 information on the MCSs, and would only duplicate discovery by providing information that these

27 Defendants supplied to Dodger and/or which Dodger supplied to these Defendants.

28       Similarly, Ms. Maldonado's declaration attested that the MCSs are a complete financial

statement for each of the Jersey Boys' production companies, and that they contain a certification of accuracy and completeness by Dodger as required by New York law.  She swore that the weekly Profit & Loss Statement component of the MCSs were produced to the Plaintiff.  She described in detail what data was captured in QuickBooks and that the QuickBooks materials for the individual productions do not list payee information the Plaintiff complained she was not receiving.

In entering the order Plaintiff objects to here, the court considered the detailed declarations of Ms. Maldonado and Mr. Schall against the declaration of Michael Kessler supporting Plaintiff's request for more financial documents and data.  Ms. Maldonado and Mr. Schall are responsible for the New Defendants' financial data and records and have personal knowledge.  Mr. Kessler has an impressive curriculum vitae as the Founder, President and CEO of his accounting firm, Kessler & Associates.  His declaration is attached as an exhibit in support of the Plaintiff's objections to the court's order.

Mr. Kessler's declaration indicates that he has reviewed examples of the MCSs and that they do not provide the detailed accounting entries that underlie the line items contained within the MCSs.  He also attests that the MCSs do not provide the details concerning who received royalties, or partnership distributions.  He understands that Dodger has not produced any K-1s or similar reporting documents for the foreign Production Limited Partnerships.  He explains that his understanding of the QuickBooks accounting system, and believes it would provide the electronic detail for checks and accounting entries and detail for royalty payments.  He also describes how QuickBooks data is accounting data that is maintained electronically, and states that requiring production of the QuickBooks data would not require copying thousands of pages of documents.  Rather, the data from QuickBooks could be easily and inexpensively copied electronically to a disk or disks.  He opines that the QuickBooks data for the Production Limited Partnerships is necessary to quantify the amount of royalties received by any particular Defendant because the 1099s the New Defendants have produced do not provide the information needed.  He also indicates that the K-1s sent to the Defendants by the domestic Production Limited Partnerships and similar reporting documents for foreign production limited partnerships should be produced "as well as the missing 1099s for royalty payments made to the Defendants by the domestic Production Limited Partnerships and the reporting documents for the royalties paid by the foreign entities."

1   Mr. Kessler's declaration is dated April 4, 2011, before the court's Order (Dkt. #509) was
2   entered, and before supplemental productions of financial documents and data were required and
3   produced by the Defendants on April 29, 2011, and again on May 11, 2011.  It was also prepared before
4   the finance department's most recent review of Plaintiff's chart identifying gaps or missing K-1s and
5   1099s.  Counsel for the New Defendants represent that although the QuickBooks *software program*
6   may be capable of capturing some of the data the Plaintiff wants, that this is not the way the Defendants
7   use the program.  They again represent that the QuickBooks data does not contain any more information
8   than is contained in the MCSs; specifically, that it does not contain payee information, and that it does
9   contain any more current financial data than the MCSs.  Defendants have now completed their
10  production of 1099s, K-1s, and their foreign equivalents, and have been ordered to produce audited
11  financial statements for each of the seven limited partnership production companies.  Production of the
12  QuickBooks electronic data will therefore not be compelled.

13  The court expects the New Defendants to timely supplement their financial and accounting data
14  the court has ordered produced as the data becomes available.  However, the court will not
15  prospectively compel the New Defendants to produce financial and accounting data not yet compiled or
16  summarized for ongoing business activities.

17  For all of the foregoing reasons,

18  **IT IS ORDERED** that:

19  1.      Plaintiff's Emergency Objection (Dkt. #520) is treated as a Motion for Clarification, and
20          **GRANTED**. The court's prior Order (Dkt. #509) is **CLARIFIED** and **MODIFIED** as
21          set forth in the body of this order.

22  2.      Defendants shall have until **June 24, 2011**, to serve Plaintiff with the audited financial
23          statements and other documents referred to in this order.

24  Dated this 10th day of June, 2011.

25

26                                                  _____
27                                                  Peggy A. Leen
                                                    United States Magistrate Judge
28

14