1
2
3
4                       **UNITED STATES DISTRICT COURT**
5                            **DISTRICT OF NEVADA**
6
7     DONNA CORBELLO,                        )
8                            Plaintiff,      )        Case No. 2:08-cv-00867-RCJ-PAL
                                             )
9     vs.                                    )                  **ORDER**
                                             )
10    THOMAS GAETANO DEVITO, *et al.,*        )          (Mot. For Sanctions - Dkt. #554)
                                             )
11                          Defendants.      )
      _____)
12
13          The court conducted a hearing on August 25, 2011, on Defendant Thomas Gaetano Devito's
14    Motion for Sanctions (Dkt. #554).  John Krieger, Robert McKirgan and George Paul appeared in person
15    on behalf of the Plaintiff.  Booker Evans, Maximiliano Couvillier, Samuel Lionel and Lawrence
16    Hancock appeared on behalf of the Defendants.  The court has considered the Motion, Plaintiff's
17    Response (Dkt. #572), Defendant's Reply (Dkt. #577), the New Defendants' Joinder (Dkt. #580), and
18    the arguments of counsel at the hearing.
19                               **BACKGROUND**
20          Defendant Devito seeks an order disqualifying opposing counsel asserting Plaintiff's counsel
21    participated in eliciting false testimony from witness Frank Leanza at his May 18, 2011 deposition in
22    this case.  Devito maintains that Plaintiff's counsel bolstered the witness's credibility by asking a line of
23    questions designed to establish that the witness had not spoken about substantive matters with
24    Plaintiff's counsel before his deposition was taken, when this was false, as Plaintiff's counsel well
25    knew. Devito asserts it was only because of defense counsel's probing cross examination of the witness
26    that this falsehood was uncovered, and Plaintiff's counsel was forced to take the witness on redirect to
27    correct his false testimony.  Devito argues that the conduct of Plaintiff's counsel amounted to
28    subordination of perjury, constitutes a violation of Nevada Rule of Professional Responsibility

3.3(a)(3), and that the violations are so egregious that the court should exercise its supervisory power over the attorneys appearing in this case to disqualify them.

Plaintiff opposes the motion vehemently denying that counsel breached their ethical obligations during Mr. Leanza's deposition. Plaintiff's response is supported by detailed declarations of each of the three Plaintiff's attorneys who were involved in Mr. Leanza's deposition. The response and supporting declarations detail the contact counsel for Plaintiff had with Mr. Leanza, and represent that he was repeatedly instructed to tell the truth during his deposition. Plaintiff's counsel had no idea that Mr. Leanza would do anything other than be truthful during his deposition, and were surprised by some of his answers on direct examination by counsel for Plaintiff. During the first break of his deposition, Mr. Krieger and Mr. Guillot discussed an inaccuracy in one of Mr. Leanza's answers, and Mr. Krieger indicated he would clear things up with further questioning. Plaintiff's counsel expected Mr. Leanza to tell the truth about communications with Plaintiff's counsel preceding his deposition and was surprised when he got the answers he did, and unsure how to proceed. He decided to move onto other areas of examination and confer with co-counsel during another break.

During the next break, counsel represent that Mr. Guillot spoke with Mr. Leanza in the hall and reminded him that Leanza had discussed his testimony with Plaintiff's counsel before the deposition. Mr. Leanza appeared nervous, upset and confused. Mr. Guillot responded there was no reasons to be nervous if he just told the truth. During a second break, Mr. Krieger conferred with Mr. Guillot and Mr. Paul about the witness's answers. Plaintiff's counsel were concerned about some of his answers, but thought there were innocent explanations for some of his inaccuracies. Plaintiff's counsel made a decision during the break to see how the remainder of the deposition unfolded, expecting counsel for Defendants would cross examine Mr. Leanza and correct the record. Alternatively, counsel for Plaintiff would "deal with any need to correct or clarify testimony on redirect, or after the deposition if that was necessary."

During counsel for Defendants' cross examination, the witness appeared more confused. Later in the cross examination Mr. Leanza gave a series of answers to questions that Plaintiff's counsel knew were inaccurate. This caused Mr. Guillot to become angered and frustrated. Mr. Krieger asked for a break. Plaintiff's counsel met with Mr. Leanza in a separate room. A heated conversation ensued in

1   which Mr. Guillot yelled at the witness reminding him that he had been repeatedly advised he was

2   under the obligation to tell the truth.  Mr. Leanza appeared confused, unsettled and completely shaken

3   up.  Mr. Leanza also gave a number of reasons for testifying the way he did.  Mr. Krieger then

4   conducted redirect examination and elicited the fact that some of Mr. Leanza's prior answers during his

5   direct and cross examination were incorrect and corrected the inaccurate testimony.

