```
_____ FILED              _____ RECEIVED
_____ ENTERED            _____ SERVED ON
                    COUNSEL/PARTIES OF RECORD

              NOV 2 1 2016

          CLERK US DISTRICT COURT
            DISTRICT OF NEVADA
BY:                            DEPUTY
```

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

DONNA CORBELLO,

      Plaintiff,

    vs.

THOMAS GAETANO DEVITO et al.,

      Defendants.

2:08-cv-00867-RCJ-PAL

**JURY INSTRUCTIONS**

## DUTY OF JURY

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case. Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

Instruction No. 1

1

## BURDEN OF PROOF

2     When a party has the burden of proof on any claim or defense by a preponderance of the

3 evidence, it means you must be persuaded by the evidence that the claim is more probably true

4 than not true.

5     You should base your decision on all of the evidence, regardless of which party presented

6 it.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Instruction No. 2

**TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS**

You should decide the case as to each defendant separately.  Unless otherwise stated, the instructions apply to all parties.

Instruction No. 3

## WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits which are received into evidence;

3.      any facts to which the lawyers have agreed; and

4.      any facts that I have instructed you to accept as proved.

# WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1.   Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.   Questions and objections by lawyers and the Plaintiff are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3.   Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

4.   Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

Instruction No. 5

1

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

2          Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as

3   testimony by a witness about what that witness personally saw or heard or did.  Circumstantial

4   evidence is proof of one or more facts from which you could find another fact.  You should

5   consider both kinds of evidence.  The law makes no distinction between the weight to be given to

6   either direct or circumstantial evidence.  It is for you to decide how much weight to give to any

7   evidence.

8          By way of example, if you wake up in the morning and see that the sidewalk is wet, you

9   may find from that fact that it rained during the night. However, other evidence, such as a turned

10  on garden hose, may provide a different explanation for the presence of water on the sidewalk.

11  Therefore, before you decide that a fact has been proved by circumstantial evidence, you must

12  consider all the evidence in the light of reason, experience, and common sense.

13

14

15

16

17

18

19

20

21

22

23

24

Instruction No. 6

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

1.      the opportunity and ability of the witness to see or hear or know the things testified to;

2.      the witness's memory;

3.      the witness's manner while testifying;

4.      the witness's interest in the outcome of the case, if any;

5.      the witness's bias or prejudice, if any;

6.      whether other evidence contradicted the witness's testimony;

7.      the reasonableness of the witness's testimony in light of all the evidence; and

8.      any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

Instruction No. 7

**TAKING NOTES**

Whether or not you took notes during the trial, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

Instruction No. 8

## STIPULATIONS OF FACT

The parties have agreed to certain facts that will be read to you. You must therefore treat these facts as having been proved:

1.    Frankie Valli, Robert J. Gaudio, and Thomas Gaetano DeVito were original and founding members of The Four Seasons.

2.    From 1988 through early January 1991, Rex Woodard co-authored with DeVito a book about DeVito, including his time with The Four Seasons. That book is referred to as the "Work" or alternatively as the "Autobiography."

3.    Woodard and DeVito co-authored the copyrighted Work at issue in this litigation.

4.    The Work was a "joint work" between DeVito and Woodard, within the meaning of 17 U.S.C. § 101, with DeVito and Woodard both co-authors of the Work.

5.    The Work has never been published.

6.    On May 25, 1991, Woodard passed away. Plaintiff Donna Corbello was married to Woodard at the time of his death.

7.    Plaintiff inherited all of Woodard's rights in the Work and became the co-owner of the Work with DeVito upon Woodard's death.

8.    On January 11, 1991, DeVito filed an application with the United States Copyright Office and obtained a copyright registration for the Work under Registration No. Txu 454 118.

9.    Plaintiff filed an application for Supplementary Registration with the United States Copyright Office, seeking to supplement Registration No. TXu 454 118, to include Woodard's authorship and ownership rights in the Work and confirm Woodard's status as a coclaimant. That application was granted, effective July 3, 2007, and a

Instruction No. 9

Supplementary Registration was issued correcting Registration No. TXu 454 118 to reflect Woodard's co-authorship and status as a co-claimant of the copyright.

10. In 1999, DeVito entered into an agreement with Defendants Valli and Gaudio, his former bandmates in The Four Seasons, concerning a possible "musical stage play based on the life and music" of the group (the "1999 Agreement").