6          Counsel for Plaintiff vigorously maintain that at all times they advised Mr. Leanza to tell the

7   truth.  Counsel for Defendants' accusation that Plaintiff's counsel suborned perjury is reckless, and

8   having been filed with the court will potentially taint the reputations of all of the Plaintiff's lawyers

9   involved.  Plaintiff's counsel corrected the inaccurate testimony of Mr. Leanza before the deposition

10  closed, and expected that cross examination would resolve the inaccuracies without the necessity for

11  conducting redirect.  However, when cross examination did not fully correct the inaccuracies of Mr.

12  Leanza's testimony, Mr. Krieger took the witness on redirect to elicit corrected responses.  Under these

13  circumstances, Plaintiff's counsel argues it did not violate Rule 3.3(a)(3).  Plaintiff's counsel also

14  argues that disqualification is a drastic measure which would deprive Plaintiff of counsel of her choice.

15  Additionally, courts have become increasingly skeptical of motions to disqualify counsel because they

16  have become popular tools used for purely strategic purposes.  Finally, counsel for Plaintiff argues Mr.

17  Leanza's testimony should not be excluded as an alternative remedy suggested by counsel for Devito.

18  The motion did not cite any authority for the proposition exclusion is an appropriate remedy, and

19  vigorous cross examination of the witness will establish any prior inconsistent statements the witness

20  has made.

21         Devito replies that the declarations supporting Plaintiff's response to the motion, and

22  specifically Mr. Guillot's declaration, is inconsistent with Plaintiff's Answer to Interrogatory No. 3

23  propounded by Defendant Getting Home, Inc., 39 days after Leanza's deposition.  The interrogatory

24  asked the Plaintiff to identify all communications between the Plaintiff or her counsel and Frank Leanza

25  at any time.  Plaintiff responded to the interrogatory by providing information about contacts between

26  Plaintiff's counsel and Mr. Leanza, which counsel for Devito believes is at odds with the declarations

27  supporting the response to the motion for sanctions.  Devito also disputes Plaintiff's characterization of

28  Mr Leanza as an elderly, confused witness with a hearing aid who was having difficulty hearing,

3

1   indicating a review of the video and audio taped deposition would refute these characterizations.

2   **DISCUSSION**

3   It is undisputed that Mr Leanza testified falsely under oath that he had not had substantive

4   discussions about his anticipated testimony with counsel for Plaintiff before the deposition.  In fact, he

5   had had several substantive discussions with multiple lawyers representing the Plaintiff who took and

6   attended his deposition.  More specifically, he falsely testified under oath that he had not previously

7   told any of the lawyers representing the Plaintiff about a profane and inflammatory remark Devito

8   allegedly made to him in 1991 regarding Rex Woodard.  Counsel for Plaintiff acknowledges a duty

9   under Rule 3.3(a)(3) of the Nevada Rules of Professional Responsibility to take remedial measures to

10  correct testimony a lawyer knows to be false, but suggests "immediacy is not the standard."  Counsel

11  for Plaintiff argues reasonable remedial measures depend on the circumstances, and that the incorrect

12  testimony was eventually corrected before the close of the deposition.  Counsel for Plaintiff taking the

13  deposition, Mr. Krieger, indicated this was the first time he had ever had a witness testify falsely, and

14  that he was taken by surprise, and unsure what to do.  He conferred with the other two counsel who

15  were present at the deposition, and the decision was made to wait until the end of the deposition to see

16  if the inaccuracies would be corrected, and if not, to "deal with it."  The court finds that counsel for

17  Plaintiff's decision to wait until the end of the deposition to see if the inaccurate testimony was

18  corrected on cross examination was a serious error of judgment.  The court recognizes a lawyer has

19  conflicting loyalties when something of this nature happens.  Mr. Leanza had provided information to

20  Plaintiff's counsel before the deposition that was highly relevant to Plaintiff's case, and if true, depicted

21  Defendant Devito in a poor light.  Counsel owe a duty of zealous advocacy to the client to bring out the

22  testimony and use it on the client's behalf.  However, counsel for Plaintiff also has a duty of candor to

23  the court and to opposing counsel and an ethical obligation to correct the record when false testimony is

24  given.