11. The 1999 Agreement contained a reversionary clause, pursuant to which the rights granted by DeVito to Valli and Gaudio thereunder would lapse under certain specified circumstances.

12. In September 1999, Valli and Gaudio entered an agreement with Metropolitan Entertainment Group ("Metropolitan Group") to produce a musical stage play about the Four Seasons (hereinafter, "the Metropolitan Agreement").

13. The Metropolitan Group had a two-year option to produce the play but was unable to produce a musical within that time.

14. The 1999 Agreement "lapsed" on December 10, 2004.

15. Defendants David, DSHT, Dodger Theatricals, Ltd. ("Dodger"), and McAnuff did not become involved with Valli and Gaudio until well after the 1999 Agreement was executed, and after the Metropolitan Group's rights had expired.  Defendant Elice was contacted by the Metropolitan Group in early 2002 to become part of its Four Seasons project, and brought Defendant Brickman into the project at that time.

16. In the first half of 2002, Elice and Brickman drafted a treatment called Oh, What a Night, which they submitted to the Metropolitan Group in April 2002.

Instruction No. 9

17. In early-2003, Elice and Brickman updated the Oh, What a Night treatment and used the updated treatment to search for a new producer to replace the Metropolitan Group.

18. In May 2003, after the Metropolitan Group's rights expired, Elice approached David about the project and brought Brickman to the first meeting with David. Following a number of meetings among David, Elice, Brickman, McAnuff, Valli and Gaudio in 2003 and early-2004, a decision was made to move forward with the project.

20. On or around January 20, 2004, Brickman and Elice interviewed DeVito by telephone.

21. Brickman received a copy of the Work from DeVito sometime after the January 20, 2004 phone call.

22. Jersey Boys began previews at the La Jolla Playhouse on October 5, 2004. It opened at the La Jolla Playhouse on October 17, 2004, and ran there through January 16, 2005.

23. Jersey Boys began previews on Broadway on October 4, 2005. It opened on Broadway on November 6, 2005, and has continuously run there since that time.

24. Additional productions of Jersey Boys include two national U.S. tours; runs in Chicago and Las Vegas; and international productions in the U.K., Canada, and Australia.

25. Neither Plaintiff nor her husband, Woodard, ever authorized or otherwise gave permission for anyone to use or copy the Work in connection with Jersey Boys,

Instruction No. 9

either within or outside the United States, and Defendants did not seek such permission.

26.    The scripts for the two U.S. national tours and the productions in Las Vegas, the United Kingdom, Canada, and Australia are all materially the same as the Broadway script.

27.    Brickman and Elice are the co-authors of the scripts used for all productions of Jersey Boys.

28.    McAnuff has been the director for all productions of Jersey Boys at issue in this case.

## USE OF INTERROGATORIES

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

1

**EXPERT OPINION**

2          You heard testimony from Richard Krevolin and Douglas Wright concerning their opinions

3   and the reasons for their opinions.  This opinion testimony is allowed, because of the education or

4   experience of these witnesses.

5          Such opinion testimony should be judged like any other testimony.  You may accept it or

6   reject it, and give it as much weight as you think it deserves, considering the witness's education

7   and experience, the reasons given for the opinion, and all the other evidence in the case.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Instruction No. 11

**CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not received in evidence may be shown to you in order to help explain the evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

Instruction No. 12

**CHARTS AND SUMMARIES RECEIVED IN EVIDENCE**

Certain charts and summaries may be admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

Instruction No. 13

**DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The following depositions were taken on the following dates and presented to you during the trial:

1.    Thomas DeVito - May 18, 2011 and August 15, 2016

2.    Allison Horsley - May 6, 2011

3.    Charles Alexander - November 11, 2010

4.    Cindy Woodard Ceen - June 15, 2011

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

Instruction No. 14

**CORPORATIONS AND PARTNERSHIPS—FAIR TREATMENT**

All parties are equal before the law and a corporation or partnership is entitled to the same fair and conscientious consideration by you as any party.

Instruction No. 15

# LIABILITY OF CORPORATIONS AND PARTNERSHIPS—SCOPE OF

## AUTHORITY NOT IN ISSUE

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

Similarly, a partnership can only act through its employers, agents, or partners. Therefore, a partnership is responsible for the acts of its employees, agents, and partners performed within the scope of authority.