25  By not correcting the witness earlier, counsel for Plaintiff not only exposed themselves to the

26  accusations made in the motion now on file before the court, but as a practical matter, also undermined

27  the credibility of the witness and the value of his testimony.  If counsel for Plaintiff taking the

28  deposition had firmly corrected the witness the first time he provided a false or misleading answer, by

4

1  reminding him of the multiple prior conversations that had taken place, it would have immediately let

2  the witness know that the instruction to tell the truth was meant.  If the witness was merely mistaken, o

3  the mistake would have been corrected by refreshing his recollection. If the witness was confused, the

4  confusion would have been remedied by a differently phrased question, or if the result of a cognitive

5  problem, exposed and explored.  Similarly, if, as counsel for Plaintiff suggests, the witness was having

6  a problem with his hearing aid and attempting to read lips, that problem would have been explored and

7  addressed. Waiting to correct the testimony only compounded the number of times the witness repeated

8  the falsehoods in response to slightly different questions.

9        The court does not doubt the representations made by counsel for Plaintiff that Mr. Leanza was

10  repeatedly instructed to tell the truth during his deposition.  However, when counsel allows a witness to

11  testify in a manner counsel knows is false, the witness may conclude the instruction to tell the truth was

12  given with a wink and a nod to protect the lawyer who is more interested in winning than actually

13  eliciting the truth.  Promptly correcting the witness would have dispelled that notion.

14        The court also finds it was extremely poor judgment for Plaintiff's counsel to object to opposing

15  counsel's cross examination questions that were designed to clarify the inaccurate testimony by

16  objecting that the questions were "asked and answered."  The questions concerning substantive

17  conversations between Plaintiff's counsel and Mr. Leanza were asked.  Mr. Leanza provided false

18  responses.  Under these circumstances, to object that the questions asked on cross examination were

19  asked and answered further compounded the problem.

20        Notwithstanding the findings that counsel for Plaintiff used poor judgment in the decision to

21  wait until the end to correct Mr. Leanza's false and misleading testimony, and in asserting asked and

22  answered objections, the court finds that counsel for Devito has not met his burden of establishing that

23  counsel for Plaintiff breached their ethical obligation to take reasonable remedial measures to correct

24  false testimony.  Nothing in the record supports the highly inflammatory accusation that counsel for

25  Plaintiff suborned or attempted to suborn perjury.  Motions to disqualify opposing counsel have indeed

26  become a popular tool of litigators to disrupt, distract, and deprive a party of the counsel of her choice.

27  Courts have become increasingly suspicious of such motions, especially where they are used as a tool to

28  attempt to destroy the reputation and credibility of opposing counsel for strategic purposes.

1    Although counsel for Plaintiff used poor judgment in not immediately correcting the false

2    testimony, it strains credulity to believe that Plaintiff's counsel concocted a conspiracy to suborn

3    perjury on the facts presented before this court.  Counsel for Plaintiff deposed Mr. Devito the day

4    before Mr. Leanza.  Mr. Devito was asked whether he made the comment Mr. Leanza attributed to him

5    that counsel for Plaintiff intended to elicit during Mr. Leanza's deposition.  Mr. Devito denied it.

6    Counsel for Plaintiff all but announced that they had a witness who was prepared to testify about the

7    comment Mr. Devito was asked about at his deposition.  Counsel for Plaintiff could only have known

8    about the comment if counsel for Plaintiff had spoken to the witness, and expected a witness to so

9    testify.  Thus, to suggest that counsel for Plaintiff intended all along to hide the fact they had

10   communicated with Mr. Leanza about the substance of his testimony, and allowed false testimony to

11   stand to bolster his credibility is incredible.

12       For all of the foregoing reasons, the court will deny the motion to disqualify and for sanctions.

13   Mr. Leanza's credibility has been severely compromised by his false and misleading testimony on direct

14   and cross examination.  Vigorous cross examination of Mr. Leanza at trial, if his testimony is still

15   offered, will expose his multiple prior inconsistent statements.

16       Finally, the court has reviewed Plaintiff's response to Getting Home, Inc's Answer to

17   Interrogatory No. 3 concerning the communications between Plaintiff's counsel and Mr. Leanza, and

18   understands counsel for Defendants' concern that the interrogatory response is inconsistent with the

19   declarations supporting Plaintiff's response to the motion for sanctions.  The court will require counsel

20   for the Plaintiffs to provide the court with a copy of every communication with Mr. Leanza, including

21   counsel for Plaintiff's work product, for *in camera* review to determine whether the answer to

22   interrogatory should be supplemented and/or corrected, and to verify the accuracy of the declarations on

23   file.

24       **IT IS ORDERED** that

25       1.    Defendant Devito's Motion for Sanctions (Dkt. #577) is **DENIED**.

26   ///

27   ///

28   ///

6

2.   Counsel for Plaintiff shall have 14 from the date of the hearing, or until **September 28, 2011**, to provide the court with copies of all communications with Mr. Leanza prior to his deposition related to this case, including counsel's notes or other work product concerning communications with Mr Leanza.

Dated this 29th day of August, 2011.

_____
Peggy A. Leen
United States Magistrate Judge

7