Instruction No. 16

### STATEMENT OF THE CASE

Plaintiff Donna Corbello has sued the Defendants for copyright infringement.  She alleges that Defendants Marshall S. Brickman, Eric S. Elice, Des McAnuff, DSHT, Inc., Dodger Theatricals, Ltd., Jersey Boys Broadway Limited Partnership, JB Viva Vegas, Skunk, Inc., and Getting Home, Inc. infringed her copyright in an unpublished autobiography titled *Tommy DeVito — Then and Now* (referred to as "the Work"), which was co-authored by Tommy DeVito and Plaintiff's late husband Rex Woodard.  Plaintiff alleges that Defendants used the Work without permission to help write the play *Jersey Boys* in violation of United States copyright laws.  She also alleges that Brickman, Elice, DSHT, Inc., Dodger Theatricals, Ltd., and Jersey Boys Broadway infringed the copyright under the laws of the United Kingdom, Canada, and Australia, based on the performance of *Jersey Boys* in those countries.  Defendants deny that *Jersey Boys* infringes the Work.

Defendants also assert as affirmative defenses that they had a license from Tommy DeVito to use the Work and that any use of the Work was permitted under the doctrine of "fair use" (or "fair dealing" as to the claims under the laws of the United Kingdom, Canada, and Australia).  Plaintiff denies the affirmative defenses.

Your task is to determine: (1) whether DeVito granted Defendants an implied license to use the Work; (2) whether *Jersey Boys* infringed the copyright in the Work; and (3) whether the use of the Work in *Jersey Boys* constituted fair use (or fair dealing as to the foreign law claims).  Plaintiff has the burden of proving (2) by a preponderance of the evidence.  Defendants have the burden of proving (1) and (3) by a preponderance of the evidence.

Instruction No. 17

**PLAINTIFF'S SETTLEMENT WITH THOMAS DEVITO AND THE COURT'S**

**DISMISSAL OF VALLI AND GAUDIO**

In addition to the Defendants I have previously mentioned, Plaintiff also brought suit against her copyright co-owner, Thomas DeVito, as well as Frankie Valli and Robert Gaudio. Plaintiff resolved her disputes with DeVito before this trial commenced, and the Court has dismissed Valli and Gaudio from this case during the trial. You should not concern yourself with or speculate as to the reasons why DeVito, Valli, and Gaudio are no longer Defendants in this case, nor should you consider Plaintiff's settlement with DeVito or the Court's dismissal of Valli and Gaudio in any manner when reaching a verdict.

Instruction No. 18

1

## PRELIMINARY INSTRUCTION—COPYRIGHT

2       Plaintiff claims co-ownership of a copyright and seeks damages against Defendants for

3  copyright infringement. Defendants deny infringing the copyright and assert affirmative defenses

4  that they had an implied license from Tommy DeVito and/or that they made a fair use of the Work.

5  To help you understand the evidence in this case, I will explain some of the legal terms.

6

## DEFINITION OF COPYRIGHT

7       The owner of a copyright has the right to exclude any other person from reproducing,

8  distributing, performing, displaying or preparing derivative works from the work covered by

9  copyright for a specific period of time.

10       A copyrighted work can be a literary work, musical work, dramatic work, pantomime,

11  choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual

12  work, sound recording, architectural work, or computer program.

13       Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles, or

14  discoveries cannot themselves be copyrighted.

15       The copyrighted work must be original. An original work that closely resembles other

16  works can be copyrighted so long as the similarity between the two works is not the result of

17  copying.

18

## HOW COPYRIGHT IS OBTAINED

19       Copyright automatically attaches to a work the moment the work is fixed in any tangible

20  medium of expression. The owner of the copyright may register the copyright by completing a

21  registration form and depositing a copy of the copyrighted work with the Copyright Office. After

22  determining that the material deposited constitutes copyrightable subject matter and that certain

23

24

legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner.

## PLAINTIFF'S BURDEN OF PROOF

In this case, the plaintiff contends that the defendants have infringed the plaintiff's copyright.  The plaintiff has the burden of proving by a preponderance of the evidence that the defendant copied original expression from the copyrighted Work.  Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the copyrighted work was infringed.

The plaintiff must also prove that the defendant's use of the copyrighted work was substantial.  In determining whether the defendant's use of the copyrighted work was substantial, you may consider how important the copied portion was to the copyrighted work as a whole.

## PROOF OF COPYING

To prove that a defendant copied the plaintiff's work, the plaintiff may show that the defendant had access to the plaintiff's copyrighted work and that there are substantial similarities between the defendant's work and the plaintiff's copyrighted work.

## LIABILITY FOR INFRINGEMENT

One who reproduces, publicly distributes, publicly performs, publicly displays, or prepares derivative works from a copyrighted work without authority from the copyright owner during the term of the copyright infringes the copyright.  Copyright may also be infringed by vicariously infringing or contributorily infringing.

**VICARIOUS INFRINGEMENT**

A person is liable for copyright infringement by another if the person has profited directly from the infringing activity and had the right and ability to supervise or control the infringing activity, whether or not the person knew of the infringement.

**CONTRIBUTORY INFRINGEMENT**

A person is liable for copyright infringement by another if the person knows or should have known of the infringing activity and induces or materially contributes to the activity.

**DEFENSES TO INFRINGEMENT**

The defendants contend that there is no copyright infringement. There is no copyright infringement when a defendant independently created the challenged work, the defendant made fair use of the copyrighted work by reproducing copies for purposes such as criticism, comment, news reporting, teaching, scholarship, or research, or an owner or co-owner of the copyrighted work granted the defendant an implied license to use the copyrighted work.

Instruction No. 19

## COPYRIGHT—DEFINED (17 U.S.C. § 106)

Copyright is the exclusive right to copy.  As relevant to this case, this right to copy includes the exclusive rights to (or authorize others to):

1.    reproduce the copyrighted work in copies;

2.    recast, transform, or adapt the work, that is, prepare derivative works based upon the copyrighted work; or

3.    perform publicly a copyrighted literary work.

It is the owner of a copyright who may exercise this exclusive right.  The term "owner" includes the author(s) of the work, assignees, and exclusive licensees.  In general, copyright law protects against reproduction, adaptation, public distribution, public performance, and public display of identical or substantially similar copies of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in an action for copyright infringement.

## COPYRIGHT—SUBJECT MATTER—GENERALLY (17 U.S.C. § 102)

The Work involved in this trial, the unpublished autobiography *Tommy DeVito —Then and Now*, is known as a literary work in which words, numbers, or other verbal or numerical symbols are expressed.

You are instructed that a copyright may be obtained in the Work.  The Work can be protected by copyright law.  Only that part of the Work consisting of original works of authorship fixed in any tangible form of expression from which it can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device, is protected by the Copyright Act.

Instruction No. 20

Copyright protection for an original work of authorship does not extend to any idea, procedure, process, system, method of operation, concept, principle, historical event, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied.

**COPYRIGHT—SUBJECT MATTER—IDEAS AND EXPRESSION (17 U.S.C. § 102(b))**

Copyright law allows the author of an original work to stop others from copying the original expression in the author's work. Only the particular expression of an idea can be copyrighted and protected. Copyright law does not give the author the right to prevent others from copying or using the underlying ideas contained in the work, such as any procedures, processes, systems, methods of operation, concepts, principles, historical events, or discoveries. In order to protect any ideas in the work from being copied, the author must secure some other form of legal protection because ideas cannot be copyrighted.

# COPYRIGHT INFRINGEMENT—ELEMENTS—OWNERSHIP AND COPYING

## (17 U.S.C. § 501(a)–(b))

Anyone who copies original expression from a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

On the plaintiff's copyright infringement claim, the plaintiff has the burden of proving by a preponderance of the evidence that:

1.      the plaintiff is the owner of a valid copyright; and

2.      the defendant copied original expression from the copyrighted work.

The parties have stipulated that the plaintiff is a co-owner of a valid copyright in the Work. You must treat that as having been proved.  If you find that the plaintiff has proved the second element above, your verdict should be for the plaintiff.  If, on the other hand, you find that the plaintiff has failed to prove the second element above, your verdict should be for the defendant.

Instruction No. 21

**COPYRIGHT INTERESTS—DERIVATIVE WORK (17 U.S.C. §§ 101, 106(2))**

A copyright owner is entitled to exclude others from creating derivative works based on the owner's copyrighted work. The term derivative work refers to a work based on one or more pre-existing works, such as a musical play, or any other form in which the pre-existing work is recast, transformed, or adapted. Accordingly, the owner of a copyrighted work is entitled to exclude others from recasting, transforming, or adapting the creative expression in the copyrighted work without the owner's permission.

Instruction No. 22

## SUBSTANTIAL SIMILARITY—PROCESS

In this, as in other cases, the steps we find helpful to follow are these:

1.  The Plaintiff must identify the source(s) of the alleged similarity between her work and the Defendants' work.

2.  Using analytic dissection, and, if necessary, expert testimony, the court must determine whether any of the allegedly similar features are protected by copyright. Where, as in this case, a license agreement is involved, the court must also determine which features the defendant was authorized to copy. Once the scope of the license is determined, unprotectable ideas must be separated from potentially protectable expression; to that expression, the court must then apply the relevant limiting doctrines in the context of the particular medium involved, through the eyes of the ordinary consumer of that product.

3.  Having dissected the alleged similarities and considered the range of possible expression, the court must define the scope of the plaintiff's copyright—that is, decide whether the work is entitled to "broad" or "thin" protection. Depending on the degree of protection, the court must set the appropriate standard for a subjective comparison of the works to determine whether, as a whole, they are sufficiently similar to support a finding of illicit copying.

Instruction No. 23

## COPYING—ACCESS AND SUBSTANTIAL SIMILARITY

The Plaintiff has the burden of proving that the Defendants copied original elements from the plaintiff's copyrighted work.  The Plaintiff may show the defendants copied from the Work by proving by a preponderance of the evidence that the defendants either directly copied creative elements or, alternatively, (1) had access to the Plaintiff's copyrighted Work and (2) that there are substantial similarities between the Defendant's work and original elements of the Plaintiff's Work.  You will recall that the parties have stipulated that the defendants had access to the Work.

If the plaintiff shows that the defendant had access to the plaintiff's work and that there is a substantial similarity between the infringed and infringing works, a presumption of copying arises shifting the burden to the defendant to rebut the presumption or to show that the alleged infringing work was independently created.  By establishing reasonable access and substantial similarity, a copyright plaintiff creates a presumption of copying.  The burden shifts to the defendant to rebut that presumption through proof of independent creation.

Instruction No. 24

## UNPROTECTED MATERIAL—EXAMPLES

First, *scenes a faire* or stereotypical stock scenes or themes are not protected by copyright. For example, depictions of "the small miseries of domestic life, romantic frolics at the beach, and conflicts between ambitious young people on one hand, and conservative or evil bureaucracies on the other" are considered stock scenes or themes that are staples of literature. The doctrine does not only apply to plot. For example, an overall mood of secrecy and mystery has been found to be unprotected in the context of a show about magic tricks.

Second, historical facts are not protected by copyright. For example, the Supreme Court has ruled that although direct reproduction from President Ford's biography was protected by copyright, the historical facts contained in the biography were not. One cannot build a story around a historical incident and then claim exclusive right in the use of the incident. Nor is the interpretation of a historical event copyrightable apart from the expressive words used to relate it, i.e., the author's original expression. For example, a theory about who caused the destruction of the *Hindenburg* is not copyrightable. Nor is a person entitled to copyright a fact simply because it is he who has discovered it. An arrangement of facts is protected insofar as it is the product of the author's original expression.

Third, references from the public domain, such as commonly used phrases, swear words, or regional language usages, are not protected.

Instruction No. 25

## PROTECTED MATERIAL—EXAMPLES

I have previously given you instructions regarding what constitutes "protectable expression" in a copyrighted work. By way of reminder, although copyright law does not extend to underlying facts or ideas contained in a work, an author's particular expression or descriptions of ideas and facts can be copyrighted and protected. Expression about people, places, and events can be protected.

In a literary work, such as a biography, protectable expression includes things such as an author's choice of words; phrasing and style; the use of literary devices; fictional dialogue; how the author marshals ideas and facts; and the selection or sequencing of the ideas and facts presented.

Instruction No. 26

## SUBSTANTIAL SIMILARITY

If the Plaintiff fails to show direct copying of protected elements by a preponderance of the evidence, the jury may still find infringement if the Plaintiff has shown access and substantial similarity by a preponderance of the evidence. Just to be clear, access and substantial similarity need not be separately shown if direct copying has been shown between the Work and the Play. Recall again that the Defendants' access to the Work has been stipulated in this case. If the Plaintiff has not shown direct copying, the Plaintiff may still show infringement by showing substantial similarity between the Work (*Tommy DeVito —Then and Now*) and *Jersey Boys*.

Substantial similarity consists of two elements:

First, the plaintiff must show that there are articulable similarities between protected elements of the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in the two works. Only the original expressions of the author(s) of the Work (*Tommy DeVito —Then and Now*) are protectable. *Scenes-a-faire* (situations and incidents that flow necessarily or naturally from a basic plot premise, familiar stock scenes, and themes that are staples of literature) and historical facts are not protected by copyright. Therefore, when comparing *Tommy DeVito —Then and Now* to *Jersey Boys*, you must ignore any similarities that you find to be based on *scenes-a-faire*, historical facts, or literary references in the public domain. You must consider only articulable similarities between *Tommy DeVito —Then and Now* to *Jersey Boys* that are based on the original expressions of the author(s) of *Tommy DeVito —Then and Now*.

Instruction No. 27

Second, the Plaintiff must show that based on those similarities, *Jersey Boys* is virtually identical to *Tommy DeVito —Then and Now* when viewed as a whole.

The Court has determined that the only similarities between *Tommy DeVito —Then and Now* to *Jersey Boys* that are potentially protectable by copyright are:

1.  The introduction of Tommy DeVito in *Jersey Boys*, whose voice, cool demeanor, and braggadocio mimic the characteristics of Tommy DeVito as portrayed in the Work.

2.  The dialogue surrounding the song title and subject matter of "Walk Like a Man" as criticized by DeVito in both *Jersey Boys* and the Work.

3.  The line in *Jersey Boys*, "We weren't a social movement like the Beatles" as compared to the line from the Work, "The Beatles come to represent a whole social movement.  We never aspire to be more than entertainers."

4.  The creative expression within the description of the Rock & Roll Hall of Fame induction ceremony in the Work as compared to *Jersey Boys*.

5.  The creative expression within the description of the "Roman Orgy" scene in the Work as compared to *Jersey Boys*.

6.  The creative expression regarding the introduction of the song "Sherry" in the Work as compared to *Jersey Boys*.

7.  The creative expression regarding the introduction of the song "Big Girls Don't Cry" in the Work as compared to *Jersey Boys*.

8.  The creative expression regarding the introduction of the song "Walk Like a Man" in the Work as compared to *Jersey Boys*.

Instruction No. 27

9.   The creative expression regarding the introduction of the song "Dawn" in the Work as compared to *Jersey Boys*.

10.  The creative expression in the Work regarding DeVito's introduction of Valli to Mary and the characterization of Mary.

11.  The creative expression in the Work regarding DeVito's intercession after Valli's arrest at the request of Valli's mother.

12.  The creative expression in the Work regarding the fake murder in Valli's car.

Instruction No. 27

**"THICK" VERSUS "THIN" COPYRIGHT PROTECTION**

Regular or "thick" protection is the norm for copyrighted works, but when a work contains very few articulable, concrete similarities based on the protected aspects of a work and a limited number of ways in which the underlying ideas could be expressed differently, or where the only protectable aspect of a work is the unique selection and arrangement of otherwise unprotectable elements, a work is entitled only to "thin" protection, where "virtually identical copying" is required to support a finding of infringement.

The Court has previously ruled in this case that the unpublished autobiography *Tommy DeVito —Then and Now* is entitled only to "thin" protection. That is why the Court has instructed you under the previous instruction that plaintiff must show that *Jersey Boys* is virtually identical to *Tommy DeVito —Then and Now* when viewed as a whole to support a finding of infringement on the basis of substantial similarity. This distinction between "thick" and "thin" protection should not affect your determination of infringement on the basis of direct copying.

Also, "de minimis" copying is not prohibited. Copying is "de minimis" if the average person familiar with the original Work would not recognize the appropriation.

Instruction No. 28

**SECONDARY LIABILITY—VICARIOUS INFRINGEMENT—ELEMENTS**

**AND BURDEN OF PROOF**

If you find that a defendant infringed the plaintiff's copyright in the Work, you must determine whether one or more other defendants vicariously infringed that copyright. The plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

    1.    the defendant accused of vicarious infringement directly benefitted financially from the infringing activity of the direct infringer;

    2.    the defendant accused of vicarious infringement had the right and ability to supervise or control the infringing activity of the direct infringer; and

    3.    the defendant accused of vicarious infringement failed to exercise that right and ability.

If you find that the plaintiff has proved each of these elements, your verdict should be for the plaintiff if you also find that the defendant accused of direct infringement infringed plaintiff's copyright. If, on the other hand, the plaintiff has failed to prove any of these elements, your verdict should be for the defendant accused of vicarious infringement.

Instruction No. 29

# DERIVATIVE LIABILITY—CONTRIBUTORY INFRINGEMENT—ELEMENTS
## AND BURDEN OF PROOF

A defendant may be liable for copyright infringement engaged in by another if he knew or had reason to know of the infringing activity and intentionally induced or materially contributed to that infringing activity.

If you find that a defendant directly infringed the plaintiff's copyright in the Work, you must determine whether one or more other defendants contributorily infringed that copyright. The plaintiff has the burden of proving both of the following elements by a preponderance of the evidence:

1.    the defendant accused of contributory infringement knew or had reason to known of the infringing activity of the direct infringer; and

2.    the defendant accused of contributory infringement intentionally induced or materially contributed to the direct infringer's infringing activity.

If you find that a defendant directly infringed the plaintiff's copyright and you also find that the plaintiff has proved both of these elements, your verdict should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove either or both of these elements, your verdict should be for the defendant accused of contributory infringement.

Instruction No. 30

**COPYRIGHT—AFFIRMATIVE DEFENSE—FAIR USE (17 U.S.C. § 107)**

One who is not the owner of the copyright may use the copyrighted work in a reasonable way under the circumstances without the consent of the copyright owner if it would advance the public interest. Such use of a copyrighted work is called a fair use. The owner of a copyright cannot prevent others from making a fair use of the owner's copyrighted work.

Defendant contends that defendant made fair use of the copyrighted work. The defendant has the burden of proving this defense by a preponderance of the evidence.

In determining whether the use made of the work was fair, you should consider the following factors:

1.   the purpose and character of the use, including whether the use is of a commercial nature or is for nonprofit educational purposes;

2.   the nature of the copyrighted work;

3.   the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

4.   the effect of the use upon the potential market for or value of the copyrighted work.

If you find that the defendant has proved by a preponderance of the evidence that the defendant made a fair use of the plaintiff's work, your verdict should be for the defendant.

Instruction No. 31

## COPYRIGHT—AFFIRMATIVE DEFENSE—IMPLIED LICENSE

The parties agree that Tommy DeVito, a co-owner of the copyrighted Work, gave express written consent to use any biographies pursuant to the 1999 Agreement. However, the parties also agree that the 1999 agreement lapsed on December 10, 2004 by failure to "commercially produce" the Play prior to that date. The Defendants further allege, however, that Tommy DeVito gave an implied license to use the Work upon delivery of the Work to the writers of the *Jersey Boys* Play.

In the absence of an express right (oral or written) to use copyrighted material, a copyright owner may give an implied license to use copyrighted material as indicated by the circumstances surrounding delivery of the Work. The Defendants have the burden to prove an implied license by a preponderance of the evidence.

The intent of Tommy DeVito to give an implied license to use the Work may be determined by various factors including:

1.  delivery of the Work by Mr. DeVito;

2.  delivery of the Work to authors of the Play, as opposed to fellow members of the *Four Seasons* band;

3.  any expressed limitation, orally or in writing, on further circulation, distribution, or use, by Mr. DeVito;

4.  other discussions regarding the Work or its use during oral interviews of Tommy DeVito;

5.  expectation of any compensation or payment in exchange for use of the Work;

6.  and any other factors that bear on Tommy DeVito's intent as to use of the Work.

## DUTY TO DELIBERATE—COMMUNICATION WITH COURT—RETURN OF
## VERDICT

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

Instruction No. 33

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the bailiff that you are ready to return to the courtroom.

Dated this ___ day of November, 2016.

ROBERT C. JONES
United States District Judge

Instruction No. 33